IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SECURITIES AND EXCHANGE          )
COMMISSION,                      )
                                 )
              Plaintiff,          )
                                 )
       v.                        )          Case No. 11-2017-JWL
                                 )
STEPHEN M. KOVZAN,               )
                                 )
              Defendant.          )
                                 )
_____)

## MEMORANDUM AND ORDER

In this case, the Securities Exchange Commission ("SEC") has brought various

claims against defendant Stephen M. Kovzan under the federal Securities Act of 1933

("Securities Act"), 15 U.S.C. § 77a *et seq.*, and the federal Securities Exchange Act of

1934 ("Exchange Act"), 15 U.S.C. § 78a *et seq.* The matter is presently before the Court

on defendant's motion to dismiss the amended complaint (Doc. # 23). For the reasons

set forth below, the motion is **granted in part and denied in part**. The motion is

granted with respect to Counts One, Two, Three, Four, and Nine to the extent they are

based on the conduct alleged in Paragraph 50 of the amended complaint, and with

respect to Count Six to the extent it is based on the conduct alleged in Paragraphs 55(b),

56(c), and 57 of the amended complaint; and those claims are hereby dismissed. The

motion is denied in all other respects.

## I.      **Background**

Beginning in 2000, defendant served as Vice President of Financial Operations and as Chief Accounting Officer ("CAO") at NIC Inc. ("NIC"), a company located in Olathe, Kansas.  In August 2007, defendant became NIC's Chief Financial Officer ("CFO").  Jeffery Fraser, one of NIC's founders, served as NIC's Chief Executive Officer ("CEO") and Chairman of the Board of Directors from May 2002 until 2008.

In this civil enforcement action, the SEC brings claims against defendant under the Securities Act and the Exchange Act, seeking civil money penalties, an injunction against further violations, a prohibition against defendant's acting as an officer or director of a publicly-traded company, and disgorgement of any ill-gotten gains.  The SEC's claims are centered on its allegations that from 2002 to 2005 Mr. Fraser received over $1.18 million in perquisites that were not reported by NIC as his income, including (a) the costs for Mr. Fraser to commute by private aircraft from his home in Wyoming to NIC's headquarters in Kansas, and (b) reimbursements for other personal expenses, including for homes, vacations, cars, electronics, and other items.  The SEC alleges that defendant was involved with the preparation and signing of public filings with the SEC from 2002 to 2006 that were materially false and misleading because they failed to disclose Mr. Fraser's perquisites as income.

## II.    **Standards Governing a Motion to Dismiss**

The Court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do.  *See Bell Atlantic*, 550 U.S. at 555.  The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).  Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555.  The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III.   **Statute of Limitations**

      A.    *Discovery Rule*

The SEC filed this action on January 12, 2011.  Defendant argues that all claims relating to conduct before January 12, 2006, should be dismissed as barred by the five-year statute of limitations found at 28 U.S.C. § 2462.  That statute provides:

> Except as otherwise provided by Act of Congress, an action, suit, or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . . .

*Id.*  The SEC agrees that Section 2462 applies here, but it argues that the statute of limitations is subject to a "discovery rule" for fraud claims.  The SEC argues that if such a rule is applied, the action is timely, based on its allegations that it first received inquiry notice of the fraud at issue here in June 2007, that it subsequently exercised due diligence in investigating, and that it could not have discovered the facts underlying the fraud until several years after receiving inquiry notice.  Thus, the Court must determine whether Section 2462 should be subject to a discovery rule in this context.

The Supreme Court recently described the discovery rule as follows:

> [I]n the statute of limitations context, the word "discovery" is often used as a term of art in connection with the "discovery rule," a doctrine that delays accrual of a cause of action until the plaintiff has "discovered" it. The rule arose in fraud cases as an exception to the general limitations rule that a cause of action accrues once a plaintiff has a complete and present cause of action.  This Court long ago recognized that something different was needed in the case of fraud, where a defendant's deceptive conduct may prevent a plaintiff from even *knowing* that he or she has been defrauded.  Otherwise, "the law which was designed to prevent fraud" could become "the means by which it is made successful and secure."

4

> *Bailey v. Glover*, 21 Wall. [88 U.S.] 342 (1874).  Accordingly, "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is *discovered*."  *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (internal quotation marks omitted; emphasis added).  And for more than a century, courts have understood that fraud is deemed to be discovered when, in the exercise of reasonable diligence, it could have been discovered.

*Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1793-94 (2010) (other citations and internal quotations omitted, emphasis in original).  Most often cited is this statement of the rule from *Holmberg*:

> [T]his Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."  *Bailey v. Glover*, 21 Wall. [88 U.S.] 342, 348; and see *Exploration Co. v. United States*, 247 U.S. 435 [(1918)]; *Sherwood v. Sutton*, Fed. Cas. No. 12,782, 5 Mason 143 [21 F. Cas. 1303 (C.C.D.N.H. 1828)].
>
> This equitable doctrine is read into every federal statute of limitation.

*Holmberg*, 327 U.S. at 397.[1]  The Tenth Circuit, in reliance on *Holmberg* and *Bailey*, has consistently applied this discovery doctrine (sometimes called equitable tolling) in cases

---

[1]In *TRW Inc. v. Andrews*, 534 U.S. 19 (2001), the Court rejected the argument that a statute of limitation must include the discovery rule unless that statute explicitly states that it does not, and it concluded that Congress's intent not to include a general discovery rule could be inferred from a statute.  *See id.* at 27-28 (statute of limitations that provided an explicit discovery rule for willful misrepresentations did not also include a discovery rule for other conduct).

involving private securities fraud claims.  *See, e.g.*, *Anixter v. Home-Stake Prod. Co.*, 977 F.2d 1549, 1551 (10th Cir. 1992); *State of Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 692 (10th Cir. 1981); *Esplin v. Hirschi*, 402 F.2d 94, 103 (10th Cir. 1968).

Although the Tenth Circuit has not addressed the application of the discovery rule in the context of Section 2462, a few other circuits have done so.  Defendant relies most heavily on *3M Company v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994), in which the D.C. Circuit Court refused to apply the discovery rule and applied Section 2462 to bar a review of penalties imposed by the Environmental Protection Agency for violations of an environmental statute.  The court noted that the case did not involve any issue of discovering latent injuries, for which the discovery rule was developed.  *See id.* at 1460. The court also noted that in the 19th Century, when the predecessor to Section 2462 was enacted, a claim generally "accrued" at the time of the violation.  *See id.* at 1462.  The court further stated that application of the statute of limitations should not be influenced by the agency's particular difficulties in enforcing the environmental statute, as such consideration might require hearings to determine whether the agency adequately lived up to its responsibilities.  *See id.* at 1461.

