## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## KANSAS CITY DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br>                           **Plaintiff,** <br><br>      **v.** <br><br> STEPHEN M. KOVZAN, <br><br>                          **Defendant.** | Civil No. 11-CV-2017 JWL/KGS |

## ANSWER OF STEPHEN M. KOVZAN

Defendant Stephen M. Kovzan, by his undersigned counsel, responds to the allegations in the complaint as follows:[1/]

1.  In response to the allegations in paragraph 1, Mr. Kovzan admits that: (i) NIC Inc. ("NIC" or the "Company") is a publicly-traded technology services company incorporated in Delaware and headquartered in Kansas; (ii) Mr. Kovzan currently is NIC's Chief Financial Officer ("CFO") and formerly was NIC's Chief Accounting Officer ("CAO"); (iii) at times between 2002 and 2006, Jeffery Fraser was NIC's Chief Executive Officer ("CEO") and Chairman of its Board of Directors; (iv) Mr. Kovzan assisted in the preparation and review of certain public filings NIC made with the Securities and Exchange Commission (the "Commission") between 2002 and 2006, lacked authority to make the final determination of the contents of these filings, and signed certain of those filings after they were approved by the Board of Directors; and (v) by February 6, 2008, as a result of internal reviews led by NIC's

---

[1/]   Mr. Kovzan reserves the right to amend his Answer based on information learned during pre-trial discovery.

Audit Committee of expenses reimbursed to certain executive officers, Mr. Fraser repaid NIC certain amounts for business expenses previously claimed by him and reimbursed by NIC during the period from January 2004 through October 2006.  Mr. Kovzan denies the remaining allegations in paragraph 1.

2.     In response to the allegations in paragraph 2, Mr. Kovzan admits that at times he was aware that Mr. Fraser did not submit receipts supporting certain of his reimbursement requests for business expenses incurred, and Mr. Kovzan advised his superiors of these facts. Mr. Kovzan denies the remaining allegations in paragraph 2.

3.     In response to paragraph 3, Mr. Kovzan admits that by February 6, 2008, as a result of an internal review led by NIC's Audit Committee of expenses reimbursed to certain executive officers, Mr. Fraser repaid NIC certain amounts for business expenses previously claimed by him and reimbursed by NIC during the period from January 2004 through October 2006, and otherwise denies the allegations in paragraph 3.

4.     In response to paragraph 4, Mr. Kovzan admits that as Chief Accounting Officer he played a role, together with others, including his superiors, in implementing NIC's internal controls and policies and in maintaining NIC's book, records and accounts, and otherwise denies the allegations.

5.     In response to paragraph 5, Mr. Kovzan admits that he sold some shares of NIC stock between 2002 and 2006, and otherwise denies the allegations.

6.     Denied.

7.      No response is requested to the allegations in paragraph 7, which purport to describe this action, but to the extent a response is required Mr. Kovzan admits that the Amended Complaint sets forth plaintiff's claims and requests for relief and otherwise denies the allegations.

8.      The complaint contains no paragraph numbered 8.

9.      The complaint contains no paragraph numbered 9.

10.     The complaint contains no paragraph numbered 10.

11.     Mr. Kovzan admits the Court has jurisdiction over the claims pleaded in the Amended Complaint.

12.     In response to the allegations in paragraph 12, Mr. Kovzan admits that he used the means and instrumentalities of interstate commerce in connection with certain matters described in the complaint, and otherwise denies the allegations.

13.     Mr. Kovzan admits that venue over this action is proper in this district.

14.     In response to the allegations in paragraph 14, Mr. Kovzan admits the allegations in sentences 1-3, admits that he was licensed to practice as a CPA in Missouri and Kansas, admits that he worked at Pricewaterhouse Coopers LLP and a predecessor firm, admits that NIC was one of the audit accounts he worked on, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 14, and denies them on that basis.

15.     In response to the allegations in paragraph 15, Mr. Kovzan admits that Jeffery Fraser was a founder of NIC, that Mr. Fraser served as the CEO of NIC and/or its predecessor company at times between May 2002 until February 2008, and that Mr. Fraser sat on NIC's Board of Directors at times between 1999 and September 2009 (some of which time Mr. Fraser was Chairman).  Mr. Kovzan lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 15, and denies them on that basis.

