IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SECURITIES AND                          )
EXCHANGE COMMISSION,                    )
                                        )
                Plaintiff,              )
                                        )
v.                                      )          Case No. 11-2017-JWL
                                        )
STEPHEN M. KOVZAN,                      )
                                        )
                Defendant.              )

**MEMORANDUM AND ORDER**

This matter comes before the court upon Defendant Stephen M. Kovzan's motion to

compel (ECF No. 61). The Securities and Exchange Commission has filed a response opposing

the motion. For the reasons explained below, the motion is granted in part and denied in part.

**I.      Procedural Conference Requirement**

The Federal Rules of Civil Procedure and this district's local rules require a moving party

to confer with opposing counsel about the discovery dispute at issue before filing a motion to

compel.[1] Defendant has submitted an affidavit that details defense counsel's attempts to confer

with opposing counsel about the discovery disputes.[2] The court finds that the efforts outlined in

the affidavit satisfy the procedural conference requirement.

**II.     Background**

The Securities and Exchange Commission (SEC) brings this civil enforcement action

against Defendant Stephen M. Kovzan. The SEC alleges that from 2002 to 2006, Mr. Kovzan

was involved with the preparation and signing of filings with the SEC that were materially false

---

[1] *See* Fed. R. Civ. P. 37(a)(1); D. Kan. Rule 37.2.

[2] *See* Decl. and Certificate of Compliance with Fed. R. Civ. P. 37 and D. Kan. Rule 37.2, ECF No. 64.

and misleading because they failed to disclose as income a chief executive officer's perquisites. The SEC contends then-CEO of NIC Inc., Jeffrey Fraser, received more than $1.18 million in perquisites that NIC did not report as income—including "payments for two homes; hunting expenses; vacations for Fraser, his girlfriend and his family; flight training; clothing; spa treatments; personal computers and electronics; health club memberships; a luxury car; and costs for Fraser to commute by private aircraft from his home in Wyoming to his office at NIC's Kansas headquarters."[3]

## III.    Discussion

### A.    Disclosure of Expenses the SEC Contends Constitute Undisclosed Perquisites

Mr. Kovzan's Interrogatory No. 1 asks the SEC to "Identify each and every expense You contend constituted an undisclosed perquisite to Jeffrey S. Fraser, including but not limited to the 'undisclosed perquisites' alleged in the Paragraph 49 of the Complaint."[4] Subpart (a) of the interrogatory asks the SEC to identify all evidence supporting the inference that each expense constituted an undisclosed perquisite.[5] And subpart (b) asks the SEC to identify all evidence supporting the inference that Mr. Kovzan knew or recklessly disregarded that the expense constituted an undisclosed perquisite.[6]

When the SEC originally responded to the interrogatory, it lodged several objections but then answered subject to the objections by directing Mr. Kovzan to certain documents. Mr.

---

[3] Am. Compl. at ¶ 3, ECF No. 22

[4] Pl.'s Resps. and Objections to Def.'s First Set of Interrogs. at 6, ECF No. 63-1.

[5] *Id.* at 9.

[6] *Id.* at 11.

Kovzan argues that this response is insufficient. Fed. R. Civ. P. 33(d) outlines when a responding party may produce business records in lieu of providing a direct answer to an interrogatory. The subsection states that,

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
> (1) specifying the records that must be reviewed . . . and
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

The option to produce business records would not often completely satisfy a contention interrogatory because contention interrogatories by their very nature seek information about the responding party's opinion or contention with regard to the facts or application of the law to the facts. It is difficult to see how business records could adequately answer this inquiry.

The documents the SEC designated do not shed light on what the SEC believes were undisclosed perquisites—a central issue in this case. For example, Mr. Kovzan notes that one of the documents simply lists all of Mr. Fraser's credit card charges. This document does little to illuminate which of the charges are at issue. The SEC argues that other documents contain more direct information about undisclosed perquisites—documents showing the material or principal facts supporting its allegations that Mr. Fraser received undisclosed perquisites. The problem with allowing the SEC to respond in this manner is that these documents do not provide a complete picture of *all* of the expenses the SEC contends were undisclosed perquisites. The court finds the SEC's response was insufficient.

