**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | Civil No. 11-CV-2017 JWL/KGS |
| Plaintiff, | ORAL ARGUMENT REQUESTED |
| v. | |
| **STEPHEN M. KOVZAN,** | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF
STEPHEN M. KOVZAN'S SECOND MOTION TO COMPEL**

Andrew B. Weissman (*pro hac vice*)
John A. Valentine (*pro hac vice*)
Nicole R. Rabner (*pro hac vice*)
J. David Zetlin-Jones (*pro hac vice*)
Kelly S. Shoop (*pro hac vice*)

WILMER CUTLER PICKERING HALE AND
 DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000
andrew.weissman@wilmerhale.com
john.valentine@wilmerhale.com
nicole.rabner@wilmerhale.com
david.zetlin-jones@wilmerhale.com
kelly.shoop@wilmerhale.com

Stephen L. Hill, Jr.          KS # 78029
Maxwell Carr-Howard      KS # 21042
Lyndsey J. Conrad          KS # 23527

HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, Missouri  64112
(816) 983-8000
(816) 983-8080
stephen.hill@huschblackwell.com
max.carr-howard@huschblackwell.com
lyndsey.conrad@huschblackwell.com

*Attorneys for Defendant Stephen M. Kovzan*

## TABLE OF CONTENTS

**Page**

PROCEDURAL POSTURE ................................................................................................................ 2

ARGUMENT ..................................................................................................................................... 4

CONCLUSION ................................................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bessemer & Lake Fire R.R. Co. v. Seaway Marine Transp.*,
    596 F.3d 357 (6th Cir. 2010) ..................................................................................................14

*City of Philadelphia v. Fleming Cos.*,
    264 F.3d 1245 (10th Cir. 2001) ..........................................................................................11, 12

*Digital Ally Inc. v. Z3 Tech., LLC*,
    2012 U.S. Dist. LEXIS 87728 (D. Kan. June 26, 2012) (Sebelius, J.) ................................9, 13

*Lee v. Max Int'l, LLC*,
    638 F.3d 1318 (10th Cir. 2011) ..........................................................................................1, 5

*Presbyterian Manors, Inc. v. SimplexGrinnell, L.P.*,
    2010 WL 3880027 (D. Kan. Sept. 28, 2010) (Sebelius, J.) ........................................................6

*United States Fire Ins. Co. v. Bunge*,
    244 F.R.D. 638 (D. Kan. 2007).....................................................................................................6

### OTHER AUTHORITIES

D. Kan. R. 37.2 ................................................................................................................................2

Fed. R. Civ. P. 37(a)(1)..............................................................................................................2, 14

SEC Release No. 33-8732A, 2006 WL 2589711, at *31............................................................10

**INTRODUCTION**

Mr. Kovzan brings this second motion to compel because plaintiff Securities and Exchange Commission continues to refuse to respond fully to his interrogatories seeking identification of (1) the specific evidence that each of the expenses at issue incurred by former NIC Inc. ("NIC") CEO Jeffery Fraser was a perquisite rather than a business expense, and (2) the specific evidence that Mr. Kovzan knew or recklessly disregarded that each of these expenses should have been disclosed as a perquisite. *See* Def.'s First Set of Interrogatories No. 1(a) & 1(b), Ex. 1.[1/] Mr. Kovzan only brings this second motion to compel to obtain what he is entitled to under the rules – discovery responses that will promote fair and efficient litigation. *See Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011) (noting that the purpose of the Federal Rules of Civil Procedure is to "help ensure 'the just, speedy, and inexpensive determination of every action'") (quoting Fed. R. Civ. P. 1). In line with that goal, on July 31, 2012, the Court "grant[ed] Mr. Kovzan's motion to compel answers to Interrogatory No. 1 and its subparts," instructing that "[t]he SEC shall fully respond to this interrogatory and may not simply produce records in lieu of answering." *See* July 31, 2012 Order ("Order") at 5 (Dkt. No. 89).

Notwithstanding that order, plaintiff continues to resist providing adequate responses, instead offering broad-brush, generalized explanations rather than the evidence, if any, pertaining to each alleged expense. Plaintiff's vague responses do not inform Mr. Kovzan of the principal and material facts that plaintiff will use to attempt to establish his culpability for defrauding NIC investors in connection with these expenses. Plaintiff's failure to comply with the Court's express order unfairly leaves Mr. Kovzan without the ability to prepare for trial.

