# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
### KANSAS CITY DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                     **Plaintiff,**

    **v.**

STEPHEN M. KOVZAN,

                   **Defendant.**

Civil No. 11-CV-2017 JWL/KGS

ORAL ARGUMENT
REQUESTED

---

## MEMORANDUM OF LAW IN SUPPORT OF
## STEPHEN M. KOVZAN'S THIRD MOTION TO COMPEL

Andrew B. Weissman (*pro hac vice*)
John A. Valentine (*pro hac vice*)
Nicole R. Rabner (*pro hac vice*)
J. David Zetlin-Jones (*pro hac vice*)
Kelly S. Shoop (*pro hac vice*)

WILMER CUTLER PICKERING HALE AND
 DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 663-6000
andrew.weissman@wilmerhale.com
john.valentine@wilmerhale.com
nicole.rabner@wilmerhale.com
david.zetlin-jones@wilmerhale.com
kelly.shoop@wilmerhale.com

Stephen L. Hill, Jr.     KS # 78029
Maxwell Carr-Howard  KS # 21042
Lyndsey J. Conrad     KS # 23527

HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, Missouri  64112
(816) 983-8000
(816) 983-8080
stephen.hill@huschblackwell.com
max.carr-howard@huschblackwell.com
lyndsey.conrad@huschblackwell.com

*Attorneys for Defendant Stephen M. Kovzan*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ...................................................................................................................5

   I. PLAINTIFF'S COMMUTING ALLEGATIONS .................................................5

   II. THE SEC INSPECTOR GENERAL REPORT ..................................................8

   III. THE DISCOVERY REQUESTS ....................................................................10

ARGUMENT ....................................................................................................................12

   I. THE REQUESTS SEEK DISCOVERY BEARING DIRECTLY ON MR.
      KOVZAN'S SCIENTER AND ARE REASONABLY CALCULATED TO LEAD
      TO THE DISCOVERY OF ADMISSIBLE EVIDENCE. ...................................12

   II. PLAINTIFF'S PRIVILEGE OBJECTIONS ARE IMPROPER.......................17

CONCLUSION....................................................................................................................18

## **TABLE OF AUTHORITIES**

### CASES

*City of Philadelphia v. Flemings Cos.*,
  264 F.3d 1245 (10th Cir. 2001) .............................................................................3, 14

*Dahood v. United States*,
  747 F.2d 46 (1st Cir. 1984)...................................................................................17

*EEOC v. Citizens Bank & Trust Co. of Maryland*,
  117 F.R.D. 366 (D. Md. 1987) .............................................................................13

*EEOC v. Freeman*,
  No. 09-cv-02573, 2012 WL 3536752 (D. Md. Aug. 14, 2012)................................15, 16, 17

*EEOC v. Kaplan Higher Education Corp.*,
  No. 1:10 CV 2882, 2012 WL 1358500 (N.D. Ohio Apr. 18, 2012)......................................16

*Johnson v. Kraft Foods N. Am., Inc.*,
  236 F.R.D. 535 (D. Kan. 2006) .............................................................................18

*McKinsey v. Commissioner*,
  T.C.M. 1984-514 (1984)........................................................................................10

*SEC v. Collins & Aikman Corp.*,
  256 F.R.D. 403 (S.D.N.Y. 2009) ...........................................................................13

*SEC v. Kovzan*,
  No. 11-2017-JWL, 2012 WL 4819011 (D. Kan. Oct. 10, 2012)..........................4, 13, 14, 18

*Shoemake v. McCormick, Summers and Talarico II*,
  No. 10-2514-RDR, 2011 WL 5553652 (D. Kan. Nov. 15, 2011) .........................................19

*Smith v. MCI Telecommunications Corp.*,
  137 F.R.D. 25 (D. Kan. 1991) ...............................................................................13

*Snowden v. Connaught Labs.*,
  137 F.R.D. 336 (D. Kan. 1991) .............................................................................13

*United States v. Tauferner*,
  407 F. 2d 243 (10th Cir. 1969) .............................................................................17

## STATUTES & RULES

26 C.F.R. § 1.162-2 (e), Treas. Reg. § 1.162-2(e) .......................................................................10

D. Kan. Rule 37.2 .......................................................................................................................1

Fed. R. Civ. P. 26(b)(1) .............................................................................................................13

Fed. R. Civ. P. 26(b)(5) .............................................................................................................19

Fed. R. Civ. P. 37(a)(1) ...............................................................................................................1

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, Defendant Stephen M. Kovzan respectfully submits this Memorandum of Law in support of his Motion To Compel responses to his Second Set of Requests for Admission and Third Set of Requests for the Production of Documents and Things ("Requests").[1]

## PRELIMINARY STATEMENT

If a senior executive of a geographically dispersed company lives and works in Wyoming, travels extensively to meet with current and potential customers and investors, and on an irregular basis visits the company's small corporate headquarters in Kansas, is that executive "commuting" when he travels between Wyoming and Kansas?  Is it reckless for a person to conclude otherwise?

