```
                                                          Page 1
 1           IN THE UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF KANSAS
 3                 KANSAS CITY DIVISION
 4   - - - - - - - - - - - - - - X  :
 5   SECURITIES AND EXCHANGE         :
 6   COMMISSION,                     :
 7          Plaintiff,               :  Civil No.
 8          v.                       :  11-CV-2017 JWL/KGS
 9   STEPHEN M. KOVZAN,              :
10          Defendant.               :  Judge John W.
11   - - - - - - - - - - - - - - X  :  Lungstrum
12
13              Kansas City, Missouri
14              Friday, June 1, 2012
15            Videotaped Deposition of
16   STEPHEN M. KOVZAN, a defendant, herein, called for
17   examination by counsel for the Plaintiff in the
18   above-entitled matter, pursuant to Notice of
19   Deposition, at the law offices of
20   Husch Blackwell LLP, 4801 Main Street, Suite 1000,
21   Kansas City, Missouri 64112, at 9:00 a.m., on
22   Friday, June 1, 2012, and the proceedings being
23   taken down by Stenotype by JANIECE Y. YOUNG, RPR,
24   CSR, CCR and transcribed under her direction.
25
```

Page 54

```
 1   officer by that time?
 2       A.    I -- I don't remember exactly what his
 3   title was at that time.
 4       Q.    That's fair.
 5             Did Mr. Fraser have an office in Olathe,
 6   Kansas?
 7       A.    Yes, there was an office in both the
 8   first location and the second location that
 9   Mr. Fraser used when he -- he was in town on
10   business.  But Mr. Fraser's primary place of
11   business and the place where he -- he lived and
12   both worked was not in Kansas, and that was in --
13   in Wyoming.
14       Q.    Mr. Fraser worked in Wyoming?
15       A.    That is correct.
16       Q.    How do you know?
17       A.    Well, I, one, had been to Wyoming once or
18   twice in the past back in the '99 or 2000 time --
19   time frame.  He informed us that he worked in
20   Wyoming.  When we -- when I had conversations with
21   individuals within the company, it was well known
22   that Mr. Fraser worked from -- from Wyoming.
23             In my preparation for this matter and
24   based on my review of documents and various emails,
25   Mr. Fraser made representations that that is --
```

Stephen M. Kovzan                                                June 1, 2012
Kansas City, MO

Page 103

```
 1   any of the changes?  I don't remember any of the --
 2   any individual specific changes.
 3        Q.    Okay.  I'm going to hand you a document
 4   that I'm going to ask the court reporter to label
 5   as Exhibit Kovzan 2.
 6             (Kovzan Exhibit No. 2 was marked for
 7              identification.)
 8        Q.    (By Mr. Williams)  And I'll represent to
 9   you that Exhibit No. Kovzan 2 is a two-page
10   document Bates numbered NIC117493 through 117494.
11   It appears to be a series of email communications
12   that took place on or about January 5th of 2004.
13   It's previously been marked in the investigation of
14   this matter as Exhibit No. 93.
15             My question to you, Mr. Kovzan, is are
16   you familiar with this document?
17        A.    I -- I don't recall seeing this document.
18        Q.    Okay.  The -- the original email
19   communication --
20        A.    May -- may I take a moment to read
21   through it?
22        Q.    Oh, I'm sorry.
23        A.    I'm -- in just initially looking at it, I
24   don't recall seeing it, but I'd like to take a
25   moment to read through it --
```

Stephen M. Kovzan                                            June 1, 2012
                        Kansas City, MO

