## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## KANSAS CITY DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Civil No. 11-CV-2017 JWL/KGS |
| v. | |
| STEPHEN M. KOVZAN, | |
| Defendant. | |

### THE SEC'S REPLY IN SUPPORT OF ITS OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER COMPELLING DISCOVERY OF THE SEC'S TRAVEL POLICIES AND ORDER DENYING THE SEC'S MOTION TO QUASH KOVZAN'S RULE 30(b)(6) DEPOSITION NOTICE

Of Counsel:
Antonia Chion
(N.Y. Bar No. 1873405)
Lisa Weinstein Deitch
(California Bar No. 137492)
Holly A. Pal (D. C. Bar No. 490737)
Helaine Schwartz
(N.Y. Bar No. 1917046)
Natalie E. Shioji
(N.Y. Bar No. 4662847)
Securities And Exchange Commission

Jeffrey S. Kruske (Kansas Bar No. 20098)
Office of the Securities Commissioner
109 SW 9th Street, Suite 600
Topeka, KS 66612
Telephone: (785) 296-5215

A. David Williams (Cal. Bar 183854)
David S. Mendel (D.C. Bar 470796)
Daniel J. Maher (Mass. Bar 654711)
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549-5546
E-mail: williamsdav@sec.gov
Phone: (202) 551-4548 (Williams)

Dated:  March 21, 2013                    *Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................1

I. The Order Compelling Travel Discovery Is Clearly Erroneous ...................................2

    a. Factual Background ................................................................................ 2

    b. Kovzan's Travel Discovery Is Irrelevant ...............................................6

II. The Order Denying The SEC's Motion To Quash Kovzan's
Rule 30(b)(6) Deposition Notice Is Clearly Erroneous ..........................................11

    a. The Rule 30(b)(6) Notice Seeks to Deposition of Opposing Counsel ...........................11

    b. A Rule 30(b)(6) Deposition Is Unduly Burdensome ....................................15

CONCLUSION ....................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972) ..............................................8

*Apsley v. Boeing Co.*, No. 05-cv-1368, 2007 WL 163201 (D. Kan. Jan.18, 2007) (noting that Rule 26(b)(1) .......................................................................................10

*Dahood v. United States*, 747 F.2d 46 (1st Cir. 1984).......................................................9

*E.E.O.C. v. America International Group, Inc.*, 1994 WL 376052 (S.D.N.Y. 1994) ..................................................................................................................14

*EEOC v. Bloomberg, L.P.*, No. 07-8383, 2010 WL 3260150 (S.D.N.Y. Aug. 4, 2010) ...................................................................................................................8

*EEOC v. Freeman*, No. 09-cv-2573, 2012 WL 66449195 (D. Md. Dec. 19, 2012)..........12

*EEOC v. Freeman*, No. 09-cv-2573, 2012 WL 3536752 (D. Md. Aug. 14, 1012) ............8

*EEOC v. Original Honeybaked Ham Co. of Georgia*, No. 11-2560, 2013 WL 435511 (D. Colo. Feb. 4, 2013) ...................................................................14

*In re Bilzerian*, 258 B.R. 846 (Bank'y M.D. Fla. 2001) (Rule 30(b)(6) ...........................11

*Gomez v. Martin Marietta  Corp.*, 50 F.3d 1511 (10th Cir. 1995) ...................................10

*In re Independent Service Organizations Antitrust Litig.*, 168 F.R.D. 561 (D. Kan. 1996). .....................................................................................................14, 17

*Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374 (W.D. Ky. 2007) ...................13

*Kendall State Bank v. West Point Underwriters, LLC*, 2012 WL 137866 (D. Kan. Jan. 18, 2012)..............................................................................................6

*Lipari v. U.S. Bancorp, N.A.*, No. 07-2146, 2008 WL 4642618 (D. Kan. Oct. 16, 2008) .................................................................................................................15

*Metropolitan Life Insurance Co. v. Muldoon*, 2007 WL 4561142 (D. Kan. 2007)(iii) .................................................................................................................17

*Moss v. Blue Cross*, 241 F.R.D. 683 (D. Kan. 2007)..........................................................8

*Putnam v. United States*, 32 F.3d 911 (5th Cir. 1994).......................................................7

*SEC v. Bank of America*, No. 09-6829, 2009 WL 4797741 (S.D.N.Y. Dec. 8, 2009) ...................................................................................................9

*SEC v. BankAtlantic Bancorp, Inc.*, 285 F.R.D. 661 (S.D. Fla. 2012) ............................10

*S.E.C. v. Buntrock*, 217 F.R.D. 441 (N.D. Ill. 2003) ..................................................11, 13

*SEC v. Culpepper*, 270 F.2d 241 (2d Cir. 1959) ................................................................10

*SEC v. Gulf & Western Industries, Inc.*, 502 F. Supp. 343 (D.D.C. 1980).......................10

*SEC v. Jasper*, No. 07-6122, 2009 WL 1457755 (N.D. Cal. May 26, 2009) ...................13

*SEC v. Kovzan*, 807 F. Supp. 2d 1024 (D. Kan. 2011) ............................................3, 4, 5, 6