*Trawinski v. United Technologies*, 313 F.3d 1295 (11th Cir. 2002), involved a private enforcement action for violations of the Energy Policy and Conservation Act, which claims were governed by the statute of limitations in Section 2462.  The Eleventh Circuit cited *3M* in stating (without further analysis) that "[t]his discovery rule, which

might be applicable to statutes of limitations in state tort actions, has no place in a proceeding to enforce a civil penalty under a federal statute." *See id.* at 1298 (citing *3M Co.*, 17 F.3d at 1462-63). Similarly, in *Federal Election Commission v. Williams*, 104 F.3d 237 (9th Cir. 1996), the Ninth Circuit agreed (without analysis) with *3M*'s rejection of the application of the discovery rule to Section 2462. *See id.* at 240 (citing *3M Co.*, 17 F.3d at 1462-63).

The problem with defendant's reliance on these three cases is that they were not fraud cases. Thus, these courts had no occasion to consider the application of the *fraud* discovery rule, as that doctrine has been recognized by the Supreme Court. Defendant has cited a number of district court cases involving enforcement actions by the SEC in which the court cited *3M* in rejecting the discovery rule as applied to Section 2462; only in one of those cases, however, did the court address the fact that *3M* did not involve fraud claims. *See SEC v. Jones*, 2006 WL 1084276, at *5-6 (S.D.N.Y. Apr. 25, 2006).[2] In *Jones*, the court found *3M* "instructive" even though it did not involve fraud claims. *See id.* at *6. Specifically, the court noted the D.C. Circuit's statement that "[a]n

---

[2]In most of the cases cited by defendant, the court felt bound to follow precedent from its circuit court of appeals. *See SEC v. Huff*, 758 F. Supp. 2d 1288, 1338 (S.D. Fla. 2010) (following *Trawinski*); *SEC v. Leslie*, 2008 WL 3876169, at *9 & n.13 (N.D. Cal. Aug. 19, 2008) (following *Williams*); *SEC v. Berry*, 580 F. Supp. 2d 911, 919 (N.D. Cal. 2008) (following *Williams*); *SEC v. Richie*, 2008 WL 2938678, at *11 (C.D. Cal. May 9, 2008) (following *Williams*); *SEC v. Scrushy*, 2005 WL 3279894, at *2-3 (N.D. Ala. Nov. 29, 2005) (following *Trawinski*). Defendant also cites *SEC v. Microtune, Inc.*, __ F. Supp. 2d __, 2011 WL 540280 (N.D. Tex. Feb. 15, 2011); in that case, however, the court merely noted that it previously rejected the discovery rule, without any analysis or citation. *See id.* at *4 n.7.

agency's failure to detect violations, for whatever reasons, does not avoid the problems of faded memories, lost witnesses and discarded documents [and] nothing in the language of § 2462 even arguably makes the running of the limitations period turn on the degree of difficulty an agency experiences in detecting violations." *See id.* (quoting *3M Co.*, 17 F.3d at 1461).

Only three days ago, however, the Second Circuit effectively repudiated *Jones* (which had been issued by a district court in its circuit) by its opinion in *SEC v. Gabelli*, __ F.3d __, 2011 WL 3250556 (2d Cir. Aug. 1, 2011).  In *Gabelli*, an enforcement action by the SEC, the Second Circuit held that the discovery rule defines when a securities fraud claim accrues for purposes of applying Section 2462, thereby relieving the SEC of the need to plead fraudulent concealment by the defendant. *See id.* at *8.  The Second Circuit stated:

> Although the defendants make much of the fact that Section 2462 does not expressly state a discovery rule, this Court has previously held that for claims that sound in fraud a discovery rule is read into the relevant statute of limitations.  Indeed, the Supreme Court has recently affirmed that a fraud claim "accrues" only when the plaintiff discovers the fraud. *Merck*, 130 S. Ct. at 1793-94.  Thus, while Congress might have to affirmatively include language about a discovery rule in the event that it wanted a discovery rule to govern the accrual of non-fraud claims or wanted to impose a limit on using a discovery rule for certain fraud claims, it would be unnecessary for Congress to expressly mention the discovery rule in the context of fraud claims, given the presumption that the discovery rule applies to these claims unless Congress directs otherwise. *See Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (the discovery rule for claims of fraud "is read into *every federal statute of limitation*") (emphasis added).

*Id.* (citation and footnote omitted).  The Second Circuit noted that the defendants'

8

reliance on *3M* was misplaced because that case did not involve fraud claims.  *See id.* at

*8 n.4 (citing *3M Co.*, 17 F.3d at 1460-63).

The Second Circuit cited *SEC v. Koenig*, 557 F.3d 736 (7th Cir. 2009), a

securities fraud enforcement action in which the Seventh Circuit rejected *3M* and applied

the discovery doctrine to Section 2462.  *See id.* at 739.  The Seventh Circuit reasoned as

follows:

> We need not decide when a "claim accrues" for the purpose of §
> 2462 generally, because the nineteenth century recognized a special rule
> for fraud, a concealed wrong.  *See, e.g.*, *Bailey v. Glover*, 88 U.S. (21
> Wall.) 342 (1874); *Holmberg v. Armbrecht*, 327 U.S. 392 (1946).  These
> days the doctrine is apt to be called equitable tolling.  Whether a court
> says that a claim for fraud accrues only on its discovery (more precisely,
> when it *could have been* discovered by a person exercising reasonable
> diligence) or instead says that the claim accrues with the wrong, but that
> the statute of limitations is tolled until the fraud's discovery, is
> unimportant in practice.  Either way, a victim of fraud has the full time
> from the date that the wrong came to light, or would have done had
> diligence been employed.  And the United States is entitled to the benefit
> of this rule even when it sues to enforce laws that protect the citizenry
> from fraud, but is not itself a victim. *Exploration Co. v. United States*, 247
> U.S. 435 (1918).

*Id.* at 739 (one citation omitted, emphasis in original).  Thus, each circuit court that has

addressed the application of the discovery rule to Section 2462 in a fraud case has

concluded that the rule should be applied.

Moreover, in *SEC v. Tambone*, 550 F.3d 106 (1st Cir. 2008), *withdrawn*, 573 F.3d

54 (2009), *restated in part*, 597 F.3d 436 (2010), a fraud case involving Section 2462,

the First Circuit held that the SEC could rely on the doctrine of equitable tolling, if the

SEC could establish "(1) that there were insufficient facts available to put it on inquiry

9

notice of the possibility of fraud, and (2) that it exercised due diligence in attempting to uncover the factual basis underlying this alleged fraudulent conduct at the point when those facts were available." *See id.* at 148. Thus, although the First Circuit did not mention the "discovery rule," it essentially applied the same standard under Section 2462.