16.     Mr. Kovzan admits the allegations in paragraph 16.

17.     Mr. Kovzan admits the allegations in paragraph 17.

18.     In response to the allegations in paragraph 18, Mr. Kovzan admits that (i) he was part of NIC's disclosure team and played a role, together with others, including his superiors, in preparing and reviewing certain annual reports, proxy statements, and registration statements NIC filed with the Commission covering the years 2002-2006, including executive compensation disclosures in certain of NIC's proxy statements, but did not have the final authority to determine the content of any NIC disclosures during this period; (ii) pursuant to approval from NIC's Board of Directors, he signed certain of NIC's annual reports from 2002 through 2006, which are the best evidence of their contents; (iii) pursuant to approval from NIC's Board of Directors, he signed registration statements on Form S-8/A filed with the Commission on May 10, 2004, Form S-3 filed with the Commission on October 14, 2005, Form S-8 filed with the Commission on July 25, 2006, and two Forms S-8 filed with the Commission on November 20, 2006, which are the best evidence of their contents; and (iv) together with other NIC executives, he signed management representation letters to NIC's independent

auditors at times between 2002 through 2007.  Mr. Kovzan denies the remainder of the
allegations in paragraph 18.

19.     In response to the allegations in paragraph 19, Mr. Kovzan admits that he (i)
worked in NIC's finance department during the relevant period and had duties related to internal
controls, budgeting, and forecasting; (ii) was the immediate supervisor of the NIC employee
with primary responsibility for handling taxes in conjunction with PricewaterhouseCoopers,
which prepared NIC's tax returns; (iii) reported to the then-CFO with respect to all of his duties;
and (iv) became NIC's CFO effective August 16, 2007.  Mr. Kovzan otherwise denies the
allegations in paragraph 19.

20.     In response to the allegations in paragraph 20, Mr. Kovzan admits that NIC was
subject to the requirements of Regulation S-K, including Item 402, which is the best evidence of
its contents over time, and otherwise denies the allegations.  Mr. Kovzan admits that Mr. Fraser
was NIC's principal executive officer during the period in which Mr. Fraser served as NIC's
CEO, that during that period NIC was required to disclose Mr. Fraser's compensation pursuant
to Item 402, and that Mr. Kovzan was familiar with Item 402.  Mr. Kovzan otherwise denies the
allegations in paragraph 20.

21.     Denied.

22.     In response to the allegations in paragraph 22, Mr. Kovzan admits that (i) NIC at
times had policies regarding executive expense reporting, which are the best evidence of their
contents; (ii) NIC had a Code of Business Conduct and Ethics, at least one version of which was
posted on NIC's website and referenced in certain of NIC's definitive proxy statements, and
which is the best evidence of its contents; (iii) at times Mr. Fraser used his corporate credit card

for personal expenses and undertook to identify and reimburse those personal expenses; (iv) at times Mr. Fraser submitted insufficient documentation for claimed business expenses; and (v) as a result of internal reviews led by NIC's Audit Committee of expenses reimbursed to certain executive officers, Mr. Fraser repaid NIC certain amounts for business expenses previously claimed by him and reimbursed by NIC during the period from January 2004 through October 2006.  Mr. Kovzan otherwise denies the allegations in paragraph 22.

23.     Denied.

24.     In response to the allegations in paragraph 24, Mr. Kovzan admits that (i) at times he was sent or copied on email communications attaching lengthy spreadsheets containing certain of Mr. Fraser's credit card charges, Mr. Fraser's proposed budgets, and/or monthly consolidated income statements, which documents are the best evidence of their contents, and which he may or may not have reviewed; (ii) minutes of an October 2005 meeting of NIC's Compensation Committee reflect approval for leasing a company car for Mr. Fraser; and (iii) at times NIC paid certain expenses associated with housing used by Mr. Fraser when he was in Kansas conducting NIC business.  Mr. Kovzan denies the remainder of the allegations in paragraph 24.