Despite this, the court must consider whether the SEC is required to answer at all. The

SEC asserts a work-product objection to this interrogatory. When the parties were attempting to resolve this dispute before Mr. Kovzan filed his motion to compel, the SEC disclosed it possessed spreadsheets that apparently contain information similar to what this interrogatory seeks. The SEC states that during these conversations, Mr. Kovzan sought production of these spreadsheets. That issue, however, is not before the court. Mr. Kovzan has not moved to compel a response to a request for production of the spreadsheets. And the SEC's organization of information into spreadsheet-form does not transform the underlying information into attorney work product.[7]

Mr. Kovzan has served a permissible contention interrogatory, the purpose of which "is to narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position."[8] The work-product doctrine "does not apply to contentions and supporting facts."[9] Mr. Kovzan is entitled to know the factual basis for the SEC's claims.[10] For these reasons, the court overrules the SEC's work-product objection.

The SEC also seems to suggest this information is not relevant. The SEC states that it is not required to prove any particular number of undisclosed perquisites, which presumably means the SEC believes the individual expenses that it contends constitute undisclosed perquisites do

---

[7] *Schmitz v. Davis*, No. 10-4011-RDR , 2011 WL 1627010, at *8 (D. Kan. Apr. 29, 2011) (stating the attorney-client privilege and work-product doctrine do not shield underlying facts that exist independent of the attorney-client relationship).

[8] *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2009 WL 2058759, at *3 (D. Kan. July 15, 2009) (quoting *Steil v. Humana Kan. City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000)).

[9] *Presbyterian Manors v. Simplexgrinnell, L.P.*, No. 09-2656-KHV, 2010 WL 3880027, at *14 (D. Kan. Sept. 28, 2012) (quoting *Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625953, at *3 (D. Kan. Oct. 5, 1995)); *see also See Pouncil v. Branch Law Firm*, 277 F.R.D. 642, 649  (D. Kan. 2011) (contention interrogatories that ask for facts supporting a party's contentions are not work-product protected).

[10] *See Presbyterian Manors*, 2010 WL 3880027, at *14.

not matter. The information the interrogatory seeks, however, are facts central to the SEC's

claims. Knowing the expenses the SEC contends constitute undisclosed perquisites would likely

enable Mr. Kovzan to better defend against these allegations.  The SEC also points to Judge

Lungstrum's memorandum and order on Mr. Kovzan's motion to dismiss, which noted that the

SEC's amended complaint was not required to break down the alleged $1.18 million in

perquisites among the years and type of expenses alleged. Judge Lungstrum's opinion addresses

the sufficiency of the SEC's amended complaint, not whether this information is relevant and

discoverable. To the extent the SEC continues to rely on a relevance objection, it is overruled.

The court grants Mr. Kovzan's motion to compel as to Interrogatory No. 1 and its subparts. The

SEC shall fully respond to this interrogatory and may not simply produce records in lieu of

answering.

### B.      Non-Public Documents Regarding the SEC's Regulatory Guidance

Mr. Kovzan's Request Nos. 11-16, 18-20, and 32-34 seek documents relating to the

interpretive guidance the SEC has issued regarding certain terms used in Item 402 of SEC

Regulation S-K, which pertains to executive compensation. In addition, Request No. 64 seeks

"[a]ll documents stating, suggesting, or implying that an internal control related to the

documentation of expenses that had no impact on the ability of a public company to incorporate

those expenses into its financial statements is an 'internal control over financial reporting.'"[11]

During the course of this case, the SEC has agreed to produce some publicly available

information, as well as its investigative file. But the SEC objects to producing non-public

documents on the grounds that the information is not relevant and is also subject to the

---

[11] Securities and Exchange Commission's Supplemental Resps. and Objections to Def. Stephen M. Kovzan's First Req. for Prod. of Docs. and Things at 50, ECF No. 63-5.

deliberative-process privilege.

Fed. R. Civ. P. 26(b) states that, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . " Relevant information need not be admissible at trial so long as it is reasonably calculated to lead to the discovery of admissible evidence.[12] The court broadly construes relevance at the discovery stage of litigation, and "a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[13] "There is no presumption in the Federal Rules of Civil Procedure that a discovery request is relevant."[14] Relevance, however, is often apparent on the face of the request.[15]  When it is not, the proponent of the discovery has the burden to show the relevance of the discovery sought.[16] If a discovery request seeks facially relevant information or if the proponent has demonstrated relevance, the party resisting discovery must establish the lack of relevance by demonstrating that the requested discovery either: (1) is outside the scope of relevance as defined by Rule 26(b), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery.[17]

Mr. Kovzan argues this information is relevant for several reasons. First, Mr. Kovzan

---

[12] Fed. R. Civ. P. 26(b)(1).

[13] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001) (quoting *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999)).