---

[1/] *See* Ex. 1; Certificate of Service of Defendant's First Set of Requests for the Production of Documents and Things and Defendant's First Set of Interrogatories (Dkt. No. 51). Citations to Exs. 1-15 refer to Exhibits accompanying Mr. Kovzan's Second Motion to Compel.

After several attempts to resolve this issue in meet-and-confer discussions,[2/] Mr. Kovzan regretfully requests the Court's assistance once again to compel a sufficient response to interrogatories that simply seek "the factual basis for the SEC's claims."  Order at 4 (Dkt. No. 89).  In the face of consistent evidence that Mr. Kovzan was in fact unaware that Mr. Fraser was incurring expenses that required disclosure as perquisites, Mr. Kovzan is reasonably entitled to know if plaintiff has evidence to the contrary.  If plaintiff will not (or cannot) provide that basic information for each of plaintiff's asserted undisclosed perquisites, plaintiff should be barred from offering evidence pertaining to those expenses on summary judgment or at trial.

## PROCEDURAL POSTURE

Almost exactly one year ago, Mr. Kovzan served plaintiff with his First Set of Interrogatories (hereinafter "the Interrogatories"), which asked plaintiff to:

> (1) Identify each and every expense You contend constituted an undisclosed perquisite to [NIC's former CEO] Jeffery S. Fraser, including but not limited to the "undisclosed perquisites" alleged in the Paragraph 49 of the [Amended] Complaint.
>
> (a)     For each and every expense identified, identify all evidence of any type supporting the inference that the expense constituted an undisclosed perquisite.
>
> (b)     For each and every expense identified, identify all evidence of any type supporting the inference that Mr. Kovzan knew or recklessly disregarded that the expense constituted an undisclosed perquisite.

Ex. 1 at 3.

---

[2/]     In accordance with D. Kan. R. 37.2 and Fed. R. Civ. P. 37(a)(1), the parties have made reasonable efforts to confer and resolve the parties' differences without resorting to motion practice, having exchanged written correspondence and held telephonic conferences on September 13, 21, and 28, 2012; October 12 and 17, 2012; and November 7, 2012.  *See* Declaration and Certification of Compliance with D. Kan. Rule 37.2.

In his original motion to compel and supporting memorandum,[3/] Mr. Kovzan requested that the Court "require plaintiff to answer Interrogatory 1 by providing a list of the specific expenses at issue in this case, and to answer Interrogatories 1(a) and 1(b) by identifying the specific evidence that plaintiff believes support the actionable nature of those expenses."[4/] On July 31, 2012, this Court granted Mr. Kovzan's motion as to "Interrogatory No. 1 and its subparts," noting specifically that "the information the interrogatory seeks … are facts central to the SEC's claims." Order at 5 (Dkt. No. 89). The Court ordered plaintiff to "fully respond to this interrogatory," including its subparts, within 14 days of its Order. *Id.* at 5, 22 (Dkt. No. 89).

Plaintiff, however, provided only general narrative responses that discussed a small number of the expenses at issue as examples, but did not provide the principal and material facts showing that <u>each</u> expense was a perquisite and that Mr. Kovzan was aware of, or recklessly disregarded, that each expense was a perquisite, as requested by the plain language of the Interrogatories. *See* Ex. 8, Plf's. Third Supplemental Responses to Mr. Kovzan's First Set of Interrogs. (the "October 24 Responses"), at 13-15, 18-22.

After repeated meet-and-confer discussions on the issue, plaintiff has consistently declined to respond fully to Interrogatory 1 and its subparts. *See* Exs. 2, 7-8. In an effort to resolve this disagreement without further motion practice, counsel for Mr. Kovzan offered that, where evidence pertaining to a particular expense was not unique to that expense, plaintiff could identify the perquisite and scienter evidence that plaintiff believes supports its allegations by reference to categories of expenses that together covered the entire list. Thereafter, plaintiff provided some additional explanation of its methodology for calculating the so-called

---

[3/]    *See* Dkt. Nos. 61-62.

[4/]    Memorandum of Law in Support of Mr. Kovzan's Mot. to Compel, at 8 (Dkt. No. 62).

"commuting" expenses. *See* Ex. 8 at 6-7. Plaintiff declined, however, to provide further information as to any other expenses.