The fraud claims brought by plaintiff Securities and Exchange Commission ("SEC") against Mr. Kovzan rely heavily on the answers to both those questions being "yes." Accordingly, Mr. Kovzan's discovery efforts have focused in part on gathering information that may provide insights and lead to admissible evidence about the answers to those questions.

As it turns out, in the administration of its own affairs, the SEC appears to have made decisions on matters closely analogous to those questions.  The SEC itself has decided how to characterize the travel costs of its own senior officials who live in locations distant from the headquarters of the SEC and of the Divisions they run.  These SEC officials maintain a formal office and staff in the SEC's Washington, D.C. headquarters, are publicly listed as being located in those offices, do some of their work in offices near their homes in New York, and travel

---

[1]      In accordance with D. Kan. R. 37.2 and Fed. R. Civ. P. 37(a)(1), the parties have made reasonable efforts to confer and resolve the parties' differences without resorting to motion practice, having exchanged written correspondence and/or held telephonic conferences on November 30, 2012 and December 4, 17, and 20, 2012.  *See* Declaration and Certification of Compliance with D. Kan. Rule 37.2.

1

extensively to Washington to perform duties in their headquarters office.  It appears that the SEC reimburses these officials for the travel expenses they incur going from their homes in New York to their offices at the SEC headquarters in Washington, D.C., and may also reimburse their living costs while in Washington.  It also appears that the SEC may have determined that this travel is *not* appropriately characterized as "commuting," and therefore those employees' reimbursed travel expenses are not treated as income for tax reporting or other purposes.  Since plaintiff's own practices appear to provide data on the appropriate characterization of this type of travel expense, as well as whether it would be reckless to fail to treat such expenses as "commuting," Mr. Kovzan sought narrowly-focused discovery on these SEC practices.  Plaintiff refused to respond, primarily on relevancy grounds.  Mr. Kovzan respectfully submits that information about these SEC practices is relevant to the matters at issue in this case, and is reasonably calculated to lead to admissible—indeed powerful—evidence.

Mr. Kovzan learned about the SEC's expense reimbursement practices for these officials from a report of the SEC's Inspector General, portions of which were made available to the public in response to a Freedom of Information Act request.  That report was primarily addressed to other expense reimbursements by the SEC, but in the report the Inspector General noted that he had also investigated complaints from SEC employees that the SEC was reimbursing the travel costs to Washington, D.C. of some of its most senior officials who preferred to maintain their residences in the New York area and traveled frequently to their official Division offices in the SEC's Washington, D.C. headquarters.  The Inspector General's report identified those expense reimbursements over a period of time, which were substantial, considered the appropriateness of these arrangements, and ultimately found nothing inappropriate about them.

2

*See* Ex. 1, at 14 n.12.[2/]  In view of the apparent existence of expense reimbursement practices at the SEC with many similarities to NIC's expense reimbursement practices for Mr. Fraser, and the apparent identical determination that these were appropriately *not* treated as commuting expenses, Mr. Kovzan served tailored discovery requests seeking information about plaintiff's treatment and classification of the travel expenses of these officials, including the decision that it was appropriate to characterize these expenses as ordinary business expenses rather than personal "commuting" expenses.  *See* Ex. 2 (Def's. Second Set of Requests for Admission); Ex. 3 (Def's. Third Set of Requests for Production of Documents and Things).

Plaintiff responded to Mr. Kovzan's discovery requests by refusing to provide responsive materials or information.  *See* Ex. 4 (Plf's. Objections and Responses to Def's. Second Set of Requests for Admissions); Ex. 5 (Plf's. Objections to Def's. Third Set of Requests for Production of Documents).  It asserts that how the SEC classifies the travel expenses of its senior employees has no bearing on any claim or defense at issue in this litigation.  Plaintiff takes the position that it is not relevant to this case that the NIC expense classifications plaintiff contends were fraudulent may have been materially identical to the SEC's own treatment of similar expenses, which the SEC and its Inspector General believe were justifiable and correct.

Plaintiff is wrong.  To prevail on its claims, plaintiff must demonstrate that NIC's classification of Mr. Fraser's travel expenses as ordinary business costs, and not "commuting" expenses, was not merely wrong, but represented an "extreme departure from the standards of ordinary care."  *City of Philadelphia v. Flemings Cos.*, 264 F.3d 1245, 1258 (10th Cir. 2001).  This Court already has confirmed that the test of recklessness is objective.  *SEC v. Kovzan,* No.

---

[2/]      Citations to "Ex. __" refer to exhibits referenced in the accompanying Declaration of David Zetlin-Jones.

11-2017-JWL, 2012 WL 4819011, at *3-4 (D. Kan. Oct. 10, 2012).  As such, evidence of how similarly-situated persons distinguish between "commuting" expenses on the one hand and business travel on the other is relevant to whether Mr. Kovzan acted reasonably in considering and applying that distinction here.  *See id.*  That the similarly-situated person here is the *plaintiff itself* makes the information requested not merely relevant, but crucial.