Page 104

```
 1      Q.     Absolutely.
 2      A.     -- if that's okay.
 3             Okay.
 4      Q.     Having reviewed the document at least
 5   briefly, does the document appear familiar to you?
 6      A.     It -- it is not.
 7      Q.     Okay.  The original email in the -- in
 8   the series of email communications appears to be an
 9   email from Mr. Al Reynolds to Mr. Bur and yourself,
10   "Commuting and the IRS."
11             Do you recall Mr. Reynolds identifying
12   for you in about January of 2004 a risk that the
13   commuting expenses might be viewed by the IRS as a
14   personal expense to Mr. Fraser?
15                MR. WEISSMAN:  I object to the form.
16      A.     I -- I don't.  I don't specifically
17   recall in January 2004 that.
18      Q.     (By Mr. Williams)  Do you recall that
19   issue ever coming up?
20      A.     I -- I do recall that Mr. Reynolds, who
21   as I previously mentioned was the company's
22   in-house tax expert, I do remember
23   Mr. Reynold -- Reynolds analyzing and -- and
24   deciding that Mr. Fraser's travel -- business
25   travel from his home and his office in Wyoming to
```

```
                                                              Page 105
 1   the Kansas headquarters would -- would not be
 2   considered traveling.  And that's -- that has been
 3   the company's position.  And that has been my
 4   understanding of -- of the issue of commuting as it
 5   relates to Mr. Fraser's travel from Wyoming to
 6   Kansas throughout time.
 7        Q.    What was the nature of the analysis that
 8   Mr. Reynolds undertook, to your knowledge?
 9        A.    I -- I -- I don't recall the analysis.
10   I -- I have seen -- in -- in my preparation for
11   this matter I have seen this bottom portion of --
12   of this email before; but I -- again, I don't
13   recall receiving it at the time.  But I -- I don't
14   recall what, you know, the absolute substance of
15   his -- of his analysis was.
16              But as a company we were -- we were very
17   comfortable and felt very comfortable in -- in our
18   position.  And I felt comfortable in my various
19   roles throughout the time based on Mr. Reynolds'
20   guidance that the travel was not commute -- was not
21   commuting in accordance with IRS standards.
22              That's the -- my recollection was that
23   was the way in which Mr. Reynolds analyzed the
24   situation because that was the only way he -- and
25   that I understood how to do it as well.
```

Stephen M. Kovzan                                                June 1, 2012
Kansas City, MO

```
                                                          Page 106
 1     Q.    I'm sorry, I didn't catch the last part
 2   of your -- your answer.  That -- that was the only
 3   way that -- that you understood to -- to do what?
 4     A.    To -- to analyze the issue of -- of
 5   whether Mr. Fraser's business travel from his home
 6   and his office in Wyoming to Kansas was commuting
 7   or not.
 8     Q.    And what was -- what was that -- what
 9   was --
10     A.    Based on IRS standards.
11     Q.    Okay.  And what was the standard as you
12   understood it?
13     A.    I don't -- I don't recall specifically
14   what the standard was.
15     Q.    Do you recall analyzing it under IRS
16   standards?
17     A.    I recall Mr. Reynolds analyzing it.  I
18   don't know if this was the analysis at the bottom
19   of this email or not, but I -- but I certainly
20   recall Mr. Reynolds analyzing it.
21         (Off-the-record discussion.)
22     Q.    (By Mr. Williams)  Do you know -- as you
23   sit here today do you know what commuting is?
24             MR. WEISSMAN:  Objection.
25     A.    In what regard?
```

Stephen M. Kovzan

Kansas City, MO

June 1, 2012

Page 226

1              CERTIFICATE OF DEPONENT

2

3

4     I hereby certify that I have read and examined the

5     foregoing transcript, and the same is a true and

6     accurate record of the testimony given by me.

7     Any additions of corrections that I feel are

8     necessary, I will attach on a separate sheet of

9     paper to the original transcript.

10

11     _____

12                Signature of Deponent

13

14     I hereby certify that the individual representing

15     himself/herself to be the above-named individual,

16     appeared before me this  11  day of  July  ,

17     2012, and executed the above certificate in my

18     presence.

19

20     _____

21              NOTARY PUBLIC IN AND FOR

22     ____Johnson_____

23                      County Name

24                                  Notary Public State of Kansas
                                     Tammy Miller  4/9/2014
25     MY COMMISSION EXPIRES:       My Appt Exp _4/9/2014_

Stephen M. Kovzan                                                    June 1, 2012
                          Kansas City, MO

Page 227

1                    C E R T I F I C A T E

2

3        I, JANIECE Y. YOUNG, a Certified Court

4   Reporter within and for the State of Missouri,

5   hereby certify that the within-named witness was

6   first duly sworn to testify the truth, and that the

7   deposition by said witness was given in response to

8   the questions propounded, as herein set forth, was

9   first taken in machine shorthand by me and

10  afterwards reduced to writing under my direction

11  and supervision, and is a true and correct record

12  of the testimony given by the witness.

13       I further certify that I am not a relative

14  or employee or attorney or counsel of any of the

15  parties, or relative or employee of such attorneys

16  or counsel, or financially interested in the

17  action.

18       WITNESS my hand and official seal at

19  Kansas City, Jackson County, Missouri, this 13th

20  day of June, 2012.

21

22       _____

23              JANIECE Y. YOUNG, CSR, RPR, CCR

24                  Certified Court Reporter

25  (MO CCR No. 798; KS CSR No. 1217)