*SEC v. Kovzan*, No. 11-2017, 2012 WL 4819011 (D. Kan. Oct. 10, 2012) .......................6

*SEC v. Kovzan*, No. 11-2017, 2013 WL 647300 (D. Kan. Feb. 21, 2013) ....................6, 7

*SEC v. Kovzan*, No. 11-2017, 2013 WL 653611 (D. Kan. Feb. 21, 2013) ......11, 12, 15, 16

*S.E.C. v. Morelli*, 143 F.R.D. 42 (S.D.N.Y. 1992) ...........................................................11

*SEC v. Nacchio*, No. 05-cv-480, 2009 WL 211511 (D. Colo. Jan. 29, 2009) ..................12

*S.E.C. v. Nacchio*, 614 F. Supp. 2d 1164 (D. Colo. 2009)................................................11

*SEC v. Nacchio*, 704 F. Supp. 2d 1099 (D. Colo. 2010).................................................12

*S.E.C. v. Rosenfeld*, No. 97-CIV-1467-RPP, 1997 WL 576021 (S.D.N.Y Sept. 16, 1997) ...............................................................................................11

*S.E.C. v. SBM Investment Certificates, Inc.*, No. 06-0866, 2007 WL 609888 (D. Md. Feb. 23, 2007)...........................................................................................11

*Shelton v. American Motors*, 805 F.2d 1323 (8th Cir. 1986)............................................13

*Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625 (D. Kan. 2000) .......................................13

*United States v. New York Metropolitan Transportation Authority*, No. 04-4237, 2006 WL 708672 (E.D.N.Y. Jan. 12, 2006) ...................................................8

*Wilson v. Lakner*, 228 F.R.D. 524 (D. Md. 2005) ...........................................................14

**DOCKETED CASES**

*SEC v. Snyder*, Case No. 03-4658 (S.D. Tex. Nov. 10, 2004)...........................................11

**OTHER AUTHORITIES**

Securities Exchange Act of 1934, Section 26 [15 U.S.C. § 78z].......................................9

Item 402 of Regulation S-K [17 C.F.R.  § 229.402]..........................................................9

Federal Rule of Civil Procedure 26(a) ........................................................6, 9, 17

Federal Rule of Civil Procedure 30(b)(6) ................................................................. passim

*Disclosure of Management Remuneration,*
    SEC Release Number 5904, 1978 WL 170874 (Feb. 6, 1978)...................................12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,          Civil No. 11-CV-2017
                                                  JWL/KGS

          v.

STEPHEN M. KOVZAN,

                              Defendant.

THE SEC'S REPLY IN SUPPORT OF ITS OBJECTIONS TO
THE MAGISTRATE JUDGE'S ORDER COMPELLING DISCOVERY
OF THE SEC'S TRAVEL POLICIES AND ORDER DENYING THE
SEC'S MOTION TO QUASH KOVZAN'S RULE 30(b)(6) DEPOSITION NOTICE

The Securities and Exchange Commission (the "SEC or "Commission") respectfully

submits this Reply Memorandum of Law in Support of its Objections to Magistrate Judge

Sebelius' February 21, 2012 Order Granting Defendant Steven M. Kovzan's Motion to Compel

and February 21, 2013 Order Denying the Commission's Motion for a Protective Order.

PRELIMINARY STATEMENT

The discovery sought by Defendant Steven M. Kovzan ("Kovzan") relating to the

Commission's travel policies is irrelevant to the issues in this case.  In his Opposition to the

Commission's Objections ("Opp.") [DE No. 183], Kovzan asserts that because the SEC's

"commuting theory" is central to its case, he should be able to develop evidence that NIC CEO

Jeffrey Fraser's travel between his home in Wyoming and his office in Kansas "does not fall

1

within a reasonable understanding of the term 'commuting.'" But as Kovzan's arguments make clear, there is no material disagreement between the parties as to the definition of "commuting" – the fundamental disagreement is whether, on the facts of this case, Fraser's travel between his NIC-financed ski lodge where he lived in Wyoming (with a purported "home office") and his actual office at NIC's Olathe, Kansas headquarters was, in fact, Fraser's ordinary travel to work, and consequently a personal benefit that was required to be disclosed to NIC investors. The discovery propounded upon the Commission is entirely irrelevant to that inquiry, imposes an unreasonable burden upon the Commission, and is contrary to law.

The Rule 30(b)(6) deposition of the Commission that Kovzan seeks is an improper vehicle under the Federal Rules of Civil Procedure to obtain the type of discovery he desires. Many of the topics detailed in the notice make clear that Kovzan wants a deposition of opposing counsel without an adequate showing of need, which would be unduly burdensome, and which would uncover privileged information. Because this burdensome foray into the SEC's attorney work product – a tactic broadly rejected by other courts – should not be allowed, the SEC submits that the order of the Magistrate Judge permitting the Rule 30(b)(6) deposition should be set aside.