As noted above, in *Williams*, the Ninth Circuit agreed with *3M*'s rejection of the discovery rule. *See Williams*, 104 F.3d at 240. The Ninth Circuit proceeded, however, to quote the same pertinent language from *Holmberg* in concluding that the doctrine of equitable tolling *would* apply. *See id.* Such tolling would require proof of the following: "fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discovery the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts." *See id.* at 240-41. Thus, although the Ninth Circuit rejected a general discovery rule for all actions under Section 2462, it appears that that court would apply such a standard, under the doctrine of equitable tolling, in the event of a fraud case. *See also SEC v. Huff*, 758 F. Supp. 2d at 1339 (cited by defendant, *supra* note 2) (rejecting discovery rule under *Trawinski*, but following *Koenig* and *Williams* in allowing equitable tolling in the event of fraud if the plaintiff exercised due diligence).

In *SEC v. Alexander*, 248 F.R.D. 108 (E.D.N.Y. 2007), the court chose not to resolve the question at that time, but after a thorough analysis, it found that "[o]verall, there are significant reasons for finding that a discovery rule governs the accrual of the

10

limitation period contained in Section 2462" in a fraud enforcement action by the SEC. *See id.* at 120.  The court noted that "[t]here is a serious question as to whether the *3M* court's reasoning applies in the fraud context." *See id.* at 118.  The court first addressed the D.C. Circuit's argument that when Section 2462's predecessor was enacted, claims were considered to accrue at the time of the conduct at issue; the *Alexander* court reviewed Supreme Court cases beginning in the 19th Century, including *Bailey* and *Holmberg*, and concluded that in light of the discovery rule recognized by the Supreme Court, "the case law concerning the meaning of 'accrue' in the context of fraud cases is far more ambiguous in the period prior and subsequent to the adoption of Section 2462's predecessor than in the non-fraud context addressed by the *3M* court." *See id.* at 120. The *Alexander* court further noted that many of the administrative concerns cited in *3M* do not apply in the context of fraud claims because the court must address the agency's due diligence regardless, whether under a theory of equitable tolling or the under the discovery rule. *See id.*; *see also SEC v. Kearns*, 691 F. Supp. 2d 601, 611-13 (D.N.J. 2010) (allowing the use of the discovery rule with Section 2462, distinguishing *3M* as a case that did not involve fraud); *SEC v. Buntrock*, 2004 WL 1179423, at *12 (N.D. Ill. May 25, 2004) (same).

In response to the Supreme Court's pronouncement in *Holmberg*, defendant does not appear to dispute that ordinarily a discovery rule should apply in fraud cases. Defendant argues nonetheless that the rule should apply only in remedial actions, and should not apply in penal actions by the government.  The Court rejects that argument.

Defendant cites again to *3M*, in which the D.C. Circuit reasoned that the discovery rule was intended to address the problem of latent injuries, while a civil penalty action does not include injuries or damage from the violation as a required element. *See 3M Co.*, 17 F.3d at 1460. This reasoning is inapposite here, however, because the fraud discovery rule (not addressed in *3M*) is based on the problem in learning of the fraud, not a problem of discovering the injuries (as in the latent injury context discussed in *3M*).

Defendant also points to *SEC v. Fisher*, 2008 WL 2062699 (N.D. Ill. May 13, 2008), in which the court noted (without deciding the question of the applicability of the discovery rule) that an SEC enforcement action might be distinguished from private securities cases:

> The SEC has a veritable army of trained attorneys, all of whose salaries are paid for with public dollars. In addition, unlike a private securities plaintiff, the SEC possesses subpoena power even before it files a lawsuit. This provides the Commission with a distinct investigatory advantage over a typical private securities plaintiff. This advantage at least partially undermines the policy justification for delaying the start of the limitations clock.

*Id.* at *4. Despite such advantages for the SEC, the Court is not persuaded that the discovery rule (and the Supreme Court's recognition of it for fraud cases) should not also apply to enforcement actions.

First, the Supreme Court "long ago pronounced the standard: 'Statutes of limitation sought to be applied to bar rights of the Government must receive a strict construction in favor of the Government.'" *Badaracco v. C.I.R.*, 464 U.S. 386, 391

(1984) (quoting *E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924)).

Defendant argues that *Badaracco* and *Davis* were actually remedial cases, in which the

Government was the injured party.  The Tenth Circuit, however, has held that, under this

same standard, Section 2462 specifically—which relates *only* to penal actions—must be

narrowly construed in favor of the Government.  *See United States v. Telluride Co.*, 146

F.3d 1241, 1244-45 (10th Cir. 1998) (quoting *Davis*, 264 U.S. at 462).

Moreover, in *Exploration Co. v. United States*, 247 U.S. 435 (1918), in which the

Supreme Court applied its rule from *Bailey*, the Court stated:

> We are aware of no good reason why the rule, now almost universal, that
> statutes of limitations to set aside fraudulent transactions shall not begin
> to run until the discovery of the fraud, should not apply in favor of the
> government as well as a private individual.

*Id.* at 449.  It is true that in *Exploration Co.*, the Government was the injured party as the

seller of the land in question, *see id.*; but, as noted above, courts *have* applied the

discovery rule in enforcement actions under Section 2462 (which must necessarily be

penal).  *See Gabelli*, __ F.3d __, 2011 WL 3250556; *Koenig*, 557 F.3d 736; *Kearns*, 691

F. Supp. 2d 601; *Buntrock*, 2004 WL 1179423.   In *Koenig*, the Seventh Circuit

specifically rejected this argument by defendant in holding that "the United States is

entitled to the benefit of this rule even when it sues to enforce laws that protect the

citizenry from fraud, but is not itself of victim."  *See Koenig*, 557 F.3d at 739 (citing

*Exploration Co.*, 247 U.S. 435); *see also Alexander*, 248 F.R.D. at 119 (quoting

*Exploration Co.*, 247 U.S. at 449).  The Court in *Kearns* also specifically rejected this

argument "that the government is entitled to less equitable protection from the statute of limitations than a private plaintiff." *See Kearns*, 691 F. Supp. 2d at 612-13 (citing *Badaracco*, 464 U.S. at 391-92). As the *Kearns* court reasoned: "The government's resources, even assuming they are massive as compared to a private person, cannot be unleashed against a fraudulent party until the government is able, with due diligence, to detect the fraud." *Id.* at 613.