25.     In response to the allegations in paragraph 25, Mr. Kovzan admits that (i) NIC's policy or practice was to pay expenses charged to corporate credit cards by all employees, including Mr. Fraser, and for the employees to submit expense reports thereafter; (ii) at times Mr. Fraser submitted insufficient documentation for claimed business expenses, which was made known to Mr. Kovzan's superiors; and (iii) with the knowledge and acquiescence of Mr. Kovzan's superiors, at times Mr. Fraser used his corporate credit card for personal expenses and

undertook to identify and reimburse those personal expenses.  Mr. Kovzan lacks sufficient

knowledge or information to form a belief as to the truth of the remainder of the allegations in

paragraph 25 and denies them on that basis.

26.     In response to the allegations in paragraph 26, Mr. Kovzan admits that (i) at some

points in time he was advised that Mr. Fraser was submitting insufficient documentation for

claimed business expenses, which was also communicated to Mr. Kovzan's superiors; (ii) NIC's

Audit Committee in 2007 retained outside counsel to conduct an internal review of Mr. Fraser's

expenses; and (iii) he was interviewed during the course of that review.  Mr. Kovzan denies the

remainder of the allegations in paragraph 26.

27.     In response to the allegations in paragraph 27, Mr. Kovzan admits that (i) as the

primary authorized signer on NIC's main operating bank account, his digitized signature

appeared on nearly all Company checks during the period 2003 through 2006, and (ii) at some

point he learned that Mr. Fraser submitted some reimbursement requests for cash expenses in

round amounts, which was also known by Mr. Kovzan's superiors, and otherwise denies the

allegations.

28.     In response to the allegations in paragraph 28, Mr. Kovzan admits the existence of

emails dated August 6, 2003, September 29, 2003 and October 2, 2003, from NIC's Assistant

Controller to NIC's then-CFO (who was Mr. Kovzan's supervisor) and Mr. Kovzan, together

with attachments, each of which is the best evidence of its contents, and which may or may not

have been reviewed in their entirety by Mr. Kovzan.  Mr. Kovzan otherwise denies the

allegations in paragraph 28.

29.     In response to the allegations in paragraph 29, Mr. Kovzan admits the existence of an email dated June 28, 2005 from NIC's Assistant Controller to Mr. Kovzan, together with an attachment, which is the best evidence of its contents, and which may or may not have been reviewed in its entirety by Mr, Kovzan, that he forwarded a copy of this email to NIC's then-Chief Operating Officer for further action, and otherwise denies the allegations.

30.     In response to the allegations in paragraph 30, Mr. Kovzan admits the existence of an email dated November 9, 2005 from NIC's Assistant Controller to Mr. Kovzan, which is the best evidence of its contents, and which may or may not have been reviewed in its entirety by Mr, Kovzan, and otherwise denies the allegations.

31.     In response to the allegations in paragraph 31, Mr. Kovzan admits the existence of an email exchange dated June 2, 2004 between him and his supervisor, NIC's then-CFO, which is the best evidence of its contents, and otherwise denies the allegations.

32.     Denied.

33.     In response to the allegations in paragraph 33, Mr. Kovzan admits that during the period 2002 through 2006: (i) he understood Mr. Fraser resided in Wyoming; (ii) he understood Mr. Fraser's main office during this period was located in Wyoming, either in dedicated office space or a home office; (iii) he understood that Mr. Fraser sporadically used an office at NIC's Kansas headquarters; and (iv) NIC's Board or a Committee thereof approved certain of Mr. Fraser's business expenses, including his use of private aircraft for business travel, including travel between Wyoming and Kansas.  Mr. Kovzan otherwise denies the allegations in paragraph 33.

34.     In response to the allegations in paragraph 34, Mr. Kovzan admits the existence of an email dated January 5, 2004 from NIC's Assistant Controller to NIC's then-CFO and Mr. Kovzan, which is the best evidence of its contents, and otherwise denies the allegations.

35.     In response to the allegations in paragraph 35, Mr. Kovzan admits that NIC's Board or its committees approved many of Mr. Fraser's travel and other expenses.  Mr. Kovzan lacks sufficient knowledge or information to form a belief as to the truth of the remainder of the allegations in paragraph 35, and denies them on that basis.