[14] *Presbyterian Manors*, 2010 WL 3880027, at *7 (citing *Thompson v. Jiffy Lube Int'l, Inc.*, 05-1203-WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007)).

[15] *Id.* (citing *Thompson*, 2007 WL 608343, at *8 n.20).

[16] *Id.* (citing *Thompson*, 2007 WL 608343, at *8 n.20; *Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 309 (D. Kan. 1996)).

[17] *See id.* at *8 (citing *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2004)).

6

contends that these internal documents are relevant to the issue of scienter, which requires a

showing of an intent to defraud or recklessness.[18] Mr. Kovzan argues that the SEC's internal

communications and deliberations would likely show that SEC officials expressed concern about

the SEC's guidance on some of these issues, which could demonstrate the reasonableness of Mr.

Kovzan's alleged confusion regarding the reporting requirements. Mr. Kovzan also argues this

information is relevant to his defense that the SEC failed to provide fair notice of the regulatory

requirements. Because of this, Mr. Kovzan contends the relief sought by the SEC is

inappropriate given the SEC's lack of guidance. As to Request No. 64, which pertains to internal

controls, Mr. Kovzan states this information is relevant because Judge Lungstrum's order on Mr.

Kovzan's motion to dismiss identified the possibility that a flawed internal control that did not

impact NIC's financial statements could still be considered an "internal control over financial

reporting."

Information unknown to Mr. Kovzan does not appear relevant to the issue of whether Mr.

Kovzan himself was reckless or had an intent to defraud. Likewise, nonpublic information does

not appear relevant to establishing that the SEC's *public* guidance created an atmosphere of

uncertainty. And the nonpublic information does not appear relevant to interpreting the public

guidance—that is, what may constitute an internal control over financial reporting. In *SEC v.*

*Nacchio*, District Judge Marcia S. Krieger overruled a defendant's objections to a magistrate

judge's discovery order prohibiting certain discovery regarding SEC staff members'

communications and beliefs. Judge Krieger found no error in the magistrate judge's ruling that

SEC staff members' communications about accounting issues were subject to the deliberative-

---

[18] *See SEC v. Kovzan*, 807 F. Supp. 2d 1024, 1039 (D. Kan. 2011) (defining "scienter") (citing *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1257-58 (10th Cir. 2001)).

process privilege.[19] She separately found that this information was irrelevant to the issue of

scienter and the other issues in the case:

> Mr. Kozlowski explains that the thrust of these discovery requests
> is to reveal that the SEC itself believed that "the accounting issues
> were complex and/or required the exercise of subjective judgment,
> [etc. and] the SEC knew of the complexity and uncertainty and yet
> did not provide guidance." In essence, Mr. Kozlowski is urging a
> peculiar *ad hominem* type of argument: if the experts at the SEC
> find these issues complex and confusing, how could he be
> expected to understand it?
>
> Mr. Kozlowski's scienter is an essential element of the claims
> against him, but the knowledge or beliefs of the SEC—or, more
> accurately, individual employees of the SEC—is not probative of
> Mr. Kozlowski's thought process. If Mr. Kozlowski wishes to
> assert a defense that the accounting principles at issue here are ill-
> defined or that he did not (or could not) understand them, he may
> do so through his own testimony and the testimony of experts who
> will opine as such. What opinions SEC staffers may have on this
> point, however, is irrelevant.[20]

Mr. Kovzan argues that the discovery sought in *Nacchio* is not analogous to the

discovery he seeks in this case. In *Nacchio*, the defendant sought—among other

things—discovery concerning SEC employees' views about accounting issues. Mr. Kovzan

argues that the *Nacchio* court concluded this information was not relevant because the SEC had

promulgated a policy that it would defer to generally accepted accounting principles set forth by

the Financial Accounting Standards Board. In contrast, Mr. Kovzan states he is seeking

information about SEC Regulation S-K, which the SEC itself set forth.  Respectfully, the court

disagrees with Mr. Kovzan's interpretation of the statements in *Nacchio*. The opinion does not

make the observation that this information was irrelevant because the SEC had deferred to

---

[19] *SEC v. Nacchio*, 704 F. Supp. 2d 1099, 1110-12 (D. Colo. 2010).

[20] *Id.* at 1112 n.16.

another entity's principles. Rather, the opinion explicitly states that the information is irrelevant

because the knowledge and beliefs of the SEC did not bear upon the defendant's scienter. The

court shares the same opinion in this case and sustains the SEC's relevance objection. Mr.

Kovzan's motion to compel is denied as to these discovery requests.