## ARGUMENT

In disregard of the plain language of Interrogatories 1(a) and 1(b), and by extension this Court's July 31, 2012 Order, plaintiff's general narrative responses fail to identify with specificity: (i) why the expenses incurred by Mr. Fraser were perquisites, and (ii) the basis for contending that Mr. Kovzan either knew or recklessly disregarded that those expenses were perquisites. This prevents Mr. Kovzan from preparing a defense to plaintiff's charges.

Plaintiff's list of Mr. Fraser's expenses that allegedly were perquisites covers well in excess of 2,000 specified expenses over a span of more than four and a half years, more than 1,200 of which are for amounts below $100 (more than 500 are $30 or less). *See* Ex. 2 at SEC-P 0000001 – SEC-P 0000060. These alleged perquisites include widely varied vendors in unidentified locations, including multiple computer or computer software vendors, car rental agencies, hotels, restaurants, groceries, airlines, gas stations, convenience stores, florists, health clubs, and airplane servicing entities. Nowhere does plaintiff identify the specific rationale for including an expense on the list. Instead, plaintiff limits its response to a narrative discussion of general reasons why items may have been placed on the list, although how this discussion applies to specific items on the list remains a mystery. Plaintiff also declined to specify the grounds for asserting that Mr. Kovzan either knew or recklessly disregarded both the existence of these expenses – including hundreds of near-trivial expenses – and that they were required to be disclosed as perquisites. In short, beyond vague generalities, it is essentially impossible for Mr. Kovzan to develop a reliable understanding of plaintiff's case. *See* Ex. 2 at SEC-P 0000001-60; Exs. 7-8.

4

Discovery "is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered." *See, e.g., Lee*, 638 F.3d at 1322. Whether by design or neglect, plaintiff's repeated refusal to identify the grounds underlying the charges at the heart of this case prevent Mr. Kovzan from developing his defense. As explained more fully below, plaintiff's narrative responses to Interrogatories 1(a) and 1(b) are insufficient because they do not identify the grounds for plaintiff's contentions that each identified expense was a perquisite, and why Mr. Kovzan knew or should have known that to be the case. *See* Ex. 8.

**Interrogatory 1(a), Perquisite Evidence.** Plaintiff's response to Interrogatory 1(a) provides generalized rationales for deeming various categories of expenses to be perquisites, any one of which may or may not apply to a given expense, including:

- Expenses that Mr. Fraser marked with a "P" when reviewing his monthly corporate credit card statement "to the extent Fraser did not repay these expenses before they were required to be disclosed."[5/]

- "[P]ersonal expenses that were not disclosed as perquisites during the relevant filing periods, but that Fraser agreed to repay as a result of look backs conducted by NIC and the internal review conducted by NIC's Audit Committee (the 'Internal Review')."[6/]

- "[O]ther personal expenses Fraser charged to NIC" for which plaintiff contends Mr. Fraser's business justifications were "plainly absurd."

- Expenses that plaintiff contends "are obviously personal expenses as indicated by the vendor and/or location."

---

[5/]   The evidence is that Mr. Fraser submitted credit card bills in support of his expense reports on which he designated what he considered to be personal charges with a "P," for which he undertook to reimburse the Company. *See* Ex. 10 (Fraser 7/30/09 Tr. at 91:21-23) ("[I]f I saw something I remembered that I had bought personally I marked it with a 'P.'"); Ex. 11 (Reynolds 4/26/2012 Tr. at 64:14-65:10).

[6/]   In 2006, NIC conducted a "look back" review of Mr. Fraser's expenses incurred that year to identify those that failed to comply with the Company's expense reimbursement requirements. This "look back" review later was extended to earlier years. Ultimately, the Audit Committee commissioned and oversaw an independent review of Mr. Fraser's expenses. *See* Ex. 11 (Reynolds 4/26/2012 Tr. at 162:13-163:15); Ex. 12 (Evans 5/8/2012 Tr. at 47:14-52:10).

*See* Ex. 8 at 13-15.