The significance of this evidence is made even more apparent by the fact that plaintiff has never provided *regulatory guidance* on the meaning of "commuting."  In the absence of any such regulatory guidance, the trier of fact in this case should be made aware that plaintiff's claim turns on finding that Mr. Kovzan recklessly disregarded that expenses were "commuting" when plaintiff itself concluded that substantially identical expenses were *not* commuting.  As we show below, in analogous circumstances, courts have rejected an enforcement agency's attempt to preclude a defendant from gathering evidence that the agency's enforcement position conflicts with its own day-to-day conduct.

Mr. Kovzan contends that he acted in an objectively reasonable manner when he accepted the view that Mr. Fraser's sporadic travel between Wyoming and Kansas was ordinary business travel and not "commuting."  Evidence that the SEC (and its Inspector General) reached a similar conclusion when faced with similar circumstances would lend powerful support to that defense.[3/] Plaintiff should be required to respond fully to Mr. Kovzan's requests.

---

[3/]     In fact, it is likely that the evidence will show that these SEC officials traveled from their New York homes to their Washington, D.C. headquarters offices with greater frequency and more regularity than Mr. Fraser's travel between Wyoming and Kansas, yet the travel was still not viewed by the SEC as "commuting."  That would provide an even greater inference that Mr. Kovzan did not recklessly conclude that Mr. Fraser's travel was not commuting.

4

**BACKGROUND**

I.  **PLAINTIFF'S COMMUTING ALLEGATIONS**

Discovery to date confirms the decentralized nature of NIC's business operations.  NIC was a geographically dispersed company that placed minimal emphasis on the physical location of employees not serving specific local clients.  Its primary business entailed contracting with local governments to build and develop their e-government services on-site.  *See* Ex. 6 (Bur 5/24/2012 Tr. at 22:14-24:3); Ex. 7 (Evans 5/8/2012 Tr. at 18:5-19:8); Ex. 8 (Chandler 6/28/2012 Tr. at 12:8-15:1).  As such, the vast majority of NIC's operations and employees – as well as its customers and potential customers – were located in state capitols across the country.  *See* Ex. 6 (Bur 5/24/2012 Tr. at 22:24-23:2); Ex. 8 (Chandler 6/28/2012 Tr. at 12:8-15:1).  Mr. Fraser's principal duties upon resuming his position as NIC's CEO in 2002 were to focus on customer and investor relations and on company growth opportunities.  Ex. 9 (Fraser 12/12/2012 Tr. at 13:24-16:7); Ex. 7 (Evans 5/8/2012 Tr. at 25:3-11); Ex. 6 (Bur 5/24/2012 Tr. at 38:15-39:15).

Accordingly, when NIC's Board of Directors requested that Mr. Fraser come out of retirement and accept NIC's CEO position, it neither asked nor expected Mr. Fraser to relocate to Kansas, where NIC maintained a small corporate headquarters for certain of its finance and administrative staff.  Ex. 7 (Evans 5/8/2012 Tr. at 24:24-25:17); Ex. 9 (Fraser 12/12/2012 Tr. at 148:20-149:3).  Rather, Mr. Fraser continued to maintain his residence in Wyoming and to work out of an office in or near his home when not traveling elsewhere on NIC business.  Ex. 9 (Fraser 12/12/2012 Tr. at  27:19-28:8; 168:8-169:20).  This arrangement was not unusual within NIC; given the company's business model, other company executives with geographically disparate responsibilities were permitted to live and work from locations around the country, and not in or near NIC's nominal headquarters.  Ex. 9 (Fraser 12/12/2012 Tr. at  13:1-15); Ex. 6 (Bur

5

5/24/2012 Tr. at 27:14-28:10); Ex. 10 (Reynolds 4/26/2012 Tr. at 26:22-29:22) Ex. 8 (Chandler 6/28/2012 Tr. at 34:22-37:16 and 42:5-43:25).  With the Board's knowledge and consent, NIC paid the costs associated with Mr. Fraser's travel between Wyoming and Kansas when he was required to travel to Kansas on NIC business, including to visit NIC's Kansas headquarters.  Ex. 7 (Evans 5/8/2012 Tr. at 37:7-38:24).  NIC considered those travel expenses ordinary business travel costs, and not commuting, and it did not report them as compensation to Mr. Fraser either for tax or proxy reporting purposes.  *See id*; *see also* Ex. 6 (Bur 5/24/2012 Tr. at 43:8-45:7); Ex. 10 (Reynolds 4/26/2012 Tr. at 42:1-43:14).