I.    **The Order Compelling Travel Discovery Is Clearly Erroneous**

    **a.  Factual Background**

Kovzan, the Chief Financial Officer of NIC, is alleged to have participated in a fraudulent scheme by preparing, reviewing and signing multiple NIC public filings relating to fiscal years 2002 to 2006 that concealed the payment of more than $1.1 million in perquisites to Fraser, the then-Chief Executive Officer of NIC and Chairman of its Board of Directors. (*See* Amended Complaint, ¶¶ 1, 18) As relevant to the present motion, Kovzan concealed the costs associated

with Fraser commuting by private and commercial aircraft from his home in Wyoming, which he maintained for certain years in a ski lodge paid for by NIC, to his office at NIC's headquarters in Kansas.  (Amended Complaint, ¶¶ 1, 2, 3, 14, 18, 20).

Kovzan disputes that Fraser's travel was "commuting."  Opp. at 2.  But his cavil does not center on the meaning of the word "commuting," but instead on the facts associated with Fraser's conduct.  As Kovzan notes, the Commission takes the position that in the context of Fraser's personal benefit arising from NIC's payment of his "commuting" expenses, "commuting" is ordinarily understood to mean "travel back and forth between two points, especially between home and work repeated a certain number of times within a given interval."  Opp. at 4.  This definition is functionally indistinguishable from Kovzan's own definition of "commuting" – as this Court has noted, "[d]efendant argues that in the absence of any definition by the SEC, 'commuting' should mean regular and frequent travel between the person's home and workplace."  *SEC v. Kovzan*, 807 F.Supp.2d 1024, 1037 (D. Kan. 2011).

Kovzan's present view that Fraser's travel from Wyoming to Kansas was somehow different than "commuting" is not based on any disagreement regarding this definition, but instead upon a distorted view of the evidentiary record in this case.  Kovzan now asserts that Fraser's "arrangement to work from a home office away from Kansas was not unusual within NIC."  Opp. at 3.  But while NIC has a number of offices throughout the country, and its employees work at various offices, no employees are reimbursed for their expenses associated with travel to their particular workplace.  As the Court noted in reviewing the evidence submitted by Kovzan himself on his motion to dismiss, Kovzan was expressly told by a member of NIC's Board of Directors that his "knowledge of 'home office' would lead [him] to believe KC is the home office."  *Kovzan*, 807 F.Supp.2d at 1037.  In that same communication, Kovzan lists five

3

categories of uses for Fraser's corporate jet – the fifth category was, in Kovzan's words, "*[c]ommuting* from Jackson [WY] to Kansas City."  [DE 20, Ex. 5] (emphasis supplied). Kovzan stated that all of Fraser's travel is clearly business related "[w]ith the exception of category 5."  *Id*.  Kovzan went on to state that the position that Fraser's commuting from Wyoming to Kansas was "a gray area and we potentially have some exposure there."  *Id*.

Kovzan now claims that NIC did not treat Fraser's travel to Kansas as commuting for tax purposes "based on analysis by employees other than Kovzan."  Opp at 3.  But again, as the documentary evidence previously presented to the Court by Kovzan himself makes clear, the person who supposedly conducted this "analysis" told Kovzan "that he did not have enough information to determine Mr. Fraser's regular place of business," and that the question of Fraser's regular place of business "would be based on an analysis of [Mr. Fraser's] business activity for a year."  *Kovzan*, 807 F.Supp.2d at 1037.  The Commission has cited evidence – in the form of Kovzan's own sworn testimony – that Kovzan *never* required the analysis to be performed, and it was never done. [DE 140, Ex. 13, p. 30].

Based upon his distorted view of the evidence, Kovzan formulates his theory of relevance as follows: "[t]he 'commuting' question in this case is how to apply [the meaning of commuting] where a senior executive is permitted to live and work from a location of his preference, and travels periodically to a distant headquarters where, at times, an office is available for his use." Opp. at 5.  As to that question, Kovzan seeks discovery as to how the SEC considered, "in its own role as an employer, how to treat travel arrangements for its executives that closely resembled Mr. Fraser's travel at NIC."  *Id*.

But the question of "how to treat travel arrangements" is irrelevant to the pertinent issue on "commuting," which is the location of Fraser's "workplace."  The discovery that Kovzan

seeks from the SEC pertains to travel that simply has nothing to do with this question, or any other issue in this litigation.  The Report of Investigation by the Inspector General of the SEC (the "IG Report") that apparently served as the impetus for Kovzan's requests, sets forth in detail the Commission's policy regarding the determination of an employee's place of work.  The IG Report notes that at the SEC, "[t]he official worksite is generally *the location where the employee regularly performs his or her duties*."  [DE 140, Ex. 1, p. 4] (emphasis added).  Even if the employee's work involves recurring travel, his or her worksite may be "determined by the employing agency, *subject to the requirement that the official worksite must be in the locality pay area in which the employee regularly performs work*."  *Id.*  (emphasis added).  The IG Report concluded that there was no impropriety in the SEC's determination of the official worksites of each of the current senior SEC officials that are the focus of Kovzan's discovery – "their official duty station is an SEC regional office and they do work out of that office when they are not in Washington, D.C."  *Id.* at p. 14.