In summary, the Court is persuaded by the reasoning of *Gabelli*, *Koenig*, *Kearns*, and *Alexander*, and it therefore rejects the *3M* court's rationale in refusing to apply the discovery rule to Section 2462. Based on the reasoning of those courts, as well as the Tenth Circuit's consistent adherence to the *Holmberg* discovery rule in securities cases, the Court believes that the Tenth Circuit would apply the discovery rule in a securities fraud case by the SEC subject to Section 2462.

In this case, the SEC brought suit within five years of the date on which it alleges that it first received inquiry notice of the alleged fraud. The Court rejects defendant's argument that the SEC cannot meet the due diligence requirement as a matter of law. The SEC alleged that it "proceeded with due diligence during the limitations period," and the Court does not believe that any further allegations are necessary to refute a negative inference that the SEC should have learned something sooner. *See Gabelli*, ___ F.3d ___, 2011 WL 3250556, at *8 & n.5 (citing *Marks v. CDW Computer Ctrs., Inc.*, 122 F.3d 363, 368 n.2 (7th Cir. 1997)) (rejecting argument that the SEC was required to plead reasonable diligence for application of the discovery rule, as the lapse of the

limitations period was an affirmative defense; requiring the SEC to plead why it did not discover a fraud sooner would nonsensically require proof of a negative in the complaint). Whether the SEC acted diligently in this case presents a question of fact for later resolution.

Finally, defendant has not disputed the SEC's characterization that all of the claims except for Count 5 sound in fraud and should therefore be subject to the discovery rule. Accordingly, for all claims other than Count 5, the Court denies defendant's motion to dismiss based on the statute of limitations.

### B.    Fraudulent Concealment

Because Count 5 is not subject to the discovery rule, the Court must address the SEC's alternative argument that the doctrine of fraudulent concealment tolls the statute of limitations for Count 5 violations occurring before January 12, 2006. To toll the statute of limitations based on fraudulent concealment, the SEC must show the use of fraudulent means by defendant, successful concealment from the SEC, and that the SEC did not know or by the exercise of due diligence could not have known that it might have a cause of action. *See Ballen v. Prudential Bache Sec., Inc.*, 23 F.3d 335, 337 (10th Cir. 1994).

The parties dispute whether the SEC may rely on the self-concealing nature of the alleged fraud or whether it must allege separate affirmative acts of concealment. The Court need not resolve that issue at this time, however. In its opinion in *In re Urethane Antitrust Litigation*, 235 F.R.D. 507 (D. Kan. 2006) (Lungstrum, J.), this Court noted the

15

three different standards that courts have applied for fraudulent concealment. *See id.* at 518. The Court rejected the strictest "separate and apart" standard, which would require evidence, separate and apart from the acts of concealment involved in the underlying violation, that the defendant affirmatively acted to conceal the claim; the Court concluded that Tenth Circuit precedent did not support such a standard, and that the Tenth Circuit caselaw indicates that any affirmative act of concealment, including those involved in the underlying violation, is sufficient (the intermediate standard). *See id.* at 518-19.

In this case, the Court concludes that the SEC's amended complaint at least satisfies the intermediate standard. The complaint alleges various acts of concealment by defendant, including his failure to disclose the relevant issues to auditors. Accordingly, even if the SEC is not entitled to rely on a self-concealing standard (which the Court declines to decide presently), its pleading sufficiently alleges fraudulent concealment. The Court further concludes that the complaint sufficiently alleges facts relating to the SEC's diligence in its investigation following its receipt of inquiry notice. Accordingly, the Court denies in its entirety defendant's motion to dismiss based on the statute of limitations.

### C.   *Continuing Violation*

Denial of defendant's limitations argument is also appropriate in light of the SEC's reliance on the continuing violation doctrine. Under that doctrine, if the alleged unlawful practice continues into the limitations period, the complaint is timely if filed

within the required limitations period (in this case, five years) measured from the end of that practice. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982).

In response to this theory, defendant first notes that some courts have questioned whether the continuing violation doctrine should apply in enforcement actions. Defendant has not cited any cases actually rejecting the doctrine, however, and several courts have in fact recognized the continuing violations doctrine in SEC enforcement cases. For instance, in *SEC v. Huff*, 758 F. Supp. 2d 1288, 1340-41 (S.D. Fla. 2010), the court reviewed the purposes of the securities statutes and concluded as follows:

> In view of *Haven Realty*'s example in applying the "continuing violations" doctrine to effectuate congressional intent, this Court concludes that not applying the doctrine in the SEC enforcement context could frustrate congressional purpose in enacting the Securities Act and the Exchange Act in that the nature of certain types of securities violations is such that they necessarily take time to detect. While time passes, however, such violations can inflict significant harm on the investing public. If wrongdoers may continue to reap the benefit of their continuing violations with no threat of punitive enforcement actions, then, for some, the possibility that they may eventually merely have to return what may be left of their ill-gotten gains may become simply a cost of doing business. Such an outcome conflicts with congressional intent to prevent securities fraud. Consequently, this Court finds that the "continuing violations" doctrine may apply where the appropriate facts exist.

*Id.* at 1340-41 (following *SEC v. Ogle*, 2000 WL 45260 (N.D. Ill. Jan. 11, 2000)); *see also SEC v. Kelly*, 663 F. Supp. 2d 276, 287-88 (S.D.N.Y. 2009) (applying the doctrine); *SEC v. Pentagon Capital Mgmt. PLC*, 612 F. Supp. 2d 241, 267 (S.D.N.Y. 2009) (same). Defendant has not offered any argument why the doctrine should not be applied in enforcement actions or why the Court should not following the reasoning of the court in

17

*Huff.* In addition, in *United States v. Jensen*, 608 F.2d 1349 (10th Cir. 1979), the Tenth Circuit noted that the applicable statute of limitation would not be a bar in that case if there was an ongoing scheme continuing into the limitations period. *See id.* at 1355. Accordingly, the Court will recognize the continuing violation doctrine for purposes of this case.

The Court also rejects defendant's argument that the SEC's use of this doctrine in this case fails as a matter of law. The SEC has alleged a continuous scheme by defendant, and Count 5 alleges a failure to maintain records and controls continuing into 2006. Whether the alleged violation is a continuing violation is better suited for resolution after consideration of the facts, and defendant has not cited any authority suggesting that this issue should be decided as a matter of law at this stage. Therefore, the Court denies defendant's limitations argument based on this theory as well.[3]

### IV.     Counts One, Two, and Three

In Count One, the SEC alleges that defendant violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. In Counts Two and Three, the SEC alleges violations of Section 17(a) of the Securities Act, 15

_____

[3]In light of these rulings, the Court need not address defendant's argument that Section 2462 should apply not only to the SEC's civil penalty claims, but also to its claims for injunctive relief and for an officer-director bar. The Court also rejects as premature defendant's argument, asserted only in a footnote, that the SEC's disgorgement claim is not viable.