36.     In response to the allegations in paragraph 36, Mr. Kovzan admits the existence of an email exchange dated March 26, 2005 between him and NIC's Audit Committee Chairman, which is the best evidence of its contents, and otherwise denies the allegations.

37.     Denied.

38.     In response to the allegations in paragraph 38, Mr. Kovzan admits the existence of a document purporting to be an April 18, 2006 email from NIC's Assistant Controller to NIC's then-Chief Operating Officer, which is the best evidence of its contents, and otherwise denies the allegations.

39.     In response to the allegations in paragraph 39, Mr. Kovzan admits the existence of an email dated April 30, 2006 from NIC's then-CFO to him, which is the best evidence of its contents, and otherwise denies the allegations.

40.     In response to the allegations in paragraph 40, Mr. Kovzan admits that NIC's Board of Directors or a committee thereof adopted additional procedures regarding executive expense reporting in or about mid-2006, and otherwise denies the allegations.

41.     In response to the allegations in paragraph 41, Mr. Kovzan admits the existence of written minutes of a Special Meeting of the Compensation Committee of NIC's Board of Directors, dated August 4, 2006, which are the best evidence of their contents, and otherwise denies the allegations.

42.     In response to the allegations in paragraph 42, Mr. Kovzan admits that Mr. Fraser repaid NIC approximately $110,000 for purported business expenses he claimed, and which NIC paid, during 2006.  Mr. Kovzan lacks sufficient knowledge or information to form a belief regarding the remaining allegations in paragraph 42 and denies them on that basis.

43.     In response to the allegations in paragraph 43, Mr. Kovzan admits (i) that in 2006 NIC's Board of Directors directed an internal review of certain of Mr. Fraser's 2006 expenses; (ii) that NIC's then-Chief Operating Officer, then-CFO, and General Counsel, in consultation with Mr. Kovzan and perhaps other persons, decided that the amount of potentially reimbursable expense claims by Mr. Fraser in the years before 2006 did not justify incurring the substantial expected time and expense of investigating Mr. Fraser's business expense claims in earlier periods; and (iii) the existence of an email dated August 16, 2006 from NIC's Assistant Controller to NIC's then-CFO and Mr. Kovzan, which is the best evidence of its contents.  Mr. Kovzan denies the remaining allegations in paragraph 43.

44.     In response to the allegations in paragraph 44, Mr. Kovzan admits the existence of an email dated September 26, 2006 from NIC's Assistant Controller to NIC's then-CFO, which NIC's then-CFO later forwarded to Mr. Kovzan, which is the best evidence of its contents, and otherwise denies the allegations.

45.     In response to the allegations in paragraph 45, Mr. Kovzan incorporates his responses to paragraph 42 and 43, and otherwise denies the allegations.

46.     Mr. Kovzan lacks sufficient knowledge or information to form a belief regarding the allegations in paragraph 46 and denies them on that basis.

47.     Denied.

48.     Denied.

49.      In response to the allegations in paragraph 49 and the related table, NIC's public filings are the best evidence of the amount of Mr. Fraser's compensation disclosed by NIC in those public filings, and Mr. Kovzan otherwise denies the allegations and the contents of the table.

50.     No answer is required to paragraph 50 in accordance with the Court's Memorandum and Order dated August 4, 2011, but to the extent a response is required, Mr. Kovzan denies the allegations.

51.     Denied.

52.     Denied.

53.     In response to the allegations in paragraph 53, Mr. Kovzan admits that he and other persons at NIC had responsibilities relating to NIC's accounting controls and books and records, that at all relevant times he reported to NIC's then-CFO in all respects, and otherwise denies the allegations.

54.     In response to the allegations in paragraph 54, Mr. Kovzan admits that he and other NIC executives signed annual management letters dated March 20, 2003, March 8, 2004, March 3, 2005, March 14, 2006, and March 13, 2007, and otherwise denies the allegations.