The court also separately finds that Mr. Kovzan's requests seeking information about

Item 402 of SEC Regulation S-K are facially overly broad. For example, Request No. 11 seeks,

> All documents concerning the definition or interpretation of the
> term "perquisite" as it is used in Item 402 of Regulation S-K (17
> C.F.R. § 229.402) or any of its predecessors, including but not
> limited to, interpretive releases (or documents interpreting or
> analyzing interpretive releases), no-action letters, comment letters,
> speeches, publications, internal analyses, notes, emails, other
> formal or information communications of persons outside or within
> the Commission, court filings or filings in administrative
> proceedings.[21]

Other requests are equally sweeping and also apply to communications of persons outside or

within the SEC. And in the copy of the requests provided to the court, many of the requests

contain no explicit temporal limitations—something that typically renders discovery requests

objectionable on their face.[22]

Given the overly broad nature of Mr. Kovzan's discovery requests, the court finds that

the SEC's privilege logs are sufficient under the circumstances, as they pertain to these specific

discovery requests. Mr. Kovzan argues that the SEC's privilege logs are riddled with conclusory

---

[21] Securities and Exchange Commission's Supplemental Resps. and Objections to Def. Stephen M. Kovzan's First Req. for Prod. of Docs. and Things at 12-13, ECF No. 63-5.

[22] *See Hock Foods, Inc. v. William Blair & Co.*, No. 09-2588-KHV, 2011 WL 884446, at *7 n.61 (D. Kan. Mar. 11, 2011) (finding that a discovery request with no temporal scope was facially overly broad); *Stouder v. M&A Tech., Inc.*, No. 09-4113-JAR, 2011 WL 673763, at *4 (D. Kan. Feb. 17, 2011) (same); *Hammond v. Lowe's Home Ctrs.*, 216 F.R.D. 666, 672 (D. Kan. 2003) (same).

statements and fail to identify other responsive documents. For example, the SEC has not undertaken a search of employee e-mails, and apparently the SEC has identified three boxes of documents in storage at the National Archives that may or may not contain documents that relate to the interpretive guidance issued in 1978 and 1983.[23] Respectfully, it does not seem necessary to require the SEC to submit a more detailed privilege log given the nature of the document requests. The requests are extremely broad, likely encompassing a large quantity of documents, which the court has found are not relevant to this litigation.

Moreover, some of the document requests, on their face, seek information protected by the deliberative-process privilege. The deliberative-process privilege shields from discovery "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."[24] The rationale for the deliberative-process privilege is to encourage frank, open discussions that would "enhance the quality of agency decisions" and would be hampered "if each remark is a potential item of discovery and front page news[.]"[25] Generally, the party asserting the deliberative-process privilege must show the documents at issue are both "predecisional and deliberative."[26] A "predecisional" document is one that is "prepared in order to assist an agency decisionmaker in arriving at his decision . . . ."[27] "Postdecisional" communications may also be protected if they

---

[23] Stephen M. Kovzan's Mot. to Compel at 20, ECF No. 62.

[24] *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (discussing Exemption 5 in the Freedom of Information Act).

[25] *Id.* at 8-9 (internal quotations omitted).

[26] *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1227 (10th Cir. 2007).

[27] *Id.*

reflect a continuing examination of existing policy.[28] The privilege does not protect factual material or material that simply states or explains a decision.[29] In this case, however, Mr. Kovzan's briefs make clear that he is not seeking to compel factual material or material that simply explains the SEC's regulations. He seeks non-public communications that he believes would perhaps show that SEC employees found the regulations confusing—information either consisting of deliberative, predecisional documents or documents reflecting a continuing examination of existing policy.[30] The overly broad nature of these requests and the fact that some of the requests, on their face, seek information protected by the deliberative-process privilege, further bolster the conclusion that Mr. Kovzan's motion to compel should be denied as to Request Nos. 11-16, 18-20, 32-34, and 64.

### C.    Documents Bearing on Mr. Kovzan's Statute-of-Limitations Defense

Mr. Kovzan's Request Nos. 67-72 seek information about the SEC's review of NIC's and Mr. Fraser's filings. Mr. Kovzan contends some disclosures were so sufficiently unusual that the SEC could have noticed them—information that would bear upon Mr. Kovzan's statute-of-limitation defense. Subject to its objections, the SEC responded to these requests but refused to search hard-copy and electronic files of SEC employees who took part in the reviews of NIC's public disclosures or who participated in any other due diligence or investigations relating to

---

[28] *Nacchio*, 704 F. Supp. 2d at 1110-11 (interpreting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975), and concluding that a more reasonable approach to the deliberative-process privilege would be to evaluate whether disclosure of the documents would likely chill non-public agency discussion and decisionmaking).