There are two problems with this broad-brush approach to answering Interrogatory 1(a). The first is that it does not purport to be complete – it does not allow Mr. Kovzan to determine the material facts underlying plaintiff's contentions as to any of the thousands of specific perquisites charged. For example, plaintiff contends that Mr. Fraser "admitted" the personal nature of (a) credit card expenses that he marked with a "P" and did not reimburse "before they were required to be disclosed," and (b) expenses that Mr. Fraser agreed to repay following NIC's various reviews of his expenses. *See* Ex. 8 at 13. But plaintiff does not state whether it contends there are other grounds for charging that some or all of these reimbursed expenses were perquisites. For example, if the evidence shows that expenses were reimbursed during a look back because of insufficient documentation, but not because they were "personal," does plaintiff also contend they are subject to the "plainly absurd" or "obvious personal expense" characterizations? Or is there some other form of evidence plaintiff will present to support the view particular expenses in these categories are properly characterized as perquisites? Plaintiff fails to answer these basic questions, and it is obliged to do so in response to the interrogatory.

Mr. Kovzan is entitled to know the principal and material facts supporting plaintiff's position that each expense was a perquisite. *See Presbyterian Manors, Inc. v. SimplexGrinnell, L.P.*,, 2010 WL 3880027, at *14 (D. Kan. Sept. 28, 2010) (Sebelius, J.) (citing *Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc*., 1995 WL 625953, at *3 (D. Kan. Oct. 5, 1995)). Plaintiff's position that it may withhold some of those facts by citing others is contrary not only to precedent but common sense. *See, e.g., United States Fire Ins. Co. v. Bunge*, 244 F.R.D. 638, 643 (D. Kan. 2007) ("[T]he fact that [parties] have already produced numerous documents relating to the issues … does not provide immunity from the production of additional discoverable documents.").

The second problem with plaintiff's response to Interrogatory 1(a) is that it is unworkably vague and incomplete. The following four examples make this clear:

First, plaintiff states that Mr. Fraser gave "plainly absurd" justifications in his investigative testimony for "other personal expenses" that are designated as undisclosed perquisites, but cites only three examples – travel expenses and meals for Mr. Fraser's then-girlfriend, spa treatments, and dry cleaning in Mr. Fraser's home state of Wyoming. *See* Ex. 8 at 14. Plaintiff does not specify other expenses on its perquisite list, if any, that it contends fall within this "plainly absurd" rationale. And as to the three categories specified, plaintiff provides no information that would allow Mr. Kovzan to determine which expenses on the list supposedly relate to Mr. Fraser's then-girlfriend or which vendor expenses were spa treatments. *See* Ex. 2 at SEC-P 000001-60.

Second, plaintiff does not identify which of the many expenses Mr. Fraser marked with a "P" it contends were not reimbursed "before they were required to be disclosed," or even the date on which that disclosure was, in plaintiff's view, supposedly required. *See* Ex. 8 at 13-15.

Third, plaintiff states that "many of the perquisites" cited in four different spreadsheets encompassing 60 pages "are obviously personal expenses as indicated by the vendor and/or location," but does not specify which expenses it asserts were "obviously personal" or supply criteria for making that determination. *See* Ex. 8 at 14. The task of ascertaining which expenses plaintiff will attempt to prove were "obviously personal" is made all the more difficult by the nature of Mr. Fraser's job as NIC's CEO, an investor- and sales-oriented position that frequently required him to entertain potential investors or clients, as well as NIC employees. Plaintiff's perquisite list includes hundreds of charges for travel, dining, and even activities like skiing, which Mr. Fraser did with employees, investors and potential customers. *See* Ex. 10 (Fraser

7

7/30/09 Tr. at 176-77) ("I've probably entertained more people skiing than most people do golfing."). Plaintiff identifies no evidence or methodology for distinguishing between expenses it deems "obviously personal" from those that are not so obvious. Mr. Kovzan is entitled to know plaintiff's purported evidence for each such expense in order to prepare his defense. If plaintiff has no evidence in support of certain expenses included on its perquisite list beyond its opinion that these expenses are "obviously personal," it should be required to say so, and in each instance to provide the basis for that opinion.

Fourth, plaintiff cites Mr. Fraser's failure to provide adequate business purpose documentation for many expenses as a basis for concluding that the expenses were perquisites. Plaintiff elsewhere admits, however, that a lack of documentation alone is not a sufficient ground to render a business expense a perquisite. Its own interrogatory responses state that "[i]dentifying whether a particular expense reimbursed by a company without documentation called for by company policies was required to be reported as compensation or a perquisite requires an assessment of the facts and circumstances of the particular situation." *See* Ex. 9 at 12 (Plf's. Responses to Def's. Second Set of Interrogs., Response to Interrog. No. 6 (emphasis added)). In light of this "facts and circumstances" standard plaintiff itself espouses, its refusal to identify the factual basis for each expense it charges as a perquisite because of insufficient documentation cannot be sustained. *See* Ex. 8 at 13-15.