Plaintiff's claims in this action depend heavily on its theory that the expenses associated with trips Mr. Fraser took on NIC business travel between Wyoming and Kansas constituted personal "commuting" costs and not ordinary business expenses.  On that basis, plaintiff asserts that these costs should have been disclosed as perquisites to Mr. Fraser in NIC's annual proxy statements.  Discovery in this action to date has made the centrality of plaintiff's "commuting" theory all the more apparent.  In response to this Court's July 31, 2012 Order (Dkt. No. 89), plaintiff provided its itemized list of expenses it claims were perquisites; an analysis of plaintiff's list indicates that the majority of these costs—likely the vast majority—turn on acceptance of plaintiff's theory that Mr. Fraser's travel to Kansas was "commuting," rendering these expenses perquisites.[4/]

---

[4/]      Plaintiff refused to identify the specific grounds for contending that each of the expenses on its list was a perquisite, making a precise calculation impossible.  Mr. Kovzan separately has moved this Court to compel plaintiff to supply this information.  Plaintiff has already labeled $494,193.09 of a total of approximately $1.25 million of alleged perquisites over five years as "commuting" related.  *See* Ex. 11 at SEC-P 0000055-56; SEC-P 0000060.  Mr. Kovzan believes, but does not know, that other items on plaintiff's alleged perquisite list, such as hotels, meals and rental cars in the Kansas area for which Mr. Fraser was reimbursed, also are grounded in plaintiff's "commuting" contention.

A central issue in this case, therefore, is the reasonableness of NIC's treatment of Mr. Fraser's Wyoming-Kansas travel as ordinary business travel – and not "commuting" – for compensation reporting purposes.  Plaintiff asserts not only that these expenses were "commuting" costs, but also that they were so obviously "commuting" costs that Mr. Kovzan was reckless in accepting them as ordinary business expenses.  Mr. Kovzan disputes this theory as a matter of law and fact.  Among Mr. Kovzan's defenses is that, under the circumstances of this case, Mr. Fraser's long-distance and irregular travel between Wyoming and Kansas does not—and cannot—fit within any reasonable understanding of the term "commuting." Accordingly, NIC's and Mr. Kovzan's conclusion that Mr. Fraser's travel was ordinary business travel (and not personal "commuting" compensation) was not reckless, but rather reasonable and appropriate.

In the course of discovery, plaintiff has acknowledged that its proxy rules and regulations contain neither any specialized definition of "commuting" nor any guidance as to the standards for distinguishing "commuting" expenses from ordinary business travel expenses.  Ex. 12 (Plf's. Responses to Def's. Second Set of Interrogatories) at 10-11.  Plaintiff further has stated that in alleging that Mr. Fraser's travel between Wyoming and Kansas was "commuting," plaintiff is according the term "commuting" its "plain and ordinary meaning."  *Id.*  The principal and material grounds that plaintiff contends support its position that Mr. Fraser's travel was "commuting" under that term's purportedly plain and ordinary meaning—and that Mr. Kovzan was reckless in failing to recognize it as such—are the following contentions: (1) that Mr. Fraser was allowed to live in Wyoming to accommodate a personal preference, and not for a particular business reason; (2) that NIC maintained a dedicated office for Mr. Fraser's use at its corporate office in Kansas; and (3) that the benefits Mr. Fraser received in connection with his Wyoming-

Kansas travel were not generally available to other NIC employees.  Ex. 13 (Plf's. Responses to

Def's. Second Set of Interrogatories) at 30; Am. Compl. (Dkt. No. 22) at ¶ 33.

## II.   THE SEC INSPECTOR GENERAL REPORT

Mr. Kovzan has identified publicly available information indicating that plaintiff itself:

(1) accommodates the personal preferences of certain of its most senior employees as to where

they live and work; (2) allows those employees to live and work a significant distance from

plaintiff's Washington, D.C. office, where the offices those officials lead are principally located;

(3) maintains dedicated offices for these employees at its Washington, D.C. headquarters for

their use; and (4) pays for those senior officials' travel expenses for their regular trips between

their preferred residential and work location and their Washington, D.C. headquarters offices.  A

recent Report of Investigation issued by the SEC's Office of the Inspector General referred to

these arrangements.[5/]  *See* Ex. 1 at 14 n.12.  The Inspector General's Report—which is available

publicly in redacted form by virtue of a Freedom of Information Act request—includes a

footnote stating the following:

> During the course of this investigation, the OIG investigated complaints regarding
> the amount of travel expenses related to the fact that the Director and Deputy
> Director of the SEC's Office of Compliance Inspections and Examinations
> (OCIE), which is headquartered in Washington DC, live in the New York City
> area, travel regularly to SEC headquarters and are reimbursed for that travel.
> When they were hired for their respective positions, the SEC made the SEC's
> New York City Regional Office the official duty station for Carlo di Florio, the
> OCIE Director, and Norman Champ, the OCIE Deputy Director.  However,
> unlike Hu, their official duty station is an SEC regional office and they do work
> out of that office when they are not working in Washington, DC.  The OIG found
> that di Florio was reimbursed $45,688.09 for the period of January 25, 2010
> through July 11, 2011, and Champ was reimbursed $13,329.93 for the period of

---

[5/]     The Inspector General Report concluded that living and travel expenses that plaintiff
reimbursed to Henry Hu, its Director of the Division of Risk, Strategy and Financial Innovation,
were excessive and violated guidance issued by the Office of Personnel Management.  *See
generally* Ex. 1.  That finding is not the focus of Mr. Kovzan's discovery requests.