While Kovzan strains to find an analogy between the travel of these senior officials and that of Fraser, the regular work of these senior officials in the SEC's New York office is plainly not analogous to Fraser's purported "work" in his Wyoming ski lodge.  To the extent that Fraser's conduct *is* analogous to conduct described in the IG Report, it is analogous to the Professor briefly employed by the SEC who was in fact the *subject* of the report – an individual not once mentioned in any of Kovzan's discovery requests, nor in his Opposition.  This individual was represented in his employment agreement with the SEC to have a "duty station" in Austin, Texas, despite the fact that the SEC had no office in the city.  *Id.* at 11.  The contract with that individual was to represent that he "will be working out of Huston [sic] (or wherever his home is and will be commuting to DC as officially necessary, even if it is, weekly, monthly,

etc.)" *Id*. at 8.  In fact, the individual was not working out of his home, but in Washington, D.C. *Id*. at 11-13.  Staff who reviewed the arrangement thought the agreement was inappropriate and troubling "as a taxpayer."  *Id*. at 9-10.  The IG Report found the SEC official who approved the contract "ignored his staff's concerns and offered . . .  a contract that was excessive, contrary to [regulatory] guidance and SEC practice."  *Id*. at 11.  The IG Report, following its investigation, found the arrangement "unprecedented" at the SEC.  *Id*. at 14.

### b.  Kovzan's Travel Discovery Is Irrelevant

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b). "As such, the requested information must be both nonprivileged and relevant to be discoverable." *Kendall State Bank v. West Point Underwriters, LLC*, 2012 WL 137866, at *2 (D. Kan. Jan. 18, 2012).  Kovzan has argued, and the Magistrate Judge agreed, that the requested discovery regarding SEC travel policies is potentially relevant to some issue in this litigation.  That conclusion is clearly erroneous and contrary to law.  This Court previously held that third party communications with the SEC could be potentially relevant and discoverable on the question of scienter, but only if it goes to Kovzan's extreme departure from the ordinary standard of care *in the industry*:

> [Kovzan] argues that scienter may include an objective component, *such that the standard of care in the industry is relevant*. . . . The Court agrees with defendant that, under the Tenth Circuit's definition of recklessness to include an extreme departure from the standard of ordinary care, *evidence of the practice within the industry may be relevant to the issue of scienter*. . . . Accordingly, the Court concludes that defendant is entitled to seek evidence *relating to the industry standard*, whether or not such evidence was previously known to him or the public.

*SEC v. Kovzan*, No. 11-2017, 2012 WL 4819011, at *4 (D. Kan. Oct. 10, 2012).

The Magistrate Judge recognized that the SEC is not in the same "industry" as NIC and is not subject to the perquisite disclosure rules.  *SEC v. Kovzan*, No. 11-2017, 2013 WL 647300, at

*2 (D. Kan. Feb. 21, 2013).  In his present Opposition, Kovzan does not disagree.  Opp. at 13.

Not only are the "industries" different, but the travel determinations related to the SEC officials

identified in the IG Report came years *after* Fraser's and Kovzan's conduct.  Kovzan

nevertheless maintains that the Commission's travel determinations are somehow relevant

because they reflect the Commission's own judgments, at least as an employer, of what travel

constitutes "commuting."[1]  Opp. at 14.

But as set forth above, the fundamental disputed issue in this case related to the issue of

"commuting" is *not* the meaning of the word "commute," or whether commuting is a personal

benefit.  Rather, the primary, if not only, disputed issue on the question of commuting is

particular to the facts of this case – where was Fraser's office?  Kovzan asserts that Fraser's

office was his purported "home office" somewhere in his ski chalet in Wyoming.  The

Commission asserts that Fraser's office was his office in NIC's headquarters in Kansas.

Through all the pages of his Opposition, Kovzan fails to explain how the travel activities of the

Director or Deputy Director of the SEC's OCIE have any possibility of shedding light on the

ultimate question of where Fraser's office was.   In compelling this discovery, the Magistrate

Judge was persuaded by Kovzan's argument that "the SEC's similar practices would provide

insight into whether it would be reckless to treat these types of expenses as ordinary business

expenses rather than as personal commuting expenses."  *Kovzan*, 2013 WL 647300, at *2.   But

the distinction between senior officials maintaining offices in the SEC's New York Regional

Office and Fraser purportedly maintaining an "office" in the Wyoming ski chalet where he lives

---

[1]       Kovzan ignores the fact that the SEC's purported judgments as to employee travel expenses are not
"judgments" at all, but instead its application of specific provisions of the Federal Travel Regulation, a provision
inapplicable to NIC, and which may or may not be consistent with the treatment of travel expenses under the federal
tax laws.  *Cf. Putnam v. United States*, 32 F.3d 911, 919-20 (5th Cir. 1994) (provision requiring reimbursement of
federal judge's travel expenses from home to courthouse did *not* transform otherwise personal commuting expenses
into deductible "business travel," and reimbursements were required to be reported as taxable income).

stretches the phrase "similar practices" beyond its breaking point.[2]  *See United States v. New York Metropolitan Transportation Authority*, No. 04-4237, 2006 WL 708672, at *2-3 (E.D.N.Y. Jan. 12, 2006) (denying discovery as to the government's religious accommodations offered to employees as irrelevant where defendant "fails to point to any factual similarities in the circumstances of employment between it and any federal agency."); *Moss v. Blue Cross*, 241 F.R.D. 683, 691-91 (D. Kan. 2007) (declining to compel discovery regarding other allegations of discrimination, as "other claims of discrimination against a defendant are discoverable only if limited to the same form of discrimination").