U.S.C. § 77g(a).  All three counts are based on the SEC's allegations that defendant committed fraud by failing to disclose perquisites received by Mr. Fraser, NIC's CEO, and thus by under-reporting Mr. Fraser's income in filings with the SEC.  *See* 17 C.F.R. § 229.402 ("Item 402") (requiring disclosure of CEO compensation, including "perquisites and other personal benefits").  Defendant challenges these claims on a number of grounds.

*A.*     *Duty*

1.     COMMUTING EXPENSES

In part, the SEC bases its fraud allegations on defendant's failure to disclose as compensation NIC's payments for Mr. Fraser's "commuting expenses to travel between his Wyoming home and Kansas office."  *See* SEC Release No. 5904, 1978 WL 170874, at *5 (Feb. 6, 1978) (use of a company plane for "commuting purposes" is a form of remuneration requiring disclosure).  Defendant argues that any claim based on such allegations regarding commuting expenses should be dismissed on the basis that the SEC has not alleged facts giving rise to a duty to disclose any payments for Mr. Fraser's travel between Wyoming and Kansas.  Defendant argues that in the absence of any definition by the SEC, "commuting" should mean regular and frequent travel between the person's home and workplace, and defendant notes that the SEC has not alleged any facts bearing on that standard, including the frequency of Mr. Fraser's trips or how much time he worked in Wyoming or in Kansas.  Finally, defendant cites an e-mail from NIC's Assistant Controller to defendant stating the belief that, for tax purposes, NIC would be

19

able to show that Mr. Fraser's regular place of work was in Wyoming, that he spent only a few days a month in Kansas, and that the expenses therefore were not for commuting.[4]

The SEC responds that it need not necessarily show "commuting" expenses, as long as it proves a personal benefit, such as reimbursement for travel for personal reasons. With respect to this air travel between Wyoming and Kansas, however, the SEC has alleged only that the expenses should have been disclosed as commuting expenses. Thus, the Court will address that specific claim.

The Court concludes that the SEC has alleged sufficient facts to support this claim based on commuting expenses. The amended complaint alleges that Mr. Fraser's home was in Wyoming and that "his" NIC office was in Kansas. In the e-mail cited by defendant, the Assistant Controller actually stated that he did not have enough information to determine Mr. Fraser's regular place of business, and that although he believed the company could show that Mr. Fraser spent only a few days a month in Kansas, such a conclusion "would be based on an analysis of [Mr. Fraser's] business activity for a year." The SEC alleges in its complaint that NIC undertook no such analysis. Moreover, as the SEC points out, in a follow-up e-mail to defendant, his superior stated that his "knowledge of 'home office' would lead [him] to believe KC is the home office."

---

[4]Defendant argues that the Court should consider this e-mail because it was referenced in the complaint and the SEC has not disputed its authenticity. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

At this stage, the Court accepts as true the allegations that Mr. Fraser lived in Wyoming, that his office was in Kansas, and that he commuted between those two places. The SEC's claim based on those allegations is not implausible, and the SEC need not support that claim with all possible evidence at this time. Accordingly, the Court denies this argument for dismissal of Counts One, Two, and Three as they relate to commuting expenses.

## 2.     OTHER PERSONAL EXPENSES

With respect to the alleged reimbursements to Mr. Fraser for other personal expenses, defendant argues that such payments do not constitute "compensation" to Mr. Fraser for purposes of the disclosure requirement, *see* 17 C.F.R. § 229.402, because that money was essentially stolen or looted by Mr. Fraser. Thus, defendant argues that NIC did not make an affirmative decision to pay Mr. Fraser those amounts to "compensate" him for his work for the company, and that in fact NIC eventually required repayment by Mr. Fraser for those expenses.

Defendant relies solely on *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662 (D. Colo. 2007). In that case, the court reasoned as follows:

> I find the plain language of 17 C.F.R. § 229.402 does not contemplate the disclosure of "compensation" taken from a company, but is limited to compensation "awarded to, earned by, or paid to" certain officials. Clearly, in this case, the aircraft usage was not "awarded to, earned by, or paid to" Snyder as—once such usage was discovered—Snyder was required to reimburse the Company for his undocumented expenses. . . . Thus, I find 17 C.F.R. § 229.402 imposes no duty to disclose improperly taken executive "compensation."

21

*Id.* at 685.  In *Andropolis*, the court distinguished another case, *In re Tyco Int'l, Ltd.*, 2004 WL 2348315 (D.N.H. Oct. 14, 2004), as one in which senior executives authorized and participated in the looting, while in *Andropolis*, a senior executive took advantage of weak internal controls for his own personal gain.  *See Andropolis*, 505 F. Supp. 2d at 684-85 (citing *Tyco*, 2004 WL 2348315, at *2).

The Court rejects this argument.  Even in *Andropolis*, on which defendant relies, the court recognized a distinction for this purpose between mere looting and payments authorized by the company.  In *SEC v. Das*, 2010 WL 4615336 (D. Neb. Nov. 4, 2010), the court reviewed *Andropolis* and noted that the issue presents a fact-specific inquiry. *See id.* at *7.  The court rejected the argument based on *Andropolis* as follows:

> The court in *Andropolis* recognized that almost all cases interpreting Item 402 involve money or benefits knowingly given to executives by the company.  While the money in *Andropolis* clearly had been wrongfully taken, in this case, the SEC has stated a claim that Defendants knowingly caused Info to pay for Gupta's private expenses.  In other words, the Complaint sufficiently alleges that through the Defendants' actions, Info awarded the funds to Gupta.  Accordingly, the Court will not dismiss the SEC's claim on the basis that the perquisites cannot be considered compensation.

*Id.* (citation omitted).  Similarly, in the present case, the SEC has alleged facts suggesting that defendant had notice of problems with Mr. Fraser's expenses, that Mr. Fraser received reimbursements for personal expenses nonetheless, and that Mr. Fraser was not required to repay all such reimbursements.  Those allegations are sufficient to state a claim at this point, and therefore the Court denies defendant's motion to dismiss

on this basis.[5]

### B.    Scienter

Defendant next argues that, with respect to Counts One and Two, the SEC has not sufficiently alleged facts supporting the element of scienter. *See SEC v. Wolfson*, 539 F.3d 1249, 1256-57 (10th Cir. 2008) (citing *Aaron v. SEC*, 446 U.S. 680, 697 (1980)) (scienter required for claims under Section 10(b) and Section 17(a)(1), not for claims under Sections 17(a)(2) or (3)).  Scienter requires a showing of an intent to defraud or recklessness.  *See City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1257-58 (10th Cir. 2001).