55.     In response to the allegations in paragraph 55(a), Mr. Kovzan admits the existence of management representation letters dated March 20, 2003 and March 8, 2004, which are the best evidence of their contents, denies making any misrepresentations, and otherwise denies the allegations in paragraph 55(a).  No response to the allegations in paragraph 55(b) is required in accordance with the Court's Memorandum and Order dated August 4, 2011, but to the extent a response is required, Mr. Kovzan admits the existence of management representation letters dated March 20, 2003 and March 8, 2004, which are the best evidence of their contents, denies making any misrepresentations, and otherwise denies the allegations in paragraph 55(b).

56.     In response to the allegations in paragraph 56(a) and (b), Mr. Kovzan admits the existence of management representation letters dated March 3, 2005, March 14, 2006 and March 13, 2007, which are the best evidence of their contents, denies making any misrepresentations, and otherwise denies the allegations in paragraph 56(a) and (b).  No response to the allegations in paragraph 56(c) is required in accordance with the Court's Memorandum and Order dated August 4, 2011, but to the extent a response is required, Mr. Kovzan admits the existence of management representation letters dated March 3, 2005, March 14, 2006 and March 13, 2007, which are the best evidence of their contents, denies making any misrepresentations, and otherwise denies the allegations in paragraph 56(c).

57.     No response is required to the allegations in paragraph 57 in accordance with the
Court's Memorandum and Order dated August 4, 2011, but to the extent a response is required,
Mr. Kovzan denies the allegations.

58.     Mr. Kovzan lacks information sufficient to form a belief as to the allegation that
there was a November 20, 2006 management representation letter and denies it on that basis.
Mr. Kovzan further denies making any false statements or misrepresentations to NIC's auditors,
incorporates by reference his response to paragraph 42, and otherwise denies the allegations.

59.     The complaint contains no paragraph numbered 59.

60.     The complaint contains no paragraph numbered 60.

61.     The complaint contains no paragraph numbered 61.

62.     The complaint contains no paragraph numbered 62.

63.     The complaint contains no paragraph numbered 63.

64.     The complaint contains no paragraph numbered 64.

65.     The complaint contains no paragraph numbered 65.

66.     In response to the allegations in paragraph 66, Mr. Kovzan admits that NIC filed a
Form 8-K on February 6, 2008, which is the best evidence of its contents, and otherwise denies
the allegations.

67.     In response to the allegations in paragraph 67, Mr. Kovzan admits that NIC is
traded on the NASDAQ exchange under the symbol EGOV and the best evidence of NIC's

stock price at all relevant times are the public reports of trading on that exchange, denies that NIC's stock price movement during this period was attributable to disclosures regarding Mr. Fraser's expense reimbursements, and otherwise denies the allegations.

68.     In response to the allegations in paragraph 68, Mr. Kovzan admits that he sold more than 110,000 shares of NIC stock between November 2003 and May 2008, and that he became NIC's CFO in August 2007, and otherwise denies the allegations in paragraph 68.

69.     Denied.

70.     Denied.

71.     In response to the allegations in paragraph 71, Mr. Kovzan incorporates by reference paragraphs 1-68, above.

72.     Denied.

73.     Denied.

74.     In response to the allegations in paragraph 74, Mr. Kovzan incorporates by reference paragraphs 1-71, above.

75.     Denied.

76.     Denied.

77.     In response to the allegations in paragraph 77, Mr. Kovzan incorporates by reference paragraphs 1-74, above.

78.     Denied.

79.     Denied.

80.     In response to the allegations in paragraph 80, Mr. Kovzan incorporates by reference paragraphs 1-77, above.

81.     In response to the allegations in paragraph 81, Mr. Kovzan admits the existence of Section 13(a) of the Exchange Act and Exchange Act Rule 12b-20, which are the best evidence of their contents, and otherwise denies the allegations.

82.     Denied.

83.     Denied.

84.     Denied.

85.     In response to the allegations in paragraph 85, Mr. Kovzan incorporates by reference paragraphs 1-82, above.

86.     In response to the allegations in paragraph 86, Mr. Kovzan admits the existence of Section 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act, which are the best evidence of their contents, and otherwise denies the allegations.