[29] *Silverstein v. Federal Bureau of Prisons*, No. 07-cv-02471-PAB-KMT, 2009 WL 4949959, at *7 (D. Colo. Dec. 14, 2009).

[30] *See, e.g.,* Securities and Exchange Commission's Supp. Resps. and Objections to Def. Stephen M. Kovzan's First Req. For Prod. of Docs. and Things at 13, ECF No. 63-5 (requesting all documents concerning the SEC's decision to rescind all previous interpretive guidance related to the definition of the term "perquisite").

NIC. The SEC contends this information is not relevant.

28 U.S.C. § 2462 imposes a five-year statute of limitations on actions such as this one. In ruling on Mr. Kovzan's motion to dismiss, Judge Lungstrum found that the discovery rule applied to securities fraud claims asserted by the SEC that are subject to Section 2462.[31] Judge Lungstrum cited the Supreme Court opinion *Holmberg v. Armbrecht* for its often-quoted statement of the discovery rule:

> [T]his Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstance or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.[32]

Judge Lungstrum found that the SEC had pled sufficient allegations to invoke the discovery rule. He noted the SEC filed this action within five years of the date on which the SEC alleged it first received inquiry notice. He also cited the allegations in the SEC's complaint—pointing out that "[t]he SEC alleged that it 'proceeded with due diligence during the limitations period,' and the Court does not believe that any further allegations are necessary to refute a negative inference that the SEC should have learned something sooner."[33] The court also stated, "Whether the SEC acted diligently in this case presents a question of fact for later resolution."[34]

---

[31] *Kovzan*, 807 F. Supp. 2d. at 1034.

[32] *Id.* at 1030 (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (internal quotations omitted)).

[33] *Id.* at 1035.

[34] *Id.*

Given that the SEC's diligence is clearly an issue in the case, it is difficult to see how the information Mr. Kovzan seeks is irrelevant. The SEC's position on the topic is somewhat difficult to follow. The SEC contends that Judge Lungstrum agreed that the action was timely filed if the SEC first received inquiry notice in June 2007 and *subsequently* exercised due diligence in investigating and if the SEC could not have discovered the facts underlying the fraud until several years after receiving inquiry notice. The portion of Judge Lungstrum's opinion the SEC cites, however, amounts to a recitation of the SEC's arguments in opposition to the motion to dismiss.[35] The SEC says it has already produced its entire investigative file, which should provide information about its diligence during the investigation. But the SEC also argues that any discovery regarding diligence during the investigative period is irrelevant because the SEC commenced this action within five years of receiving inquiry notice. The SEC then states, "Thus, the Commission's periodic reviews of NIC's periodic filings prior to June 2007 are irrelevant."[36] The SEC concludes by arguing that the only remaining question is whether the SEC had inquiry notice of the alleged fraud prior to June 2007. To that end, the SEC says it has already provided sufficient information for Mr. Kovzan to evaluate this.

The SEC's position on relevance in this respect is too narrow. Judge Lungstrum's opinion explicitly states the SEC's diligence is a fact issue in this case. Case law defining the discovery rule also makes clear that it applies in fraud cases when a party remains ignorant of the

---

[35] *See id.* at 1029 ("The SEC argues that if [the discovery rule] is applied, the action is timely, based on its allegations that it first received inquiry notice of the fraud at issue here in June 2007, that it subsequently exercised due diligence in investigating, and that it could not have discovered the facts underlying the fraud until several years after receiving inquiry notice.").

[36] Securities and Exchange Commission's Mem. of Law in Opp'n to Def. Stephen M. Kovzan's Mot. to Compel at 18, ECF No. 65.

fraud "without any fault or want of diligence or care" on its part.[37] As Judge Lungstrum's opinion states, "for more than a century, courts have understood that fraud is deemed to be discovered when, *in the exercise of reasonable diligence*, it could have been discovered."[38] So, the discovery Mr. Kovzan seeks leading up to June 2007—when the SEC says it received inquiry notice—appears relevant, and the SEC has not carried its burden to show how this discovery is not relevant.

That said, many of Mr. Kovzan's discovery requests encompass information and documents generated after June 2007. Mr. Kovzan has said these discovery requests bear upon his statute-of-limitations defense. As Mr. Kovzan describes, the "key question" for this defense "is whether plaintiff was on 'inquiry notice' *prior to* the receipt of a whistleblower complaint in June 2007."[39] The court agrees with this statement, but the question remains how documents created after June 2007 would be relevant to showing whether the SEC was on inquiry notice prior to June 2007. The court finds this information does not appear facially relevant, and Mr. Kovzan has failed to set forth an adequate explanation of how this information bears on issues in the case.