In the end, Mr. Kovzan believes there will be substantial evidence that many of the expenses alleged to be perquisites were in fact legitimate business expenses or, alternatively, not "obviously" personal. Without knowing the specific grounds for plaintiff's contention that an expense was a perquisite, however, Mr. Kovzan is forced to guess the evidence plaintiff will cite in the future to justify an inference that the expense was a perquisite. That is plainly inconsistent

with the federal court civil discovery process. *See, e.g., Digital Ally Inc. v. Z3 Tech., LLC*, 2012 U.S. Dist. LEXIS 87728, at *6 (D. Kan. June 26, 2012) (Sebelius, J.) ("The purpose of discovery and initial disclosures is to avoid one side ambushing the other, and the litigants should not indulge in gamesmanship with respect to their disclosure obligations.").

**Interrogatory 1(b), Scienter Evidence.** Plaintiff contends that Mr. Kovzan "knew, or was reckless in not knowing" that each of the thousands of expenses on its perquisite list were undisclosed perquisites, but refuses to identify the factual basis for that contention. *See* Ex. 8 at 16-22. Instead, plaintiff provides a generalized, narrative response to Interrogatory No. 1(b) that sheds little or no light on what scienter evidence plaintiff might offer with respect to the vast majority of the alleged expenses at issue. *See id.* The little information plaintiff does provide appears to fall into three broad categories.

First, plaintiff cites evidence that Mr. Kovzan had actual knowledge of a small handful of expenses that it contends were plainly personal in nature. In particular, plaintiff cites evidence that Mr. Kovzan was aware of supposedly "questionable" charges to Bed Bath & Beyond on Mr. Fraser's corporate credit card in 2004 and 2005, and charges for a leased Lexus in 2005. *See* Ex. 8 at 20-22. These charges, however, comprise a tiny fraction of the total amounts at issue in this case.[7] There are two expenses in 2005 reflected as charges to "Superior Lexus" for a total of only $2,600.19, and one other charge to Toyota Motor Credit Corp. in December 2005 for $3,849.32, for a total of $6,449.51 in 2005. *See* Ex. 2 at SEC-P 0000031-32, SEC-P 0000058.

---

[7] Plaintiff's response also disregards the evidence from its own investigatory record that when Mr. Kovzan learned of the Bed Bath & Beyond expenses, he advised NIC's Chief Operating Officer, Harry Herington, that these could be potential personal expenses and Mr. Herington confirmed with Mr. Fraser that they were appropriate business charges. *See* Ex. 14 (Herington 7/28/09 Tr. at 71:17-72:18). In that context, the allusion to this single episode provides no guidance on plaintiff's grounds for contending that Mr. Kovzan knew the expense was a perquisite.

With respect to Bed, Bath & Beyond, the charges were $300.81 in 2004 and a total of $9,911.22 in 2005. *See* Ex. 8 at SEC-P 0000026-27, SEC-P 0000044-45. By citing Mr. Kovzan's alleged awareness of a miniscule fraction of the expenses on its perquisite list, plaintiff merely amplifies the inadequacy of its failure to say anything about Mr. Kovzan's scienter as to the other thousands of expenses on the list. Moreover, the expenses cited by plaintiff are well below the $50,000 annual threshold for disclosing perquisites under Item 402(b) known to Kovzan at the time the charges were incurred. *See* SEC Release No. 33-8732A, 2006 WL 2589711, at *31 (Sept. 8, 2006); Ex. 13 (Kovzan 1/6/2010 Tr. at 765:12-766:5) ("I think I understood the $50,000 amount [as the threshold for disclosure under the pre-2006 perquisite rules] but the 10 percent of total annual and bonus, I am not sure I was specifically focused in on or honed in on the 10 percent of total annual salary and bonus.").