> August 24, 2010 through July 11, 2011.  *See* spreadsheet with attached expense
> reports at Exhibit 39.

*Id.*  The exhibits referenced in the report are not publicly available (and are among the

documents sought by Mr. Kovzan in the Requests).  This footnote reflects the fact that the two

highest officials of the SEC's Office of Compliance Inspections and Examinations ("OCIE"),

which is headquartered in Washington, D.C., were permitted to live and work partially out of an

office in New York and were reimbursed for extensive travel to their dedicated offices in

Washington, D.C.  The report also reflects that the SEC deferred to the personal preferences of

these senior officials by designating New York as their "official duty station."

Since the Inspector General issued this report, Mr. Champ was appointed Director of the

SEC's Division of Investment Management, which also is headquartered in Washington, D.C.

*See* Press Release, SEC, *SEC Names Norm Champ as Director of Division of Investment

Management* (July 5, 2012), *available at* http://www.sec.gov/news/press/2012/2012-129.htm

(last visited Dec. 20, 2012).  Mr. Kovzan believes that plaintiff continues to allow Mr. Champ to

live and work in New York City, while traveling with regularity and frequency to the Office of

the Division of Investment Management in Washington, D.C., which he heads and where he

maintains a dedicated office and staff.   Mr. Kovzan further believes that Eileen Rominger, Mr.

Champ's predecessor as Director of the Division of Investment Management from 2009 through

2011, likewise was permitted to live in and work from the New York area (accommodating her

personal preference), notwithstanding that the Office of the Director for the Division of

Investment Management is headquartered in Washington, D.C., and that Ms. Rominger's

expenses for traveling regularly to her Washington, D.C. office were reimbursed by the SEC as

ordinary travel expenses.

Although plaintiff is not a public company subject to reporting requirements of Regulation S-K, it *is* subject to compensation reporting obligations in at least two respects.  First, plaintiff's employees are subject to the federal tax laws, which mandate the classification of "commuting" expenses as reportable compensation.  *See* 26 C.F.R. § 1.162-2 (e), Treas. Reg. § 1.162-2(e); *McKinsey v. Commissioner*, T.C.M. 1984-514 (1984).  Second, each year, plaintiff submits a budget proposal to Congress to request and justify its annual appropriations.  These requests—which are publicly available—detail plaintiff's estimated expenses for the upcoming fiscal year and report its previous two years' expenditures.  *See* Ex. 14.  In these appropriations requests, plaintiff specifically delineates between expenses for "personnel compensation" on the one hand, and "travel and transportation of persons" on the other.  *Id*. at 10.  The former are classified as "salaries and benefits" and the latter are treated as "non-personnel expenses."  *See id.* at 50, 53.

## III.   THE DISCOVERY REQUESTS

On November 5, 2012, Mr. Kovzan issued to plaintiff his Second Set of Requests for Admission and Third Set of Requests for the Production of Documents and Things  seeking additional information regarding the Inspector General's report, and regarding plaintiff's treatment of the expenses for Ms. Rominger and Messrs. Di Florio and Champ.  The Requests seek information regarding the nature of the costs reimbursed to these individuals for their travel between New York and Washington, D.C., and whether plaintiff considered or reported these travel costs as compensation for tax purposes or otherwise.  *See* Exs. 2-3.  The Requests additionally seek admissions and evidence regarding, among other things, whether or not plaintiff concluded that these individuals' travel between New York and Washington, D.C., constituted "commuting," what the nature of their work and travel arrangements was, what the

business rationale was for permitting these individuals to live and work out of New York instead of Washington, D.C., whether these individuals maintained dedicated offices at the SEC's Washington, D.C. headquarters,[6/] and whether other senior SEC officials had similar arrangements.

Plaintiff provided its response to the Requests on December 5, 2012.  Plaintiff essentially refused to provide any responsive information, objecting principally on grounds that the discovery sought was irrelevant, while also lodging objections that the Requests are burdensome and intrude on various privileges and protections.[7/]  Exs. 4-5.[8/]

In the course of the parties' efforts to confer regarding plaintiff's objections, plaintiff clarified that it did not conduct a search for responsive materials (beyond certain materials related to the Inspector General's report) because it views the information sought to be irrelevant

---

[6/]      It appears that the SEC maintained dedicated offices for each of these individuals at its Washington, D.C. headquarters.  The SEC's website publishes contact information for its senior OCIE staff.  This website lists its Washington, D.C. headquarters as Mr. Di Florio's primary address.  *See* Office of Compliance Inspections and Examinations – Contact Information, *available at* http://www.sec.gov/about/offices/ocie/ocie_org.htm (last visited, Dec. 20, 2012). Additionally, plaintiff's 2011 Performance and Accountability Report lists a Washington, D.C. phone number for the Director of OCIE and the Director of Investment Management.  *See* Ex. 15 (U.S. Securities & Exchange Commission, *FY 2011 Performance Accountability Report*, Appendix C: SEC Divisions and Offices) at 204.  And plaintiff's Congressional budget requests report that the entire Staff of its Division of Investment Management (presumably including its Director) work out of its Washington, D.C. headquarters.  Ex. 14, at 53.