Kovzan additionally asserts that the Commission's treatment of employee travel expenses is "especially probative" because the SEC is supposedly "the very agency purporting to police the disclosure of 'commuting' compensation."  Opp. at 10.  But the SEC is not the commuting police.  The Commission's mission is the protection of public investors through enforcement of the federal securities laws, which "embrace a fundamental purpose to substitute a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry."  *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 151 (1972) (quotation omitted).   Unlike the cases cited by Kovzan – *EEOC v. Bloomberg, L.P.*, No. 07-8383, 2010 WL 3260150 (S.D.N.Y. Aug. 4, 2010) and *EEOC v. Freeman*, No. 09-2573, 2012 WL 3536752 (D. Md. Aug. 14, 1012) – employment discrimination cases where courts found the government agency's employment practices relevant given the agency's particular status as "the agency fighting unfair hiring practices," *id.* at *2, the SEC is not charged with

---

[2]       While the Magistrate Judge suggested that the distinctions observed by the Commission were "contested factual issues," the facts that the SEC's regional office in New York is housed in a multi-story office building in New York while Fraser's purported "home office" was housed in a leased residential condominium adjacent to a ski resort in Jackson Hole, Wyoming, are undisputed.

8

promulgating a definition of "commuting," "business travel" or any other previously unambiguous term that becomes "vague" in litigation.

Rather, in order to promote the "philosophy of full disclosure" embodied in the federal securities laws, and in order to expose potential conflicts of interest at public companies, the Commission requires issuers to disclose, among other things, all compensation provided to the principal executive officer, including perquisites (compensation that is not in the form of salary or a bonus).  17 C.F.R. § 229.402.  Perquisite, or "personal benefit" compensation can come in an unlimited variety of forms.  The Commission is not required to imagine, and then define, every method by which a company may provide a senior executive a personal benefit.  The Commission's assertion in this case that Kovzan concealed perquisite compensation by hiding Fraser's commuting benefit stems *not* from any claimed special expertise in "commuting," but because "commuting" is commonly understood to be a personal benefit.  "This rule is based on the assumption that people will choose to live near their place of employment.  If they choose to live far from the workplace, the resulting travel costs are considered to be incidental to a personal choice, rather than a business necessity."  *Dahood v. United States,* 747 F.2d 46, 47 (1st Cir. 1984).

It is not uncommon for defendants who violate the federal securities laws to attempt to defend their own misconduct by asserting that the Commission somehow misled them, provided inadequate guidance, or took positions suggesting defendant's conduct was proper.  But Congress not only anticipated such arguments, it *foreclosed* them by statute – Section 26(a) of the Exchange Act of 1934 provides that "[n]o action or failure to act by the Commission . . . shall be construed to mean that the particular authority has in any way passed upon the merits of, or given approval to, any security or any transaction or transactions therein. . . ."  15 U.S.C. § 78z.

Judge Rakoff of the Southern District of New York relied upon this provision to deny a similar motion to compel production of documents "regarding the SEC's internal review" of filings at issue, as well as its internal "policies and practices" related to the case, finding the materials irrelevant and not reasonably calculated to lead to admissible evidence.  *SEC v. Bank of America*, No. 09-6829, 2009 WL 4797741, at *1 (S.D.N.Y. Dec. 8, 2009).  *Accord, e.g., SEC v. BankAtlantic Bancorp, Inc.*, 285 F.R.D. 661, 668 (S.D. Fla. 2012) (denying motion to compel internal SEC policies because "the SEC's internal policies . . .  in and of themselves, are not relevant to the issue of scienter").  Consistent with these authorities, courts have long recognized that the assertion that "the SEC approved, ratified, or participated in the promulgation of the accounting principles whose application is challenged in certain allegations of the complaint" – Kovzan's theory of relevance for the travel materials here – is simply not a permissible defense in an SEC enforcement action.  *SEC v. Gulf & Western Industries, Inc*., 502 F.Supp. 343, 348 (D.D.C. 1980); *accord, e.g., SEC v. Culpepper*, 270 F.2d 241, 248 (2d Cir. 1959).