### 1.    COMMUTING EXPENSES

With respect to Mr. Fraser's commuting expenses, defendant argues that the complaint does not allege facts plausibly supporting scienter.  Defendant notes the lack of guidance concerning "commuting" from the SEC, and he argues that the decision to reimburse Mr. Fraser for those expenses was made by the Board of Directors.  He argues that he had no real motive to commit the fraud here.  Finally, defendant argues, based on the same e-mails cited above, *see supra* Part IV.A.1, that he and the company did address the commuting issue and concluded that Mr. Fraser was not commuting and that the risk

---

[5]In addition, defendant has not responded to the SEC's argument that, even if Item 402 did not require disclosure here, such a duty arose from defendant's fiduciary status and from the need to correct misleading statements. *See New Jersey Div. of Inv. v. Sprint Corp.*, 314 F. Supp. 2d 1119, 1128 (D. Kan. 2004) (Lungstrum, J.) (citing cases and listing circumstances giving rise to a duty to disclose).

of a contrary finding was low.  Defendant justifies the lack of any analysis by noting that

he and NIC would already have known how often Mr. Fraser traveled to Kansas from

Wyoming.

The Court rejects this argument and concludes that the SEC has adequately

pleaded facts supporting a plausible claim of scienter.  The SEC has alleged that

defendant knew that Mr. Fraser lived in Wyoming but had his office in Kansas, and thus

that defendant knew that Mr. Fraser was being reimbursed for commuting expenses.  The

SEC further alleges that defendant was warned about the issue in 2004, when he was told

that an analysis would be required, but that defendant refused to conduct such an

analysis.  Defendant disputes that Mr. Fraser's office was in Kansas, but at this stage, the

Court must accept the SEC's allegation that his office was in Kansas and that defendant

knew that fact.  As the SEC notes, defendant conceded to his superiors that the issue was

a "gray area," and the SEC has alleged that the Board deferred to defendant's judgment

on the issue, but that defendant nevertheless did not conduct the necessary analysis.

Finally, the SEC has alleged that defendant personally benefitted from the alleged

misconduct through sales of the company stock and by receiving a promotion, which

allegations support an inference of motive.[6]

---

[6]The cases cited by defendant to support his argument that an allegation of insider trading does not sufficiently support scienter were cases under the PSLRA, which involve a higher pleading standard for scienter. *See, e.g.*, *In re Sun Healthcare Group, Inc. Sec. Litig.*, 181 F. Supp. 2d 1283, 1296 (D.N.M. 2002).  In this case, the SEC is required to plead scienter only generally. *See* Fed. R. Civ. P. 9(b).  Moreover, the SEC's
(continued...)

## 2.   OTHER PERSONAL EXPENSES

Defendant also seeks dismissal based on a lack of scienter relating to other perquisites received by Mr. Fraser. Defendant argues that the alleged facts show only that defendant knew that Mr. Fraser was not submitting sufficient documentation to support his claimed expenses, and do not show that defendant knew that the claims were for personal expenses. He argues that e-mails discussing the issue, cited by the SEC, did not raise red flags and that analyses of the issue did not show which items were not actually repaid by Mr. Fraser.

The Court again concludes that the SEC's allegations are sufficient. The SEC has generally alleged that defendant acted recklessly or with intent in authorizing reimbursements to Mr. Fraser for personal expenses beginning in 2002, as permitted by Rule 9(b). Moreover, those allegations are not merely conclusory, as the SEC has alleged a number of facts supporting a plausible case of scienter. The SEC has not only relied on e-mails, but has alleged that defendant was informed about problems with Mr. Fraser's expenses and that the issue was raised with him repeatedly. It is true that much of the discussion concerned a lack of documentation, but, of course, one reason for any such requirement is to ensure that the claimed expenses are proper and are not personal. The allegations also support the inference that defendant knew that Mr. Fraser was

---

[6](...continued)
motive allegations were not limited to insider trading, but also referenced defendant's promotion.

claiming personal items, as the SEC has alleged the following: that Mr. Fraser received

reimbursements for seemingly personal items such as homes, cars, clothing, and spa

treatments; that defendant reviewed analyses and heard concerns about Mr. Fraser's

claims for personal expenses; that Mr. Fraser would claim expenses in round (and

therefore, probably inaccurate) figures; that defendant had been told that personal items

were among those for which Mr. Fraser sought reimbursement; and that defendant on

one occasion admitted that the decision had been made not to "bust Mr. Fraser's chops"

concerning reimbursement for personal items.  Defendant also argues that he did attempt

to address the issue with superiors, who assumed responsibility for the payments; the

SEC has alleged, however, that defendant authorized the payments while knowing they

were for personal expenses, and that he nonetheless failed to disclose such perquisites

in the public filings.

The Court therefore rejects defendant's arguments based on scienter.

### C.    Fraud Post-2006

The Court also rejects defendant's argument that any conduct occurring after NIC

adopted new procedures in 2006 cannot support a claim for fraud.  The SEC has

adequately alleged that defendant failed to disclose perquisites in proxy statements and

annual reports for the years from 2002 through 2006, and it has further alleged that steps

taken by NIC in 2006 did not sufficiently address the problem of Mr. Fraser's expense

reimbursements.  Accordingly, there is no basis to remove claims based on conduct

beginning in 2006 from the case at this time.[7]

        D.     *Materiality*

Defendant next argues that the alleged misstatements regarding Mr. Fraser's income were not material as a matter of law. To satisfy the materiality requirement, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (quoting *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

Defendant argues that disclosure of the perquisites to Mr. Fraser would not have been viewed as having altered the total mix of information about NIC as a matter of law. Defendant argues that the disclosure would not really have affected NIC's financial statements because the payments to Mr. Fraser were already accounted for (as business expenses), and that the amounts in question represented a very small percentage of NIC's annual revenue. Defendant argues that investors' views would not have been affected by the disclosure of the mere facts that Mr. Fraser's commuting expenses were paid and that he had failed to supply sufficient receipts for expenses, especially in light of the fact that Mr. Fraser had helped to turn around the company's performance after his return as CEO. Defendant also notes that NIC's stock price rose in 2007 after NIC disclosed that Mr. Fraser had received significant compensation in 2006.

---

[7]Contrary to the argument in defendant's reply brief, the SEC did address this issue in its response brief. *See* Memorandum in Opposition at 31-32.