87.     Denied.

88.     Denied.

89.     Denied.

90.     In response to the allegations in paragraph 90, Mr. Kovzan incorporates by reference paragraphs 1-87, above.

91.     Denied.

92.     Denied.

93.     In response to the allegations in paragraph 93, Mr. Kovzan incorporates by reference paragraphs 1-90, above.

94.     Denied.

95.     Denied.

94.     The complaint contains two paragraphs numbered 94.  In response to the allegations in the second paragraph numbered 94, Mr. Kovzan incorporates by reference paragraphs 1-93, above.

95.     Denied.

96.     Denied.

97.     In response to the allegations in paragraph 97, Mr. Kovzan incorporates by reference paragraphs 1-94, above.

98.     In response to the allegations in paragraph 98, Mr. Kovzan admits the existence of Section 14(a) of the Exchange Act, Rule 14a-3, and Rule 14a-9, which are the best evidence of their contents, and otherwise denies the allegations.

99.     Denied.

100.    Denied.

101.    Denied.

## PLAINTIFF'S PRAYER FOR RELIEF

Mr. Kovzan denies that plaintiff is entitled to any relief in connection with the allegations and claims set forth in the complaint.

## AFFIRMATIVE DEFENSES

Mr. Kovzan alleges the following affirmative defenses to the allegations and claims set forth in the complaint.  These defenses are in addition to the defense that the claims asserted fail by reason of the lack of evidence to prove under the applicable burden of proof any required element of those claims.  By alleging the matters set forth in these defenses, Mr. Kovzan does not allege or admit that he has the burden of proof and/or persuasion with respect to any of these matters.  Mr. Kovzan presently lacks sufficient knowledge or information on which to form a belief as to whether he may have available additional affirmative defenses.  For this reason, Mr. Kovzan hereby gives notice that he intends to rely upon such other and further defenses as they become available or apparent during pretrial proceedings in this action and may seek to amend this Answer to assert any such additional defenses.

## <u>FIRST AFFIRMATIVE DEFENSE</u>

### (Failure To State a Claim)

The complaint fails to state a claim upon which relief can be granted insofar as it fails to provide grounds for inferring that: the alleged expenses paid by NIC were executive compensation or perquisites; the alleged misleading disclosures or nondisclosures were material; Mr. Kovzan was responsible for any alleged misleading disclosures or nondisclosures; NIC's books and records or internal controls failed to comply with the law; any alleged communication

by Mr. Kovzan to NIC's independent auditors was inaccurate or misleading; Mr. Kovzan circumvented NIC's internal controls; Mr. Kovzan falsified any books and records; or Mr. Kovzan acted with the required state of mind.

## SECOND AFFIRMATIVE DEFENSE

### (Statute of Limitations)

To the extent the claims alleged in the complaint are founded on alleged violations of law occurring more than five years before the date the complaint was filed, they are barred by the applicable statute of limitations for reasons previously set forth in Mr. Kovzan's motion to dismiss.

## THIRD AFFIRMATIVE DEFENSE

### (Equitable Doctrines)

The claims alleged in the complaint are barred, in whole or in part, under the doctrine of laches because plaintiff unduly delayed the commencement of the claims to Mr. Kovzan's prejudice, and rendering evidence supportive of his defense stale or inaccessible.

## FOURTH AFFIRMATIVE DEFENSE

### (Good Faith)

Mr. Kovzan at all times acted in good faith and with good cause.

## FIFTH AFFIRMATIVE DEFENSE

### (Reliance on Others)

Mr. Kovzan reasonably relied in good faith upon the representations, information, opinions, reports and/or statements prepared or presented by one or more officers, employees or advisers of NIC, whom Mr. Kovzan reasonably believed to be fully-informed, honest, reliable

and competent in the matters presented.