The court sustains in part and overrules in part the SEC's relevance objection. The motion to compel is granted in part as to Request Nos. 67-72, as limited to documents and information created prior to and including June 2007.

### D.    Documents Supporting Allegations in the NIC Complaint

---

[37] *Kovzan*, 807 F. Supp. 2d. at 1030 (quoting *Holmberg*, 327 U.S. at 397)

[38] *Id.* (emphasis supplied).

[39] Reply Mem. of Law in Supp. of Stephen M. Kovzan's Mot. to Compel at 23, ECF 66 (emphasis supplied).

14

Mr. Kovzan's Request Nos. 74-82 seek evidentiary support for allegations contained in the civil complaint the SEC filed naming NIC as a defendant. Subject to its general objections, the SEC's initial responses to these requests state that the SEC had produced all non-privileged documents subject to the requests. The SEC believes that production of its entire investigative file should be sufficient. Mr. Kovzan seeks an order compelling the SEC to either produce the documents on a request-by-request basis or to identify specific documents in its production that are responsive to each request.

Fed. R. Civ. P. 34(b)(2)(E) applies to producing documents or electronically stored information in response to a discovery request. The rule provides that "[u]nless otherwise stipulated by the parties or ordered by the court" the producing party "must produce documents as they are kept in the usual course of business or must organize and label them to correspond with the categories in the request[.]"[40] If the producing party elects to produce the documents in the order in which they are kept in the usual course of business, the plain language of the rule imposes no duty on the producing party "to organize and label the documents, provide an index of documents produced, or correlate the documents to a particular request to which they are responsive."[41] The rule, however, does not define what it means to "produce documents as they are kept in the usual course of business." Relying on an opinion from the Southern District of New York, *SEC v. Collins & Aikman Corporation*, Mr. Kovzan argues that because of the extraordinary nature of an SEC investigation, an investigative file cannot be deemed as being

---

[40] Fed. R. Civ. P. 34(b)(2)(E)(i).

[41] *MGP Ingredients, Inc. v. Mars, Inc.*, No. 06-2318, 2007 WL 3010343, at *3 (D. Kan. Oct. 15, 2007).

created in the usual course of business.[42]

In *Collins & Aikman*, the court analogized Rule 34 to Fed. R. Evid. 803(6), an exception to the hearsay rule regarding records of regularly conducted activity. The district court reasoned that a party producing discovery documents pursuant to Fed. R. Civ. P. 34 could show the records were kept "in the usual course of business" by meeting one of two tests: "*First*, this option is available to commercial enterprises or entities that function in the manner of commercial enterprises. *Second*, this option may also apply to records resulting from 'regularly conducted activity.'"[43] The opinion goes on to state that if, however, "a producing party's activities are not 'routine and repetitive' such as to require a well-organized record-keeping system[,]" the producing party may not elect to produce business documents in lieu of producing documents organized and labeled to respond to the request.[44] The court then reasoned that an SEC investigation was neither routine nor repetitive and therefore could not fall within the scope of the "usual course of business." The court noted that during an SEC investigation, the SEC routinely gathers records from diverse sources and that the collection, in that case, was "maintained as it was collected—in large disorderly databases."[45]

The *Collins & Aikman* court imposed a test that does not appear to have been applied in this district or endorsed by the Tenth Circuit—that is, that to elect to produce records as they are kept in the usual course of business, the producing party must be a commercial entity or an entity

---

[42] *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 413 (S.D.N.Y. 2009).

[43] *Id.* at 412.

[44] *Id.* at 412-13.

[45] *Id.* at 413.

that functions as a commercial entity, or the records at issue must have resulted from a regularly conducted activity. While this court declines to impose this test, it shares the concerns addressed by the *Collins & Aikman* court. In *Collins & Aikman*, the SEC responded to defendant's fifty-four discovery requests by producing 1.7 million documents maintained in thirty-six different databases and suggested that defendant was capable of searching for and locating relevant documents. The requests sought documents supporting particular factual allegations contained in the SEC's complaint.[46] Here, Mr. Kovzan seeks documents supporting allegations contained in a separate complaint naming NIC as a defendant. But the practical consideration remains the same: In terms of production of an entire SEC investigative file, the discovering party is not in a position to determine what documents support the allegations appearing in the SEC's own pleadings.