Second, plaintiff identifies expenses that Mr. Kovzan generally knew about, but believed at the time to be genuine business-related expenses, based on plaintiff's contention that Mr. Kovzan received Mr. Fraser's "proposed annual budgets, which included up to $3,500/month for temporary housing and up to $4,500 for office lease for 2005," along with alleged knowledge of Mr. Fraser's travel expenses between Wyoming and Kansas. *See* Ex. 8 at 20-21. Plaintiff refers to Mr. Kovzan's general awareness that Mr. Fraser had such housing and transportation expenses, but not to any evidence that Mr. Kovzan knew that these were undisclosed perquisites, which is what Interrogatory 1(b) asks to be identified. As plaintiff knows, Mr. Kovzan testified that he understood the amounts spent for temporary housing in Kansas and office space in Wyoming to be valid business expenses that were reasonable in view of NIC's geographically-dispersed business model and his understanding that Mr. Fraser's principal business location was in Wyoming. *See* Ex. 13 (Kovzan 7/1/09 Tr. at 285-86; 6/30/09 Tr. at 100). As plaintiff also

knows, Mr. Kovzan and other witnesses testified that no person at NIC understood that Mr. Fraser's travel between Wyoming and Kansas was "commuting" and therefore not appropriately treated as a business expense.  *See* Ex. 11 (Reynolds 4/26/2012 Tr. at 41:1-42:13); Ex. 13 (Kovzan 6/1/2012 Tr. at 105-106); Ex. 15 (Bur 5/24/2012 Tr. at 43:8-51:2).  A proper response to Interrogatory 1(b) requires that plaintiff identify the evidence it contends shows that the testimony of Mr. Kovzan and others is incorrect.  If (as Mr. Kovzan believes) plaintiff cannot identify any such evidence, then plaintiff should be required to respond by saying so.

Third, the remainder of plaintiff's narrative response to Interrogatory 1(b) appears to contend that Mr. Kovzan was reckless because he failed to investigate further after allegedly learning in "at least 2002" that Mr. Fraser was not submitting documentation called for by NIC policy, that some NIC employees were concerned that Mr. Fraser might be incurring personal expenses, and that some unidentified amount of the expenses seemed "questionable" and were likely personal.  *See* Ex. 8 at 18-20.  This apparent recklessness theory may be plaintiff's rationale for the lion's share of the credit card and out-of-pocket expenses at issue.  But plaintiff's refusal to identify specific evidence of Mr. Kovzan's scienter on an expense-by-expense basis prevents Mr. Kovzan from learning whether he is being accused of having actual knowledge that a specific expense was incurred and was personal in nature, or whether plaintiff is contending that he recklessly disregarded the personal nature of an expense.

The distinction between these two approaches to scienter is significant – knowledge would require proof that Mr. Kovzan was actually aware of the expenses and that they were undisclosed perquisites, while recklessness would require evidence that Mr. Kovzan disregarded a known or obvious danger of misleading investors, a state of mind that involves an "extreme departure from the standards of ordinary care."  *City of Philadelphia v. Fleming Cos.*, 264 F.3d

11

1245, 1258 (10th Cir. 2001).  Mr. Kovzan needs to know plaintiff's evidence on an expense-by-expense basis so that he can prepare his defense – and any summary judgment motion – to refute those different scienter theories.  Thus, to the extent plaintiff contends there is evidence showing Mr. Kovzan's actual knowledge that Mr. Fraser's expenses were perquisites, plaintiff should be required to identify that evidence or acknowledge that no such evidence exists, so that Mr. Kovzan can focus his defense on plaintiff's recklessness theory.

By the same token, plaintiff should be required to disclose any evidence that it contends shows Mr. Kovzan's conduct to have been "reckless," rather than at most negligent.  That would include any purported evidence that (i) Mr. Kovzan acted recklessly in failing to learn about specific charges in Mr. Fraser's expense reports, and (ii) that he also acted recklessly in failing to cause NIC to disclose those expenses as perquisites in the respective years they occurred.  Presumably, that would include evidence that Mr. Kovzan's duties as Chief Accounting Officer made him responsible for reviewing the details of Mr. Fraser's month-to-month expense charges, and that it was so patently clear that specific charges were perquisites that Mr. Kovzan would be reckless in failing to cause NIC to disclose them as such.  Plaintiff's narrative fails even to attempt to identify any such evidence.  Moreover, to date, the only evidence in the record of which Mr. Kovzan is aware shows the opposite – that a detailed review of Mr. Fraser's monthly credit card charges and expense reports was <u>not</u> part of Mr. Kovzan's duties as NIC's Chief Accounting Officer, and could not possibly have fit within his broader, company-wide duties and responsibilities.  *See* Ex. 11 (Reynolds 4/26/2012 Tr. at 76-86); Ex. 13 (Kovzan 6/1/2012 Tr. at 116-118).