[7/]      Plaintiff provided a substantive response to only one Request for Admission Number 5, acknowledging that it has a regional office located in New York City.  *See* Ex. 4 at 6.

[8/]      Plaintiff also asserts certain additional objections that appear to have been copied from prior discovery responses and plainly have no merit or bearing here.  For instance, plaintiff asserts that "it has made a reasonable inquiry by consulting documents and other information that it gathered during this litigation and the related SEC investigation to date."  Ex. 5 at 3.  By definition, the discovery sought by the Requests would not be located in its investigative or litigation files; a search in those files for documents cannot possibly constitute a "reasonable inquiry."

to any claims and defenses in this action.  Plaintiff explained that its assertion of privilege and

Privacy Act objections did not correspond to specific collected documents but was asserted only

to preserve those objections if and when this Court requires that the materials and information

sought be produced.  During the parties' meet and confer discussion, Mr. Kovzan also offered to

entertain proposals to mitigate any unreasonable burden plaintiff may face in responding to the

Requests, including the willingness to withdraw certain document requests if plaintiff's

responses to the requests for admissions render the underlying documents duplicative and/or

unnecessary.  Thus, the relevance of the requested materials is a threshold issue, and its

resolution is the subject of this Motion To Compel.

## ARGUMENT

I.   **THE REQUESTS SEEK DISCOVERY BEARING DIRECTLY ON MR. KOVZAN'S SCIENTER AND ARE REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.**

Fed. R. Civ. P. 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense ...."  Fed. R. Civ. P. 26(b)(1).  "Relevancy

is broadly construed at the discovery stage of the litigation and a request for discovery should be

considered relevant if there is any possibility that the information sought may be relevant to the

subject matter of the action."  *Smith v. MCI Telecomms. Corp.*, 137 F.R.D. 25, 27 (D. Kan.

1991).  "A request for discovery ... should ordinarily be allowed unless it is clear that the

information sought can have no possible bearing on the subject matter of the action."  *Snowden*

*v. Connaught Labs.*, 137 F.R.D. 336, 341 (D. Kan. 1991).  Rule 26's broad standards of

relevancy apply equally to government plaintiffs as to any other plaintiff.  *See SEC v. Collins &*

*Aikman Corp.,* 256 F.R.D. 403, 414 (S.D.N.Y. 2009) (the government "is not entitled to special

consideration concerning the scope of discovery, especially when it voluntarily initiates an

12

action"); *EEOC v. Citizens Bank & Trust Co. of Md.,* 117 F.R.D. 366, 366 (D. Md. 1987) ("[W]hen the government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery materials that a private plaintiff would have to turn over.").

Plaintiff's relevancy objections are without merit. The Requests seek information bearing directly on an issue central issue to plaintiff's allegations – whether Mr. Kovzan was reckless in concluding that the costs associated with Mr. Fraser's travel between Wyoming and Kansas were not "commuting" expenses requiring disclosure as compensation. This Court already has affirmed that the test for recklessness is an objective one. *See SEC v. Kovzan*, 2012 WL 4819011, at *3-4 (citing *Fleming Cos.*, 264 F.3d at 1257-78). Any assessment of Mr. Kovzan's alleged recklessness (or lack thereof) can only be made by reference to "the standards of ordinary care." *Id*. As such, "evidence of the practice within the industry may be relevant to the issue of scienter" and "defendant is entitled to seek evidence relating to the industry standard." *Id*.

Plaintiff's judgments on the scope of "commuting" in the context of its own reporting requirements on income and compensation may be probative of both industry standards and the reasonableness of Mr. Kovzan's judgments on that same issue. That evidence could be highly compelling, given the apparent factual similarities between plaintiff and NIC regarding expense reimbursements for senior officials who reside far from the organization's headquarters. Plaintiff's approval of these arrangements and assessment of how to treat those expense reimbursements for tax and other purposes, certainly could shed light on when such expenses may reasonably be considered ordinary travel costs and not "commuting" costs. Given the absence of any guidance from plaintiff to registrants on when travel is to be considered "commuting," the standards applied by plaintiff to its own workforce could be relevant to

13

assessing whether NIC or Mr. Kovzan addressed the same issue reasonably.  Moreover, to the extent plaintiff may try to elicit expert opinions on the commuting issue, evidence of the SEC's treatment of that issue with its own employees may serve as fair material to probe those opinions on cross examination.