The authorities discussed in the Commission's Objections make clear that the irrelevant discovery sought by Kovzan is not permissible.  And the irrelevant nature of Kovzan's requested discovery should be balanced against the burden it would impose on the SEC – the SEC would be required to conduct mini-investigations as to the various travel reimbursements made to individuals who have absolutely nothing to do with this case [e.g., Doc. Req. No. 20], research the existence of "complaints" regarding travel expenses with no apparent temporal limitation [Doc. Req. No. 23], and conduct additional investigations into the practices and procedures for reimbursing employees for travel expenses between their primary residences and any SEC office outside of the metropolitan area of their primary residences.  [Doc. Req. No. 22].  And in the end, the parties will be no closer to resolving their dispute as to where Fraser's office was.  The

relevance standard of Rule 26 allows courts to control "the breadth of sweeping or contentious discovery." *Apsley v. Boeing Co.,* No. 05-cv-1368, 2007 WL 163201, *2, n.8 (D. Kan. Jan.18, 2007) (noting that Rule 26(b)(1) was narrowed to "enable the court to keep tighter rein on the extent of discovery") (citations and quotations omitted); *see also Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) ("Broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant."). The Court should invoke its power to limit the irrelevant discovery sought here.

## II.   The Order Denying The SEC's Motion To Quash Kovzan's Rule 30(b)(6) Deposition Notice Is Clearly Erroneous

### a.   The Rule 30(b)(6) Notice Seeks the Deposition of Opposing Counsel

In support of its motion to quash Kovzan's Rule 30(b)(6) deposition notice of the Commission, the Commission cited to an extended list of SEC cases holding that in law enforcement actions resulting from attorney-directed investigations, a Rule 30(b)(6) deposition is the functional equivalent of a deposition of opposing counsel. *S.E.C. v. Buntrock*, 217 F.R.D. 441, 444 (N.D. Ill. 2003).  *See also S.E.C. v. Nacchio*, 614 F. Supp. 2d 1164, 1178 (D. Colo. 2009); *S.E.C. v. SBM Inv. Certificates, Inc.*, No. 06-0866, 2007 WL 609888, *23-27 (D. Md. Feb. 23, 2007); *SEC v. Snyder*, Case No. 03-4658, slip op. (S.D. Tex. Nov. 10, 2004) (granting the SEC's motion for a protective order and noting that "to depose anyone who might have knowledge of the facts is to depose the SEC's attorneys"); *S.E.C. v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992); *In re Bilzerian*, 258 B.R. 846, 848 (Bank'y M.D. Fla. 2001) (Rule 30(b)(6) deposition of law enforcement agency "would require counsel to appear and be deposed"); *S.E.C. v. Rosenfeld*, No. 97-CIV-1467-RPP, 1997 WL 576021, at *2 (S.D.N.Y Sept. 16, 1997). The Magistrate Judge nevertheless concluded that "Mr. Kovzan is not seeking to take the deposition of opposing counsel" and declined to determine whether Kovzan had met the

heightened showing required for such depositions.  *SEC v. Kovzan*, No. 11-2017, 2013 WL 653611, at *1 (D. Kan. Feb. 21, 2013).

Furthermore, the Rule 30(b)(6) topics that ask the Commission to explain, analyze and chronicle its regulatory history in perquisite disclosure inarguably call for the disclosure of privileged information.  While the Magistrate Judge acknowledged that "certain questions could conceivably call for information protected by the deliberative process privilege," *id.* at *3, the Commission, in response to Kovzan's prior discovery requests, has already identified the pertinent regulations.  Kovzan illustrates in his Opposition his familiarity with those regulations.[3] Opp. at 24-25.  Any further inquiry would *require* the disclosure of privileged information.

Even in one of the few cases permitting a Rule 30(b)(6) deposition of the government in a law enforcement action, the Court later sustained objections to *all* questions regarding internal deliberations associated with the agency's rulemaking function – while "[r]egulations . . .  cannot themselves be the subject of deliberative process privilege," once the pertinent regulations are identified, "the privilege would circumscribe any further questioning Defendant might pursue regarding the [regulation] . . . [as] Plaintiff could not be required to provide any internal information regarding the [agency's] decision-making process during the formulation of the regulations."  *EEOC v. Freeman*, No. 09-cv-2573, 2012 WL 66449195, at *7 (D. Md. Dec. 19, 2012).  *Accord*, *SEC v. Nacchio*, No. 05-cv-480, 2009 WL 211511, at *6-11 (D. Colo. Jan. 29, 2009) (communications regarding internal discussions related to accounting guidance subject to deliberative process privilege); *SEC v. Nacchio*, 704 F. Supp. 2d 1099, 1112 (D. Colo. 2010) (affirming determination that "general communication among SEC staff regarding accounting

---

[3]       Kovzan states that "[i]n 1978 the SEC issued a release stating that the 'unauthorized receipt of benefits by officers' was not covered by Item 402 of Regulation S-K."  Opp. at 24.  But the release says no such thing.  It says that "the anti-fraud provisions may require disclosure of any unauthorized receipt of benefits by officers and directors."  Release No. 5904, 1978 WL 170874, at *1 (Feb. 6, 1978).  This is, of course, an enforcement action alleging violations of the anti-fraud provisions of the federal securities laws.

issues was predecisional" and subject to deliberative process privilege). There is little if any legitimate purpose to a Rule 30(b)(6) deposition as to topics on which the deponent could properly interpose objections as to *every* question.