As this Court has previously noted, however, the question of materiality "is a mixed question of law and fact and ordinarily should be reserved for the trier of fact," and that a request for dismissal at this stage should only be granted if the information is obviously immaterial.  *See In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 2d 1193, 1215-16 (D. Kan. 2002) (Lungstrum, J.).  In this case, the SEC has pleaded sufficient facts to support a plausible claim that satisfies the materiality requirement.  For example, the SEC has alleged that disclosure of the perquisites was required by the applicable law; that investors were told in NIC's filings that Mr. Fraser was working for *no* compensation, while in fact  Mr. Fraser received over $1.18 million in undisclosed perquisites; and that NIC's stock price dropped 16 percent in 2008 in the days after NIC disclosed that Mr. Fraser had repaid $283,000 for improperly-reimbursed expenses. *See* SEC Staff Accounting Bulletin No. 99, 1999 WL 1123073 (Aug. 12, 1999) (cited by defendant) (qualitative factors may make misstatements involving small amounts material), *cited in United States v. Nacchio*, 519 F.3d 1140, 1162-63 (10th Cir. 2008) (noting that the amount at issue does not end the inquiry and that "[s]pecial factors might make a smaller [misstatement] material"), *vacated in part*, 555 F.3d 1234 (10th Cir. 2009); *see also United States v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir. 1991) (finding a stock price drop and the fact that disclosure was required to be relevant to the materiality inquiry).

In this case, the Court cannot say that the alleged perquisites to Mr. Fraser would not have altered the total mix of information concerning NIC as a matter of law, at least

28

not until all of the facts entering into that total mix have been identified.  The SEC is not required to have identified every single such fact in its complaint, and its allegations do raise a plausible inference of materiality here.  Accordingly, the Court denies this basis for dismissal.[8]

### E.    Reference to Code of Ethics

Finally, defendant seeks dismissal of these counts to the extent that they are based on Paragraph 50 of the amended complaint, which alleges that NIC's proxy statements were misleading because they referred to NIC's code of ethics without also disclosing violations of that code.  Defendant argues that merely referring to a code of ethics does not imply an absence of violations, and that otherwise every breach of a fiduciary duty would be transformed into fraud.  *See Andropolis*, 505 F. Supp. 2d at 685-86 (company's mandatory adoption of a code of ethics does not imply that all directors and officers are adhering to the code, and omission of violations does not render the statement of adoption misleading).

In response, the SEC insists that the proxy statements do not merely refer to the code of ethics.  The actual language in the proxy statements (attached to the complaint)

---

[8]Defendant argues that Rule 9(b)'s particularity requirement applies to this element of materiality and that the SEC was therefore required to break down the alleged $1.18 million in perquisites among the years and particular type of expense alleged.  The Court rejects this argument as a basis for dismissal.  The Tenth Circuit has never applied Rule 9(b) in a way that would require a plaintiff to break down amounts like this.  The facts alleged by the SEC here create a plausible inference that the omissions and misstatements concerning Mr. Fraser's compensation were material.

is as follows:

> The Board has adopted a Code of Business Conduct and Ethics to promote its commitment to the legal and ethical conduct of the Company's business, which can be found on the Company's Web site. <u>All employees,</u> including the Chief Executive Officer, Chief Financial Officer and other senior officers, <u>are required to abide by the Code of Business Conduct and Ethics,</u> which provides the foundation for compliance with corporate policies and procedures, and best business practices. The policies and procedures address a wide array of professional conduct, including methods for avoiding and resolving conflicts of interest, protecting confidential information and a strict adherence to all law and regulations applicable to the conduct of the Company's business. <u>The Company intends to satisfy its obligations, imposed under Sarbanes-Oxley, to disclose promptly amendments to, or waivers from, the Code of Business Conduct and Ethics,</u> if any, on the Company's Web site.

(Emphasis added.)

The Court agrees with defendant on this issue. In these documents, NIC stated only that it had adopted a code, that all employees were required to follow it, and that any waivers would be disclosed on the company's website. NIC did not suggest thereby that there had been no violations or waivers. The SEC has not cited any authority supporting its theory. *Cf. City of Roseville Employees' Retirement Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 415 (D. Del. 2009) (noting that this theory by the SEC "has been soundly rejected by those courts that have considered it"). Accordingly, the Court grants defendant's motion as it relates this issue, and the Court dismisses Counts One, Two, and Three to the extent they are based on the reference in proxy statements to NIC's code of ethics.

## V.    Counts Four and Nine

In Count Four of the amended complaint, the SEC asserts a claim for aiding and abetting violations of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20 and 13a-1, 17 C.F.R. §§ 240.12b-20, 240.13a-1.  In Count Nine, the SEC asserts a claim for aiding and abetting violations of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rules 14a-3 and 14a-9, 17 C.F.R. §§ 240.14a-3, 240.14a-9.  By these counts, the SEC alleges that defendant aided and abetted NIC in violating these laws by filing false and misleading annual reports and proxy statements.

First, defendant seeks dismissal of these claims on the basis that the SEC has not stated claims for the underlying violations by NIC, for the same reasons asserted with respect to Counts One, Two, and Three.  For the same reasons set forth above, *see supra* Part IV, the Court denies the motion to dismiss on this basis, with the exception that Counts Four and Nine are dismissed to the extent that they based on the reference in proxy statements to NIC's code of ethics, *see supra* Part IV.E.

Defendant also argues that these aiding and abetting claims require a showing of actual knowledge and not mere recklessness, based on the aiding-and-abetting statute's reference to "any person that knowingly provides substantial assistance to another person in violation of a provision of this chapter."  *See* Exchange Act, Section 20(e), 15 U.S.C. § 78t(e); *see also SEC v. Rivelli*, 2010 WL 2775623, at *4 (D. Colo. July 14, 2010) (following majority of courts that have held that aiding-and-abetting statute requires actual knowledge).  The SEC argues in response that it may show mere recklessness

under this statute.  The Court need not resolve this issue at this time, however, as it concludes that the SEC's allegations satisfy either standard.  As set forth above, the complaint alleges facts supporting a plausible inference that defendant was warned and thus had knowledge that Mr. Fraser was commuting and was receiving reimbursements for personal expenses.  Accordingly, the Court denies defendant's motion for dismissal of Counts Four and Nine on this basis.

## VI.    <u>Count Six</u>

In Count Six, the SEC alleges that defendant made false or misleading statements to NIC's auditors in violation of Rule 13b2-2 of the Exchange Act, 17 C.F.R. § 240.13b2-2.  Specifically, the SEC alleges that defendant made false representations in letters sent to the auditors in March of every year from 2003 to 2007, in connection with annual audits of NIC's preceding-year financial statements.  The SEC generally cites two separate alleged misrepresentations: (1) that defendant had no knowledge of any fraud or suspected fraud affecting NIC, *see* Amended Complaint ¶¶ 55(b), 56(c), 57; and (2) that NIC maintained effective internal controls over financial reporting and that all deficiencies in those controls had been disclosed, *see* Amended Complaint ¶¶ 55(a), 56(a) & (b), 58.