## SIXTH AFFIRMATIVE DEFENSE

### (Failure To Provide Notice of Alleged Regulatory Requirements)

The Commission failed to provide fair, sufficient and adequate notice of the regulatory requirements it now asserts applied to NIC's disclosures of perquisites and executive compensation in the period 2002-2006 pursuant to section 14 of the Securities Exchange Act of 1934, Commission Regulation 14A, Schedule 14A, Item 402 of Commission Regulation S-K, or other applicable Commission rules or regulations.  Prior to the dates of NIC's allegedly misleading disclosures, the Commission failed to provide reasonable notice of the positions it now asserts as plaintiff in this action regarding the required disclosure as executive compensation or perquisites of either NIC's payment of Mr. Fraser's business travel expenses or NIC's reimbursement of expenses Mr. Fraser represented to be legitimate business expenses.  At no point in time did the Commission provide regulatory or interpretive guidance that would allow Mr. Kovzan or other persons similarly situated to conclude that expense reimbursements in the nature of those alleged here were to be treated as executive compensation or perquisites, and for the entire period from 1983 to 2006, the Commission provided no guidance whatsoever on how to determine when executive expense reimbursements should be disclosed as executive compensation or perquisites.  When the Commission promulgated new guidance in September 2006, it acknowledged that this followed "decades [of] questions ... as to what is a perquisite or personal benefit required to be disclosed."  As a result, Mr. Kovzan had no fair or reasonable notice that NIC's executive compensation disclosures were incorrect or misleading in any respect.

## SEVENTH AFFIRMATIVE DEFENSE

### (Injunctive Relief Not Warranted)

Injunctive relief is unavailable because there has been no violation of the securities laws, any violations of law that may have occurred were not egregious, the lack or degree of scienter does not support injunctive relief, there is no reasonable likelihood that any violations that may have occurred will recur, the adverse effects of an injunction outweigh any benefit from the injunction, and a consideration of the public and private equities does not support injunctive relief.

## EIGHTH AFFIRMATIVE DEFENSE

### (Officer or Director Bar Not Warranted)

No order should issue barring Mr. Kovzan from acting as an officer or director of a public company because the evidence does not demonstrate he is unfit to serve in that capacity.

## NINTH AFFIRMATIVE DEFENSE

### (Disgorgement Not Warranted)

No disgorgement should be granted because Mr. Kovzan received no profits, ill-gotten gains, or any form of pecuniary benefit from the alleged misconduct.

## TENTH AFFIRMATIVE DEFENSE

### (Penalties Not Warranted)

The imposition of a civil penalty is not appropriate because as to any violations of law that may have occurred: they were not egregious; the lack or degree of scienter does not support a penalty; the harm caused, if any, is insufficient to warrant a penalty; Mr. Kovzan was not unjustly enriched; Mr. Kovzan has no previous violations; no deterrence purpose would be

served; Mr. Kovzan acted in good faith; Mr. Kovzan cooperated with all investigations into the reimbursement of Mr. Fraser's expenses; Mr. Kovzan played a significant role in developing and implementing remedial steps by the Company; and it would be fundamentally unfair to impose penalties on Mr. Kovzan in light of the lack of fair notice that his conduct violated the law.

## JURY DEMAND

Mr. Kovzan hereby requests a trial by jury on all respects of this case so triable.

**WHEREFORE**, Mr. Kovzan, having fully answered the complaint, respectfully requests that the Court:

1.     Dismiss the complaint with prejudice.

2.     Enter judgment in favor of Mr. Kovzan and an Order that plaintiff is entitled to no relief.

3.     Award Mr. Kovzan appropriate costs incurred to defend this action.

Dated: August 26, 2011

Respectfully submitted,

/s/ Stephen L. Hill, Jr.

Andrew B. Weissman (admitted *pro hac vice*)
Christopher Wilber (admitted *pro hac vice*)
Nicole R. Rabner (admitted *pro hac vice*)
J. David Zetlin-Jones (admitted *pro hac vice*)
WILMERHALE LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000
andrew.weissman@wilmerhale.com
christopher.wilber@wilmerhale.com
nicole.rabner@wilmerhale.com
david.zetlin-jones@wilmerhale.com

Stephen L. Hill, Jr. KS # 78029
Maxwell Carr-Howard KS # 21042
Lyndsey J. Conrad KS # 23527
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, Missouri  64112
(816) 983-8000
(816) 983-8080
stephen.hill@huschblackwell.com
max.carr-howard@huschblackwell.com
lyndsey.conrad@huschblackwell.com