Based on the circumstances specific to this case, the court finds the decision about whether to require the SEC to identify responsive documents should not turn on whether an SEC investigative file constitutes "documents produced in the usual course of business." As stated in *Federal Practice and Procedure*, "the producing party should retain the right to choose between the production formats authorized by Rule 34(b). . . , and the court should have the authority where necessary to direct some disclosure of the manner of organization of the producing party's files."[47] This is consistent with the plain language of Rule 34(b), which provides that the producing party may respond in one of two ways unless "otherwise stipulated or ordered by the

---

[46] *Id.* at 407.

[47] 8B Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2213.

court."[48]

Courts have attempted to place practical restrictions on parties electing to produce documents as they are kept in the usual course of business.[49] This customarily consists of balancing the burdens that would be imposed on the respective parties. Generally, however, courts have frowned on production of large or disorganized masses of documents without any guidance from the producing party. These courts have found that production in this manner may not satisfy the producing party's discovery obligations.[50] And in those cases, the courts have required the producing parties to do more—be it indexing the documents or specifically identifying responsive documents. As one judge in the Middle District of Georgia has stated, "no hard and fast rule can be crafted for every production" but "[i]t is clear, however, that simply producing a mass of documents with assurance that they are produced in the same manner as

---

[48] Fed. R. Civ. P. 34(b)(2)(E).

[49] *Epsy v. Mformation Tech.*, No. 08-2211-EFM, 2009 WL 2912506, at *7 (D. Kan. Sept. 9, 2009).

[50] *See id.* at *8 (compelling a party producing 28,000 pages of documents in the manner they were kept in the usual course of business to specifically identify certain documents responsive to the discovery requests); *Pass v. Seymour, Inc. v. Hubbell, Inc.*, 255 F.R.D. 331, 337 (N.D.N.Y. 2008) (finding that the producing party must provide some modicum of information about how the documents are kept so that the requesting party may make meaningful use of the documents); *State of Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-SAJ, 2007 WL 1498973, at *4 (N.D. Okla. May 17, 2007) (finding that the producing party must provide some reasonable assistance to the requesting party about the location of responsive documents, either by indexing documents or directing the requesting party to the specific locations within the files where the documents responsive to each of the requests may be found); *U.S.C.F.T.C v. Am. Derivatives Corp.*, No. 1:05-CV-2492-RWS, 2007 WL 1020838, at *5 (N.D. Ga. Mar. 30, 2007) ("Defendants do not satisfy their Rule 34 obligations by merely opening their files, and leaving Plaintiff to sift through documents in an effort to locate those that are responsive to the requests. Rather, Defendants are obligated to provide some reasonable assistance to Plaintiff in the location of responsive documents."); *Williams v. Taser Int'l Inc.*, No. 1:06-CV-0051-RWS, 2006 WL 1835437, at *7 (N.D. Ga. June 30, 2006) (finding that while a party has the option of producing documents as they are normally kept in the usual course of business, the producing party also has the obligation to organize the documents and also noting that if files are disorganized or if the producing party is "overly generous" in identifying responsive documents, the court would require production by organizing and labeling); *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001) ("[P]roducing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34."); *but see MGP Ingredients, Inc.*, 2007 WL 3010343, at *4 ("While the Court recognizes that Plaintiff now faces the formidable task of having to determine which documents are responsive to each particular request, Plaintiff was the party who formulated the request in the manner it did and Plaintiff must take responsibility for undertaking the task of determining which documents relate to each set of its twenty-some requests.").

they are kept in the ordinary course of business does not automatically satisfy a producing party's obligations" under Rule 34(b).[51] The requesting party must be able to reasonably locate the documents responsive to the specific requests.[52]

So, even if the SEC's investigative file qualifies as documents produced in the usual course of business, the court finds good reason to order the SEC to identify the responsive documents. The court is mindful that *Federal Practice and Procedure* cautions that requiring the producing party to segregate and sort responsive documents according to the request creates an additional burden on the producing party.[53] The categories of responsive documents may overlap, and in most cases, this undertaking would serve no useful purpose.[54] In this case, however, sorting documents according to request does serve such a purpose.  The requests impliedly seek information about the SEC's position. They ask for evidence supporting the SEC's allegations in a pleading. Defense counsel's view of whether certain documents support the SEC's allegations could differ significantly from the assessment of the SEC's attorneys. In other words, Mr. Kovzan is not in the best position to reasonably identify documents responsive to his requests.

The option to produce documents as they are kept in the usual course of business was added to Rule 34(b) to prevent the evasive discovery practice of mixing critical documents with

---

[51] *In re Mentor Corp. Obtape Transobturator Sling Prods. Liability Litig.*, No. 4:08-MD-2004, 2009 WL 152495, at *2 (M.D. Ga. Jan. 22, 2009).

[52] *Id.*

[53] 8B Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2213.

[54] *Id.*

19

other documents in an effort to obscure their significance.[55] But in this case, simply allowing the SEC to produce its entire investigative file in a collective response to the requests would actually obscure relevant information, having the opposite effect of what was intended by the amendment. The discovery requests seek documents providing evidence for a fairly specific, narrow set of allegations appearing in the NIC complaint. The SEC does not argue that this information is irrelevant or that it would be unduly burdensome to identify the documents responsive to the requests. Fed. R. Civ. P. 1 requires that courts construe and administer the Federal Rules of Civil Procedure in a manner that secures "the just, speedy, and inexpensive determination of every action and proceeding." Given the nature of the discovery requests and the fact that it appears significantly less burdensome to require the SEC to identify the documents, the court grants Mr. Kovzan's motion to compel as to these requests. Mr. Kovzan has stated that as a compromise, he is willing to accept the identification of these documents in lieu of a separate production. Therefore, the SEC shall supplement its responses by providing separately the Bates numbers of the documents responsive to each of these requests.

### E.    Privilege and Work-Product Objections

The SEC has withheld a number of documents on the ground that they are protected by the deliberative-process privilege, the attorney-client privilege, or by the work-product doctrine. Mr. Kovzan contends the SEC's privilege logs are insufficient in that they lack enough detail to enable Mr. Kovzan to evaluate the claimed privileges. For example, Mr. Kovzan argues the privilege logs merely parrot the elements of the respective privileges. Mr. Kovzan also points out

---

[55] Fed. R. Civ. P. 34 advisory committee's note to 1980 amendments.

that the privilege logs lack the categories of information typically required in this district.[56]

      While Mr. Kovzan is correct that the privilege logs do not contain all of the categories of information typically required, this case involves an unusually large quantity of documents that the SEC contends are privileged or protected. Moreover, the court is not in a position to rule on the claims of privilege or work-product protection at this juncture. For one, not all of the privilege logs state to which request the documents are responsive. The court has denied in part Mr. Kovzan's motion to compel, which means Mr. Kovzan is not entitled to certain responsive documents—privileged or not. Additionally, other document requests are sweeping and potentially objectionable on separate grounds. Indeed, the SEC has lodged other objections to document production requests that were not the subject of this motion.

      For these reasons, the court denies without prejudice Mr. Kovzan's motion to compel documents listed on the SEC's privilege logs. Within thirty (30) calendar days from the date of this order, Mr. Kovzan may file a renewed motion to compel after first conferring with the SEC with the aim of reaching a more practical solution—or at least narrowing the scope of the dispute. During the conferral process, the parties should discuss: (1) whether the scope of any of Mr. Kovzan's requests for production may be narrowed; (2) which entries on the privilege logs are potentially essential for Mr. Kovzan's defense; (3) which entries on the privilege logs should include additional information in order for Mr. Kovzan to be able to evaluate the SEC's claims of privilege or work-production protection; and (4) whether the use of a "quick peek" or other

---

[56] *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005) (outlining the categories of information typically required in a privilege log in this district).

agreement may help resolve this dispute.[57]

Accordingly,

**IT IS THEREFORE ORDERED** that  Defendant Stephen M. Kovzan's motion to compel (ECF No. 61) is granted in part and denied in part. Within fourteen (14) days from the date of this order, the SEC shall supplement its response to Interrogatory No. 1 and Request for Production Nos. 67-72, as limited in this order. The SEC must also identify by Bates number those documents that are responsive to each individual request contained in Request Nos. 74-82.

**IT IS FURTHER ORDERED** that Mr. Kovzan's motion to compel, as it pertains to documents appearing on the SEC's privilege log, is denied without prejudice to refiling within thirty (30) calendar days from the date of this order should such a motion become necessary after the parties meaningfully confer.

**IT IS SO ORDERED.**

Dated this 31st day of July, 2012, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge

---

[57] *See* Fed. R. Civ. P. 26(f), advisory committee's note to 2006 amendments (stating that parties may agree "to protocols that minimize the risk of waiver" of privilege, such as an agreement "that the responding party will provide certain requested materials for initial examination without waiving any privilege or protection—sometimes known as a 'quick peek.'").