As this Court noted in granting Mr. Kovzan's earlier motion to compel, the purpose of contention interrogatories "'is to narrow and define issues for trial and to enable the propounding

12

party to determine the proof required to rebut the respondent's position.'" *See* Order at 4 (quoting *In re Urethane Antitrust Litig.*, 2009 WL 2058759, at *3 (D. Kan. July 15, 2009)) (Dkt. No. 89).  Mr. Kovzan believes the evidence will ultimately show that until sometime in 2006, he was unaware, and could not reasonably be expected to know, of any expenses incurred by Mr. Fraser that required disclosure under the SEC's perquisite disclosure rules, at which point he and others at NIC took steps to ensure that NIC made appropriate disclosures.  But Mr. Kovzan cannot effectively defend himself in the face of plaintiff's refusal to identify evidence it claims will prove the contrary.  Plaintiff's general narrative description of supposed reasons Mr. Kovzan acted with scienter provides no concrete response to the question posed in Interrogatory 1(b).  *See* Ex. 8 at 16-22.  Plaintiff plainly will not be able to rest on such generalities in response to a motion for summary judgment.  And it would be patently unfair to allow plaintiff to ambush Mr. Kovzan later in the case with what it contends to be specific evidence of Mr. Kovzan's scienter that it refused to identify in response to interrogatories directly addressed to that issue.  *See Digital Ally*, 2012 U.S. Dist. LEXIS 87728, at *6.

## CONCLUSION

For the foregoing reasons, Mr. Kovzan respectfully requests that the Court order plaintiff to supplement its responses to Interrogatory Nos. 1(a) and 1(b) to identify, for each expense on plaintiff's list of alleged undisclosed perquisites, the principal and material facts (1) supporting plaintiff's contention that the expense was an undisclosed perquisite, and (2) supporting plaintiff's contention that Mr. Kovzan either knew or recklessly disregarded that the expense was an undisclosed perquisite.

If plaintiff will not or cannot supplement its interrogatory responses in that manner for some or all of the listed expenses, Mr. Kovzan respectfully requests that plaintiff be barred from

offering evidence on those subjects for those expenses on summary judgment and at trial. *See Bessemer & Lake Fire R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010) (affirming district court's exclusion of evidence of lost-profits damages pursuant to Rule 37 where plaintiff "never turned over supporting documentation for its lost-profits calculation," thereby preventing defendant's expert from independently analyzing that claim).

Dated: November 14, 2012

Andrew B. Weissman (*pro hac vice*)
John A. Valentine (*pro hac vice*)
Nicole R. Rabner (*pro hac vice*)
J. David Zetlin-Jones (*pro hac vice*)
Kelly S. Shoop (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000
andrew.weissman@wilmerhale.com
john.valentine@wilmerhale.com
nicole.rabner@wilmerhale.com
david.zetlin-jones@wilmerhale.com
kelly.shoop@wilmerhale.com

Respectfully submitted,

/s/ Stephen L. Hill, Jr.
Stephen L. Hill, Jr. KS # 78029
Maxwell Carr-Howard KS # 21042
Lyndsey J. Conrad KS # 23527
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
(816) 983-8000
(816) 983-8080
stephen.hill@huschblackwell.com
max.carr-howard@huschblackwell.com
lyndsey.conrad@huschblackwell.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2012, a copy of the foregoing was filed electronically with the above captioned court, with notice of case activity to be generated and sent electronically by the Court's CM/ECF system to:

> Erica Y. Williams
> David Williams
> Helaine Schwartz
> David S. Mendel
> Holly A. Pal
> U.S. Securities & Exchange Commission-DC
> 100 F. Street NE
> Washington, DC  20549-4010
> (202) 551-4450
> (202) 772-9246 (FAX)
> williamse@sec.gov
> williamsdav@sec.gov
> schwartzh@sec.gov
> mendeld@sec.gov
> palh@sec.gov
> *Attorneys for Plaintiff Securities & Exchange Commission*

> Jeffrey S. Kruske
> Office of the Kansas Securities Commissioner
> 109 SW 9th Street, Suite 600
> Topeka, KS 66612
> (785) 296-5215
> (785) 296-5482 (FAX)
> Jeff.Kruske@ksc.ks.gov
> *Attorney for Plaintiff Securities & Exchange Commission*

                /s/ Stephen L. Hill, Jr._____
                Attorney