Mr. Kovzan believes discovery may establish that responsible SEC administrators facilitated and approved an arrangement allowing each of these Division Directors or Deputy Directors (i) to choose to live and work near their homes in New York City, based on their own personal preference, not the SEC's preference; (ii) to maintain a dedicated office at SEC and Division headquarters in Washington, D.C.; and (iii) to be reimbursed for regular business travel expenses between New York City and Washington, D.C., and living expenses while on travel in Washington, D.C., without those reimbursements being treated as compensation.  Mr. Kovzan also believes that discovery may show that the SEC officially treated these expenses as ordinary costs for tax purposes when the Internal Revenue Code mandates that reimbursement of commuting expenses be reported as taxable income, and likewise treated these expenses as ordinary travel costs, and not compensation, in reports to Congress.  In addition, discovery may show that, after a thorough investigation of the facts and circumstances, the SEC's own Inspector General found nothing improper about those arrangements.  Evidence that the SEC's own senior staff and Inspector General approved of arrangements that a trier of fact may find strikingly similar to NIC's treatment of Mr. Fraser's travel expenses would bear directly on plaintiff's ability to prove that Mr. Kovzan acted recklessly.

Plaintiff's assessment of when employee travel expenses are "commuting" (in the "plain and ordinary" sense of that term) and therefore a form of compensation is especially probative because plaintiff is the very agency purporting to police that standard with regard to perquisite

14

reporting by public companies.  *See EEOC v. Freeman*, No. 09-cv-02573, 2012 WL 3536752, at

*2 (D. Md. Aug. 14, 2012).  *Freeman* was an enforcement action brought by the Equal

Employment Opportunity Commission ("EEOC") alleging that defendant violated the law by

using credit and criminal checks as part of its hiring process.  The defendant contended that its

conduct was an acceptable business practice.  *Id.*  When defendant learned that the EEOC itself

examined applicants' credit and criminal histories in its own hiring decisions, defendant sought

discovery into the EEOC's own hiring practices on the theory that such information could bear

on the reasonableness of defendant's conduct.  The EEOC moved for a protective order against

the discovery, arguing, as the SEC does here, that its practices were not at issue in the case and

therefore the materials sought were irrelevant.  The *Freeman* court squarely rejected that

argument, holding that "if Plaintiff uses hiring practices similar to those used by Defendant, this

fact may show the appropriateness of those practices, particularly because Plaintiff is the agency

fighting unfair hiring practices."  *Id.*

  The court in *EEOC v. Kaplan Higher Education Corp.*, No. 1:10 CV 2882, 2012 WL

1358500, at *4 (N.D. Ohio Apr. 18, 2012), likewise granted a defendant's motion to compel

discovery related to the EEOC's use of credit and criminal histories in its own hiring processes

over the EEOC's relevance objections.  The *Kaplan* court found that discovery into the EEOC's

own use of the practice it alleged to be unlawful was both relevant and justified.  Specifically,

the court held that information concerning the EEOC's practices would be probative of the

standards that should apply to regulated persons employing similar practices.  *See id.*

  Similarly here, plaintiff's own determination of when expenses associated with the travel

of its senior officials to and from its headquarters are "commuting" expenses (and thus reportable

as compensation) is highly relevant to the determination whether NIC or Mr. Kovzan acted

15

improperly when making similar decisions.  If plaintiff classifies the business travel of its own

senior employees to and from company headquarters in the same manner NIC did, "this fact may

show the appropriateness of those practices."  *Freeman*, 2012 WL 3536752, at *2.[9]

Plaintiff's concession that its proxy rules provide no definition of the term "commuting,"

and its reliance in discovery responses on what it terms the "plain and ordinary meaning" of

"commuting," negate any possible contention that plaintiff's practices are irrelevant because it is

not a public company and not subject to Regulation S-K's reporting requirements.  The "plain

and ordinary meaning" of "commuting" would apply equally to plaintiff's treatment of its

employees' travel expenses for tax and other purposes as it would to NIC's determination of the

proper classification of Mr. Fraser's travel expenses.  In fact, plaintiff has pointed repeatedly to

tax cases as a means of trying to flesh out the meaning of "commuting" in this case.  *See* Ex. 12

Plf's. Responses to Def's. Second Set of Interrogatories) at 10-11 (citing *United States v.

Tauferner*, 407 F. 2d 243, 246 (10th Cir. 1969) (assessing whether an expense is "commuting"

under applicable IRS regulations)); *see also* Plf's. Opposition to Def's. Motion To Dismiss (Dkt.

No. 28) at 17 (citing *Tauferner* and *Dahood v. United States*, 747 F.2d 46 (1st Cir. 1984), both

arising under federal tax law).  Those same tax rules apply to plaintiff's treatment of its

employees' reimbursed travel expenses.

Mr. Kovzan is entitled to explore these issues in discovery.  Plaintiff's accusations placed

his career and his family's livelihood in jeopardy.  And it appears that plaintiff put Mr. Kovzan's

livelihood at issue because NIC classified travel expenses in exactly the same manner as plaintiff

---

[9]     When confronted with an apparent conflict between plaintiff's own practices and the
standard it now seeks to impose on Mr. Kovzan, plaintiff may try to argue that the facts of the
two cases are distinguishable.  That determination cannot be made without first learning the facts
in discovery.  In any event, proposed inferences that might or might not be accepted by the trier
of fact are not grounds for avoiding discovery.

did in comparable circumstances.  That is potential evidence that plaintiff should not be permitted to conceal.

## II.     PLAINTIFF'S PRIVILEGE OBJECTIONS ARE IMPROPER.

Plaintiff also asserts the attorney-client, law enforcement and deliberative process privileges, as well as the protections of the attorney work product doctrine and the Privacy Act, as bases for not providing any documents or information responsive to the Requests.  Plaintiff has acknowledged, however, that these objections are in fact placeholders, designed to preserve its privilege claims if and when it searches for and/or collects responsive documents.  This Court has already determined that such objections are improper.  *See SEC v. Kovzan*, 2012 WL 4819011, at *6 ("the SEC has not yet conducted the relevant search, and thus it cannot credibly make that [privilege] determination").  Plaintiff cannot possibly know—much less establish— why a document is protected if it has not seen or even looked for it.

Further, plaintiff's theoretical or contingent objections are deficient on their face.  As to Mr. Kovzan's Second Set of Requests for Admission, plaintiff has lodged no specific objections on the basis of any privilege, but instead asserted a general objection to all requests "to the extent" their responses require disclosure of privileged information.  Ex. 4 at 2.  Such broad and generalized objections make no meaningful effort to demonstrate the application of any privilege or protection to any particular Request, and courts in this District have repeatedly deemed them improper and/or refused to consider them at all.  *See Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 538 (D. Kan. 2006) ("This Court has on several occasions disapproved of the practice of asserting a general objection 'to the extent' it may apply to particular requests for discovery.") (citation omitted).

17

As to Mr. Kovzan's Third Set of Requests for Documents, although plaintiff lodged identical, specific objections to nearly every request, these objections refer to numerous privileges and protections, without identifying on which one it actually relies. *See* Ex. 5. Plaintiff additionally refuses to provide a privilege log identifying the responsive documents it is withholding on the ground that, "[a]ny further attempt to describe such materials [beyond the objections asserted] would reveal protected information without in any way furthering any legitimate effort to assess the claims of privilege or protection as work product or trial preparation materials." *Id.* Such blanket privilege claims come nowhere close to satisfying its obligations under the Federal Rules of Civil Procedure. Rule 26(b)(5) requires that plaintiff provide sufficient information to allow Mr. Kovzan (and the Court) to determine whether each element of the asserted privilege or protection is satisfied as to each document withheld. Fed. R. Civ. P. 26(b)(5); *Shoemake v. McCormick, Summers and Talarico II*, No. 10-2514-RDR, 2011 WL 5553652, at *4 (D. Kan. Nov. 15, 2011) ("This burden cannot be discharged by mere conclusory assertions or blanket claims of privilege."). If this Court concludes that Mr. Kovzan's requests seek relevant information and orders the production of materials and information responsive to the Requests, it additionally should require that plaintiff identify and describe any document it withholds on the basis of privilege in a manner compliant with Fed. R. Civ. P. 26(b)(5).

## CONCLUSION

For the foregoing reasons, Mr. Kovzan respectfully requests that the Court enter an order compelling plaintiff to provide responses to his Requests, including a log of information and documents withheld on grounds of privilege or any other protection.

18

Dated:  December 21, 2012

Andrew B. Weissman (*pro hac vice*)
John A. Valentine (*pro hac vice*)
Nicole R. Rabner (*pro hac vice*)
J. David Zetlin-Jones (*pro hac vice*)
Kelly S. Shoop (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 663-6000
andrew.weissman@wilmerhale.com
john.valentine@wilmerhale.com
nicole.rabner@wilmerhale.com
david.zetlin-jones@wilmerhale.com
kelly.shoop@wilmerhale.com

Respectfully submitted,

/s/ Stephen L. Hill, Jr.
Stephen L. Hill, Jr. KS # 78029
Maxwell Carr-Howard KS # 21042
Lyndsey J. Conrad KS # 23527
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, Missouri  64112
(816) 983-8000
(816) 983-8080
stephen.hill@huschblackwell.com
max.carr-howard@huschblackwell.com
lyndsey.conrad@huschblackwell.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2012, a copy of the foregoing was filed electronically with the above captioned court, with notice of case activity to be generated and sent electronically by the Court's CM/ECF system to:

Erica Y. Williams
David Williams
Helaine Schwartz
David S. Mendel
Holly A. Pal
Natalie Shioji
U.S. Securities & Exchange Commission-DC
100 F. Street NE
Washington, D.C.  20549-4010
(202) 551-4450
(202) 772-9246 (FAX)
williamse@sec.gov
williamsdav@sec.gov
schwartzh@sec.gov
mendeld@sec.gov
palh@sec.gov
shiojin@sec.gov
*Attorneys for Plaintiff Securities & Exchange Commission*


Jeffrey S. Kruske
Office of the Kansas Securities Commissioner
109 SW 9th Street, Suite 600
Topeka, KS 66612
(785) 296-5215
(785) 296-5482 (FAX)
Jeff.Kruske@ksc.ks.gov
*Attorney for Plaintiff Securities & Exchange Commission*



/s/ Stephen L. Hill, Jr.
Attorney