The only remaining topics demonstrate on their face that Kovzan is attempting to depose SEC counsel and discover the SEC's work product. He seeks discovery of the bases of substantive claims and contentions as drafted by SEC counsel and the judgments of counsel underlying the agency's discovery responses. It is unclear how such questions could be answered without the undersigned counsel submitting to a deposition, which "necessarily involves work product" because Kovzan "is seeking to discover the SEC's theories as to the underlying facts, how it intends to marshal those facts, and its belief as to the inferences that may be drawn from those facts." *SEC v. Buntrock*, 217 F.R.D. at 445-46. *See also SEC v. Jasper*, No. 07-6122, 2009 WL 1457755, at *3 (N.D. Cal. May 26, 2009) (deposition of the SEC concerning communications between the SEC and two individuals interviewed in the investigation would infringe on SEC counsel's work product).

When measuring whether good cause exists for a protective order under Rule 26(c), a party who seeks to take the deposition of opposing counsel "bears the burden to show the propriety of and need for deposing the attorney of his opponent." *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 393 (W.D. Ky. 2007) (*citing Shelton v. American Motors*, 805 F.2d 1323, 1327 (8th Cir. 1986)). The party seeking to depose opposing counsel must meet a heightened standard. In the District of Kansas, a party must show "that (1) no other means exist to obtain the information . . . ; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625, 630 (D. Kan. 2000) (*quoting Shelton*, 805 F.2d at 1327). Kovzan cannot meet the

heightened standard because other discovery methods exist that would permit him to obtain the discovery he seeks, much of the information is privileged on its face, and he cannot demonstrate that the deposition is crucial to his case.

And courts in this Circuit regard inquiries as to the factual basis of the allegations of a Complaint an improper use of a Rule 30(b)(6) deposition as a general matter. One court recently explained that "I do not believe the type of topics identified by the Defendants . . . which seek a witness to talk about all the information supporting paragraphs in the Complaint or supporting [plaintiff's] generalized allegations . . . are appropriate for a Rule 30(b)(6) deposition." *EEOC v. Original Honeybaked Ham Co. of Georgia*, No. 11-2560, 2013 WL 435511, at *1 (D. Colo. Feb. 4, 2013), *citing In re Independent Service Organizations Antitrust Litigation*, 168 F.R.D. 651, 654 (D. Kan. 1996). The pursuit of such topics in a Rule 30(b)(6) deposition "will accomplish nothing on top of what can be obtained using all of the other discovery tools Defendant has at its disposal, other than to allow Defendant to create an opportunity to argue that, because the Rule 30(b)(6) witness only discussed certain information, Plaintiff is barred from bringing any other information to the fore either at the dispositive motion phase or at trial. *I do not believe this is a proper use of Rule 30(b)(6)*." *Original Honeybaked*, 2013 WL 435511, at *1 (emphasis added).

It would be manifestly unfair to bind the Commission to responses that cannot be researched, studied and addressed beforehand as a result of the breadth of Kovzan's requests, which include the bases for the allegations in the Complaint concerning the undisclosed perquisites received by Fraser between 2002 and 2006. After all, "Rule 30(b)(6) is not designed to be a memory contest," where designated representatives must attempt to recall the contents of thousands of documents and the statements of scores of witnesses. *E.E.O.C. v. Am. Int'l Group,*

*Inc.*, 1994 WL 376052, at *3 (S.D.N.Y. 1994); *see Wilson v. Lakner,* 228 F.R.D. 524, 529 n. 8 (D. Md. 2005) ("Whereas the facts of a relevant incident or incidents are proper for 30(b)(6) inquiry, the contentions, i.e. theories and legal positions, of an organizational party may be more suitably explored by way of interrogatories and the Court may properly order . . . that contentions only be inquired into in this fashion.").

### b. A Rule 30(b)(6) Deposition Is Unduly Burdensome

The Magistrate Judge concluded that "the SEC has failed to come forward with a specific demonstration of fact that would justify the entry of a protective order" asserting that in discussing inefficiency and undue burden "the SEC does not state which deposition topics it believes are impermissibly broad." *Kovzan*, 2013 WL 653611, at *3. But the Commission *did* set forth such overly broad inquiries in its motion. The Commission noted that Kovzan seeks a deposition on more than two dozen topics, including the meaning of a phrase contained in regulatory guidance promulgated in 1978 [matter 4]; *each communication* going back to the early 1980's on the subject of perquisites [matters 5, 8, 10]; the "purpose, nature and meaning" of more than three decades of guidance on the subject of perquisite disclosure [matters 3, 6]; the policies, practices and procedures for perquisite inquiries since 1977 [matter 9]; and the scope of the Commission's review of various filings made a decade ago [matter 16]. [DE 144, p. 17]. Kovzan has come nowhere near designating with "painstaking specificity" the subject areas to be questioned. *Lipari v. U.S. Bancorp, N.A.*, No. 07-2146, 2008 WL 4642618, at *5-6 (D. Kan. Oct. 16, 2008) ("courts have not hesitated to issue protective orders when corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) deposition notices"). The extraordinarily broad and encompassing nature of these requests makes it *impossible* to prepare any witness or

witnesses to meaningfully respond, much less be prepared with the depth of knowledge necessary to meaningfully respond to follow-up questions.

Further, as noted by the Magistrate Judge, the Commission submitted a declaration attesting to the fact that "the deponent would have to review voluminous record evidence, totaling 'tens of thousands of pages' and 'thousands of pages of investigative and deposition testimony as well as interpretive regulatory history[.]'" *Kovzan*, 2013 WL 653611, at *3. The Magistrate Judge dismissed the SEC's concerns with regard to the "deposition topics pertaining to this case," as those topics are "are arguably more narrow" because "the basis for certain allegations and theories of the case and information about the SEC's actions in discovery [should not] require this level of preparation." *Id*. But Topic 21 of Kovzan's Rule 30(b)(6) Notice, for example, calls for an articulation of why *each one* of the tens of thousands of various expenditures contended in this action by the Commission to be a perquisite is, in fact, a perquisite. And Kovzan expects the deponent to be able to articulate why Kovzan was reckless in not knowing that each expense was a perquisite. Such an exercise would require a deponent to be intimately familiar with the record in this case – which consists of tens of thousands of documents. Unless counsel were the deponent, educating an individual as to this material is an enormous undertaking.

While the Magistrate Judge faults the Commission for not being more specific regarding "the precise number of documents the deponent would need to review" in order to respond to Kovzan's inquiries about the Commission's regulatory guidance, the Commission does not know "the precise number of documents" one would need to review to become familiar with, for instance, *each communication* going back to the early 1980's on the subject of perquisites. [Topics No. 5, 8, 10].

As Judge O'Connor held in *Independent Service Organizations*,

> [a]lthough we have no quarrel with [plaintiff's] contention that it has a right to discover the facts upon which [defendant] will rely for its defense and counterclaims, [plaintiff]'s attempt to discover those facts through a Rule 30(b)(6) deposition is overbroad, inefficient, and unreasonable.  It also implicates serious privilege concerns. . . .  Even under the present-day liberal discovery rules, [defendant] is not required to have counsel "marshal all of its factual proof" and prepare a witness to be able to testify on a given defense or counterclaim.

*In re Independent Service Organizations Antitrust Litig.*, 168 F.R.D. at 654.  Judge O'Connor recognized that the use of a Rule 30(b)(6) deposition to probe an opposing party's contentions would be highly inefficient and burdensome:

> [T]o provide the information defendants seek would in effect require the Government to marshal all of its factual proof and then provide it to [the 30(b)(6) designate] so that she could respond to what are essentially a form of contention interrogatories.  Aside from any issues of privilege, this would be highly inefficient and burdensome, rather than the most direct manner of securing relevant information.

*Id.* (citation and quotation omitted).

The Court should not allow discovery where "the burden or expense . . . outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C)(iii).  *See Metro. Life Ins. Co. v. Muldoon*, 2007 WL 4561142, at *5 (D. Kan. 2007) (applying the restrictions of Rule 26(b)(2)(C)(iii) to Rule 30(b)(6) depositions).  The Magistrate Judge's decision undermines this principle, is clearly erroneous on the facts presented, and is contrary to law.

## <u>CONCLUSION</u>

For the reasons stated, the SEC respectfully requests that the Court set aside the Magistrate Judge's Orders of February 21, 2013, deny Kovzan's motion to compel the SEC to provide written discovery of its travel policies and practices, and quash the Rule 30(b)(6) Notice served on the SEC by Kovzan.

Dated:  March 21, 2013                     Respectfully submitted,


                                           _/s/ Jeffrey S. Kruske_____
                                            Jeffrey S. Kruske (Kansas Bar No. 20098)
                                           Office of the Securities Commissioner
                                           109 SW 9th Street, Suite 600
                                           Topeka, KS  66612
                                           Telephone: (785) 296-5215

                                           A. David Williams (Cal. Bar 183854)
                                           David Mendel (D.C. Bar No. 470796)
                                           Daniel J. Maher (Mass. Bar 654711)
                                           Securities and Exchange Commission
                                           100 F Street, NE
                                           Washington, DC 20549-5546
                                           Phone: (202) 551-4548

                                           *Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION**


**<u>CERTIFICATE OF SERVICE</u>**


I hereby certify that on March 21, 2013, the foregoing REPLY IN SUPPORT OF THE SEC'S

OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER COMPELLING DISCOVERY OF THE

SEC'S TRAVEL POLICIES AND ORDER DENYING THE SEC'S MOTION TO QUASH

KOVZAN'S RULE 30(b)(6) DEPOSITION NOTICE, and supporting papers, were filed with the Clerk

of Court via the CM/ECF system, causing them to be served on Defendant's counsel of record.


 _/s/ Jeffrey S. Kruske_____
 Jeffrey S. Kruske (Kansas Bar No. 20098)
Office of the Securities Commissioner
109 SW 9th Street, Suite 600
Topeka, KS  66612
Telephone: (785) 296-5215