Defendant first notes that the letters stated that the information therein was to the best of NIC's knowledge and belief, and he argues that the SEC has not alleged sufficient facts to show that he had knowledge of any intentional fraud by Mr. Fraser.

Again, however, the Court concludes that the complaint includes sufficient factual allegations to raise a plausible inference that defendant knew of the underlying fraud (either by Mr. Fraser or by NIC with respect to its annual reports and proxy statements).[9]

Defendant also argues that the statements regarding knowledge of any "fraud" were not false or misleading based on the definition of "fraud" as used in the letters to the auditors (which were attached to the complaint).  Each letter cited in the amended complaint stated that the term "fraud" was understood to mean "those matters described in Statement on Auditing Standards No. 99 [SAS 99]."  For that reference to SAS 99, both parties have cited the document *Consideration of Fraud in a Financial Statement Audit*, AU Section 316.  In that document, "fraud" is defined as "an intentional act that results in a material misstatement in financial statements that are the subject of an audit." *Id.* § 316.05.  Defendant argues that because the SEC has not pointed to any fraud in NIC's financial statements (for the reason that, because the alleged perquisites were already accounted for as business expenses instead of compensation to Mr. Fraser, the financial statements were essentially correct), the letters' statements that NIC did not have any knowledge of any "fraud" were not false.

The SEC does not dispute that there has been no such misstatement alleged

---

[9]Although defendant argues that scienter must be alleged in connection with this claim, the case he cites actually holds to the contrary.  *See SEC v. Espuelas*, 579 F. Supp. 2d 461, 487 (S.D.N.Y. 2008) ("Like Rule 13b2-1, 13b2-2 does not require the SEC to plead scienter.").  The Court need not resolve the issue, however, as the SEC's allegations would satisfy a requirement of pleading scienter.

relating to the financial statements.  Instead, it argues that AU Section 316.06 indicates that "fraud" covers not only "misstatements arising from fraudulent financial reporting," but also "misstatements arising from misappropriation of assets."  *See id.* § 316.06.  In elaborating on the latter type of misstatement, however, the document states: "The scope of this section includes only those misappropriations of assets for which the effect of the misappropriation causes the financial statements not to be fairly presented, in all material respects, in conformity with GAAP."  The SEC has not offered any reason why the fraud alleged in this case caused NIC's financial statements to be inaccurate.

Accordingly, the Court agrees with defendant that the letters to the auditors limited the meaning of the word "fraud" as used in the letters, and that the SEC has not alleged facts to support a claim that the statements disclaiming a knowledge of "fraud" (as defined) were false.  Accordingly, the Court grants defendant's motion to that extent, and it dismisses Count Six to the extent based on the misstatements alleged in Paragraphs 55(b), 56(c), and 57 of the amended complaint.

Defendant argues that the lack of any misstatements in the financial statements also dooms the SEC's claims based on the letters' references to NIC's "internal control over financial reporting."  Defendant notes that the 2005, 2006, and 2007 letters state that they are provided in connection with the auditors' opinions as to "whether the Company maintained, in all material respects, effective internal control over financial reporting . . . based on the criteria established in *Internal Control—Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway

34

Commission (COSO)."  The COSO document relates in pertinent part to "financial reporting," that is, "the preparation of reliable published financial statements."  It is possible, however, that NIC did not have effective internal control relating to the preparation of financial statements (based on the failure to require proper expense documentation from Mr. Fraser, for instance) even if no financial statements were misstated.  Accordingly, defendant has not shown that theses statements in the letters to the auditors could not have been false, and the Court therefore denies defendant's motion as it relates to the other bases for Count Six.[10]

## VII.   **Count Seven**

In Count Seven, the SEC alleges that defendant "knowingly circumvented or knowingly failed to implement a system of internal accounting controls or knowingly falsified books, records, or accounts," in violation of Section 13(b)(5) of the Exchange Act, 15 U.S.C. § 78m(b)(5).  Defendant argues that scienter must be shown and that the SEC has failed to allege facts supporting an inference that defendant had the requisite knowledge.  The court rejects this argument for the same reasons set forth above with respect to the allegations bearing on defendant's knowledge.  *See supra* Parts IV.B, V, VI.  Accordingly, the Court denies defendant's motion for dismissal of Count Seven.

---

[10]The 2003 and 2004 letters deny any deficiencies in internal controls affecting "financial data," and do not contain any reference in that context to "financing reporting" or to the COSO document.  Accordingly, defendant's argument fails with respect to those years and the allegation in Paragraph 55(a) of the amended complaint.

## VIII.   **Counts Five and Eight**

In Count Five of the amended complaint, the SEC alleges that defendant aided and abetted NIC's violations of Sections 13(b)(2)(A) and (B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A) and (B), which require accurate books and records "in reasonable detail" and a system of internal accounting controls sufficient to provide "reasonable assurances" that transactions are recorded as necessary to permit the proper preparation of financial statements and to maintain accountability for assets.  In Count Eight, the SEC alleges a violation of Exchange Act Rule 13b2-1, 17 C.F.R. § 240.13b2-1, based on defendant's causing the falsification of books and records.

Defendant argues that the facts in the amended complaint do not establish a violation of the applicable "reasonableness" standard as a matter of law.  Defendant points in particular to certain factors set out in the SEC's Staff Accounting Bulletin No. 99 (SAB 99), 64 Fed. Reg. 4515001, 45154, 1999 WL 625156 (Aug. 19, 1999).  This standard of reasonableness presents a fact question, however, and defendant has not provided any authority supporting his argument that this issue should be decided as a matter of law.  Moreover, SAB 99 makes clear that the factors cited by defendant are not exhaustive, as it indicates that any factors relating to a misstatement's materiality should also be considered.  For the same reasons set forth above with respect to materiality, *see supra* Part IV.D, the Court concludes that the SEC has stated plausible claims as alleged in Counts Five and Eight, and the Court therefore denies defendant's motion to dismiss those counts.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion to dismiss the amended complaint (Doc. # 23) is **granted in part and denied in part**. The motion is granted with respect to Counts One, Two, Three, Four, and Nine to the extent they are based on the conduct alleged in Paragraph 50 of the amended complaint, and with respect to Count Six to the extent it is based on the conduct alleged in Paragraphs 55(b), 56(c), and 57 of the amended complaint; and those claims are hereby dismissed.  The motion is denied in all other respects.

IT IS SO ORDERED.

Dated this 4th day of August, 2011, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge