IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SECURITIES AND EXCHANGE          )
COMMISSION,                      )
                                 )
              Plaintiff,          )
                                 )
       v.                        )          Case No. 11-2017-JWL
                                 )
STEPHEN M. KOVZAN,               )
                                 )
              Defendant.          )
                                 )
_____)

## MEMORANDUM AND ORDER

In this case, the Securities Exchange Commission ("SEC") has brought various

claims against defendant Stephen M. Kovzan under the federal Securities Act of 1933

("Securities Act"), 15 U.S.C. § 77a *et seq.*, and the federal Securities Exchange Act of

1934 ("Exchange Act"), 15 U.S.C. § 78a *et seq.*  The matter is presently before the Court

on plaintiff's motion for partial summary judgment (Doc. # 217) and defendant's motion

for summary judgment (Doc. # 224).  As more fully set forth below, both motions are

**granted in part and denied in part**.  Plaintiff's motion is granted with respect to

defendant's vagueness defense, and the motion is otherwise denied.  Defendant's motion

is granted to the extent that certain of plaintiff's claims are time-barred, and the motion

is otherwise denied.

## I.    Background

Beginning in 2000, defendant served as Vice President of Financial Operations and as Chief Accounting Officer ("CAO") at NIC Inc. ("NIC"), a company located in Olathe, Kansas. In August 2007, defendant became NIC's Chief Financial Officer ("CFO"). Jeffery Fraser, one of NIC's founders, served as NIC's Chief Executive Officer ("CEO") and Chairman of the Board of Directors from May 2002 until 2008.

In this civil enforcement action, plaintiff brings claims against defendant under the Securities Act and the Exchange Act, seeking civil money penalties, an injunction against further violations, a prohibition against defendant's acting as an officer or director of a publicly-traded company, and disgorgement of any ill-gotten gains. Plaintiff's claims are centered on its allegations that from 2002 to 2005 Mr. Fraser received over $1,000,000 in perquisites that were not reported by NIC as his income, including (a) the costs for Mr. Fraser to commute by private aircraft from his home in Wyoming to NIC's headquarters in Kansas, and (b) reimbursements for other personal expenses, including for homes, vacations, cars, electronics, and other items. Plaintiff alleges that defendant was involved with the preparation and signing of public filings with the SEC from 2002 to 2006 that were materially false and misleading because they failed to disclose Mr. Fraser's perquisites as income. Plaintiff also alleges that defendant was involved in misrepresentations in letters by NIC to its auditors, and it alleges violations of internal-controls and books-and-records provisions of the Exchange Act.

## II.    Standards Governing a Motion for Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient

evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).


### III.   Statute of Limitations

Both parties have moved for summary judgment with respect to defendant's assertion of the statute of limitations as a defense. 28 U.S.C. § 2462 imposes a five-year limitations period for an action for the enforcement of "any civil fine, penalty, or forfeiture, pecuniary or otherwise." *See id.* This suit was filed on January 12, 2011; accordingly, defendant seeks summary judgment on plaintiff's claim for a civil penalty based on conduct prior to January 12, 2006. In particular, defendant seeks summary judgment on plaintiff's claims based on alleged misrepresentations or omissions occurring prior to that date.

In opposing defendant's motion to dismiss, plaintiff relied on application of the discovery rule. The Supreme Court, however, has since ruled that the discovery rule does not apply to Section 2462's limitations period, and that a claim based on fraud accrues for purposes of that statute from the date of the fraud's occurrence. *See Gabelli*

4

*v. SEC*, 133 S. Ct. 1216, 1220-24 (2013). Plaintiff also relied on the doctrine of fraudulent concealment, but it has since abandoned that theory and has not relied on it in its summary judgment briefs.

Plaintiff does continue to rely on the continuing violation doctrine. Under that doctrine, if the alleged unlawful practice continues into the limitations period, the complaint is timely if filed within the required limitations period measured from the end of that practice. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982). Defendant argues, however, that the continuing violation doctrine should not apply in this case. Defendant relies on *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), in which the Supreme Court explained that the continuing violation doctrine does not apply to make timely claims based on discretely actionable acts occurring outside the limitations period, even if those acts are related to or part of a series with acts committed within the limitations period. *See id.* at 113-15. Defendant argues that each alleged misrepresentation or omission was a discrete and separately actionable act, and thus is not subject to the continuing violation doctrine.

Plaintiff first argues that the Court has already recognized that the continuing violation doctrine applies in this case. In ruling on defendant's motion to dismiss, however, the Court merely rejected defendant's argument that the doctrine should not apply in an SEC enforcement action generally, and it ruled that the doctrine could not be rejected at that stage as a matter of law. *See SEC v. Kovzan*, 807 F. Supp. 2d 1024, 1035-36 (D. Kan. 2011). The Court has not yet addressed defendant's present argument

that the doctrine cannot apply under *Morgan*.

The Court also rejects plaintiff's argument that proof of the element of scienter evolved over time here, as defendant allegedly learned additional facts relating to Mr. Fraser's expenses. Plaintiff has not shown, however, that changes in a defendant's level of scienter may satisfy the requirements of the continuing violation doctrine. With respect to any violation, plaintiff is required to prove that the requisite scienter existed at that time.

Plaintiff also suggests that conduct outside the limitations period may become actionable within the limitations period pursuant to a duty to correct previous misrepresentations and omissions. Plaintiff has not preserved in the pretrial order, however, any claim based on a violation of any duty to correct.[1]

Plaintiff has not explained why its claims based on particular misrepresentations and omissions occurring prior to 2006 would not be discretely actionable and thus outside the doctrine pursuant to *Morgan*. Plaintiff does note that it has brought claims pursuant to Rule 10b-5(a) and (c) based on the existence of a scheme to defraud, and it argues that a single misrepresentation may be part of a larger scheme to defraud. Defendant's only rejoinder is that plaintiff has not cited similar cases discussing the

---

[1]Plaintiff notes that pre-2006 conduct could also be actionable in effect based on later representations that information in previous public filings was correct. That issue does not bear on defendant's limitations defense, however; obviously, the substance of any representations made within the limitations period would be properly at issue in the case regardless of whether the statute of limitations barred claims based on earlier representations and filings.

continuing violation doctrine in the civil context. The Court is not persuaded at this juncture, however, that the doctrine may not apply to an ongoing scheme that goes beyond single misrepresentations.

Accordingly, the Court concludes that plaintiff's claim for a civil penalty based on particular misrepresentations and omissions occurring prior to January 12, 2006, are time-barred, and defendant is awarded summary judgment on any such claim. The Court cannot rule at this time that plaintiff's "scheme" claims pursuant to Rule 10b-5(a) and (c) are time-barred, and both parties' motions are denied to that extent.

The parties have not specifically addressed this issue in the context of plaintiff's other claims not based on public filings. In ruling on defendant's motion to dismiss, the Court noted that plaintiff had alleged failures to maintain records and controls. In the absence of argument directed to those claims, the Court will not award summary judgment to either party on those claims on the basis of the statute of limitations. Plaintiff's claims based on misrepresentations to auditors, however, would seem to fall within *Morgan*'s discrete-claim analysis. Accordingly, defendant is also awarded summary judgment on those claims to the extent based on letters to the auditors prior to January 12, 2006. Plaintiff's motion for summary judgment on this defense is denied.

Finally, the parties agree that whether plaintiff's claims for other forms of relief (officer-director bar, disgorgement, injunctive relief) are subject to the statute of limitations depends on whether any such relief is punitive. *See, e.g.*, *United States v. Telluride Co.*, 146 F.3d 1241, 1244-48 (10th Cir. 1998). Accordingly, the Court will not

rule on any limitations defense until it decides to grant any such relief, and both parties'

motions are therefore denied to that extent.

## IV.   Fraud Claims

Plaintiff alleges that defendant violated Section 10(b) of the Exchange Act, 15

U.S.C. § 78j(b); Rule 10b-5, 17 C.F.R. § 240.10b-5; and Section 17(a) of the Securities

Act, 15 U.S.C. § 77g(a).  These claims are based on plaintiff's allegations that defendant

committed fraud by failing to disclose perquisites received by Mr. Fraser, NIC's CEO,

and thus by under-reporting Mr. Fraser's income in filings with the SEC.  *See* 17 C.F.R.

§ 229.402 ("Item 402") (requiring disclosure of CEO compensation, including

"perquisites and other personal benefits").  Defendant has moved for summary judgment

on these claims.

### A.   *Commuting Expenses*

In part, plaintiff bases its fraud allegations on defendant's failure to disclose as

compensation NIC's payments for Mr. Fraser's "commuting" expenses to travel between

his Wyoming home and NIC's Kansas headquarters.  The SEC stated in 1978 that the

use of a company plane for "commuting purposes" is a form of remuneration requiring

disclosure.  *See* SEC Release No. 5904, 1978 WL 170874, at *5 (Feb. 6, 1978) ("1978

Guidance"); *see also* SEC Release No. 8732A, 2006 WL 2589711, at *33 (Sept. 8, 2006)

("2006 Guidance") (company's provision of helicopter service for an executive to

commute to work from home constitutes a perquisite that must be disclosed as income).

8

The SEC, however, did not define "commuting" in its guidance to companies. Thus, the Court first considers the meaning of "commuting" in this context.

The parties have not identified any caselaw defining "commuting" in this context. In *United States v. Tauferner*, 407 F.2d 243 (10th Cir. 1969), the Tenth Circuit considered the issue of "commuting" as distinguished from "ordinary business expense", but it was in the income tax context, and the court did not define "commuting" other than to reject a party's attempt to distinguish his travel from that of the "ordinary suburban commuter." Thus, *Tauferner* is not particularly helpful.

The Court will therefore apply the ordinary definition of the term "commuting", which requires travel between work and home with some degree of frequency or regularity. *See, e.g.*, *Webster's Third New International Dictionary* at 461 (1993) (defining "commute" to include "travel back and forth regularly or frequently" and including as an example the usage "commuting between London and New York"). The parties here argue about the degree to which Mr. Fraser's job, including oversight of the company, required his personal attendance in Kansas, and the amount of substantial work he actually performed at his home in Wyoming, *vis-a-vis* his work while traveling or in Kansas. Certainly, such factors would be relevant in considering how regular or frequent Mr. Fraser's trips to Kansas were.

The Court further concludes that the term "commuting" should also be interpreted in this context as relating to the SEC's more general rule from 1978 that benefits constitute remuneration unless "directly related" to the performance of the job. *See* 1978

Guidance at *4; *see also* 2006 Guidance at *32 ("An item is not a perquisite or personal benefit if it is integrally and directly related to the performance of the executive's duties."). Thus, the factual determination whether particular travel constitutes "commuting" could include consideration of the extent to which an executive's choice of residence is related to his job, and thus the extent to which the executive's choice of residence is a matter of mere personal convenience or desire. For instance, a jury might conclude that an executive's regular or frequent travel to his company's headquarters constituted commuting if his residence—even one with a home office at which he performed some work—was chosen far from the headquarters purely for personal reasons unrelated to the job. Thus, an executive who chooses to live abroad, for example, purely for personal reasons, who must regularly visit the headquarters in the United States should not be able to avoid making his travel expenses a perquisite merely by performing some work at home that could be performed anywhere. In the Court's view, such travel expenses would be incurred strictly because of the personal choice of the executive and thus are not directly related to the job performance. At the same time, however, if the executive's job may be performed elsewhere and his travel to the headquarters is not frequent or regular, such travel could not be said to be "commuting" in the ordinary sense of that word. The extent to which the trips to headquarters are required for specific purposes or constitute a significant part of the executive's job responsibilities would also be relevant to the inquiry.

Given that framework, the Court concludes that a question of fact remains,

precluding summary judgment, concerning whether Mr. Fraser incurred "commuting" expenses in traveling between Wyoming and Kansas. Plaintiff's evidence includes evidence of the following: Mr. Fraser's home office in Wyoming was located in a condominium at a ski lodge, which the lease indicated would be used for residential purposes; NIC did not perform work in that particular locality in Wyoming; Mr. Fraser traveled to Kansas a substantial number of times throughout the period from 2002 to 2006; Mr. Fraser had an office at the headquarters in Kansas, and on occasion he identified his business address as being in Kansas; in 2006, Mr. Fraser testified that his regular schedule at that time was to come to Kansas from Sunday to Wednesday in two weeks of each month; NIC represented in public filings that Mr. Fraser's travels to Kansas were such that it was more economical for the company to pay for a home in Kansas for him that to pay for hotel rooms; and Mr. Fraser's work included general oversight of NIC. A jury could reasonably conclude from such evidence that the travel constituted "commuting".

The Court also rejects defendant's argument that he did not act with sufficient scienter as a matter of law, as his state of mind presents a question of fact for the jury. Certainly, a jury could reasonably infer that defendant was sufficiently aware of the extent and purposes of Mr. Fraser's travel to Kansas. Moreover, e-mail correspondence reveals that defendant was at least aware of an issue concerning the characterization of these travel expenses. In addition, defendant's responsibility for and relation to these particular disclosures presents a question for the jury. Defendant's motion for summary

judgment is denied with respect to this particular category of expenses.

        *B.*      <u>*Residences*</u>

Defendant also seeks summary judgment on plaintiff's claims based on NIC's payments for Mr. Fraser's residences in Wyoming and Kansas City. The Court concludes that questions of fact remain for trial on these claims, and it therefore denies this portion of defendant's motion.

Mr. Fraser owned the Kansas City residence, and NIC leased that property from Mr. Fraser for a period of time. The parties agree that Mr. Fraser used that residence when he was in the Kansas City area visiting NIC's Kansas headquarters. The question whether this expense was directly related to performance of Mr. Fraser's job is one of fact for the jury. Moreover, the question is linked to the determination whether Mr. Fraser commuted from Wyoming on those occasions, as his housing while commuting would also appear to constitute commuting expenses. In addition, in light of evidence that defendant knew about these house payments, the issue of defendant's state of mind is for the jury.

Defendant similarly seeks summary judgment on claims based on the Wyoming lease payments on the basis of a lack of scienter. The Court rejects this argument for the same reason, that defendant's state of mind presents a question for the jury. Defendant at least knew that NIC was paying for a Wyoming office for Mr. Fraser, and the jury could reasonably determine that defendant was at least reckless in failing to disclose as a perquisite payments for Mr. Fraser's Wyoming residence.

Defendant also argues that the value of the perquisite must be measured by the incremental cost by which the actual cost exceeded the cost related to the performance of Mr. Fraser's job, and that plaintiff has not provided evidence of that incremental cost with respect to these residences. Defendant has not shown, however, that plaintiff must identify that exact figure, as long as it has shown that Mr. Fraser received a perquisite of some kind (assuming that plaintiff can otherwise establish materiality). A jury could reasonably infer that Mr. Fraser received a perquisite here.

C.   *Other Expenses*

The Court also denies defendant's motion for summary judgment on plaintiff's claims based on other expenses paid by NIC that plaintiff alleges constitute undisclosed compensation to Mr. Fraser in the form of perquisites. Defendant argues that plaintiff cannot provide evidence that each specific expense alleged to be a perquisite was not in fact business-related. The Court is not convinced, however, that such detailed proof is required—plaintiff must merely show that Mr. Fraser received undisclosed perquisites (beyond a certain minimal threshold derived from the regulations), and plaintiff has submitted evidence from which a reasonable jury could so conclude. The most striking such evidence is that NIC in fact required Mr. Fraser to reimburse NIC for more than $280,000 in expenses that could not be supported as business expenses under NIC's policies. Defendant argues that NIC was applying a different standard than the SEC's perquisite standard in requiring that reimbursement, but the fact that NIC at least found such violations of its policies provides evidence from which a jury could conclude that

the expenses at issue were not proper business expenses.  Plaintiff has also provided evidence that employees at NIC, including defendant, were aware of issues regarding Mr. Fraser's expenses and his supporting documentation for those expenses, including the risk that those expenses could not be justified as proper business expenses. Defendant argues that the lack of a proper business purpose should not be presumed from a lack of documentation; however, such a routine lack of documentation—which was required in order to justify business expenses—provides at least some evidence that the expenses were not in fact proper.  The Court further concludes that defendant's state of mind presents a question of fact for the jury.

The Court also rejects defendant's specific arguments relating to the amounts reimbursed to NIC by Mr. Fraser.  Defendant suggests that Mr. Fraser did not ultimately receive such amounts, which therefore cannot be considered compensation to Mr. Fraser. At the time of the particular disclosures, however, repayment of such amounts had not yet been required, and thus any filing omitting them as compensation would be misleading.  Defendant also repeats its previous argument that the reimbursed amounts do not constitute "compensation" to Mr. Fraser for purposes of the disclosure requirement because that money was essentially stolen or looted by Mr. Fraser and thus NIC did not make an affirmative decision to pay Mr. Fraser those amounts to "compensate" him for his work for the company.  In rejecting this argument in defendant's motion to dismiss, the Court stated:

> [I]n the present case, the SEC has alleged facts suggesting that defendant

> had notice of problems with Mr. Fraser's expenses, that Mr. Fraser received reimbursements for personal expenses nonetheless, and that Mr. Fraser was not required to repay all such reimbursements. Those allegations are sufficient to state a claim at this point, and therefore the Court denies defendant's motion to dismiss on this basis.

*See Kovzan*, 807 F. Supp. 2d at 1038. Plaintiff has now presented evidence to support those allegations, and the Court thus concludes that the issue remains one of fact for the jury.

      D.   <u>*Scheme Allegations*</u>

Defendant seeks summary judgment on plaintiff's claims pursuant to Rule 10b-5(a) and (c) and Section 17(a), which require proof of a fraudulent scheme or practice. Defendant argues that plaintiff cannot simply recast his misrepresentation claims under Rule 10b-5(b) as scheme claims and that plaintiff has no evidence of inherently deceptive acts by defendant outside of the misrepresentations themselves.

Plaintiff objects to any requirement of a separate deceptive act for scheme liability. The federal circuit courts that have addressed that issue, however, have imposed such a requirement. *See Public Pension Fund Group v. KV Pharmaceutical Co.*, 679 F.3d 972, 987 (8th Cir. 2012) (following Second and Ninth Circuits, which "traditionally see the most securities cases," in holding that "a scheme liability claim must be based on conduct beyond misrepresentations or omissions actionable under Rule 10b-5(b)"); *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005). Plaintiff argues that such a rule should not apply in the context of an SEC enforcement

action, which lacks any private-action concern about circumventing the reliance requirement and creating aiding-and-abetting liability. Those circuit courts did not rely on such rationales for their rulings, however. This Court is persuaded by those circuit courts that the "scheme" and "practice" language in Rule 10b-5 and Section 17(a) contemplate something other than a simple misrepresentation otherwise actionable under Rule 10b-5.

Moreover, plaintiff has not cited any authority contradicting those circuit court rulings. Plaintiff cites *SEC v. Familant*, 910 F. Supp. 2d 83 (D.D.C. 2012). In that case, however, the court merely concluded that the alleged scheme need not necessarily have an aim beyond that of making a misrepresentation in a public filing. *See id.* at 93-97. In fact, the *Familant* court recognized that three circuit courts had held that the alleged scheme must include deceptions beyond the particular misrepresentations and omissions, *see id.* at 93-94, and it noted that the scheme in its case went beyond mere misstatements and omissions and thus satisfied the requirement of those courts. *See id.* at 97.

Nevertheless, the Court concludes that defendant is not entitled to summary judgment on plaintiff's scheme claims on this basis. Plaintiff has provided evidence that defendant allowed personal expenses incurred by Mr. Fraser to be paid by NIC as proper business expenses. Defendant argues that such acts are not inherently deceptive and that defendant was not sufficiently responsible for such payments, but such questions are for the jury at trial. Plaintiff also points to the alleged misrepresentations in defendant's letters to the auditors as additional deceptive acts. Defendant objects to the use of those

misrepresentations, relying on *In re Royal Dutch/Shell Transport*, 2006 WL 2355402 (D.N.J. Aug. 14, 2006). In that case, however, the court cited misrepresentations to auditors in refusing to allow a claim actionable under Rule 10b-5 to be recast as a scheme claim, *see id.* at *9, while in this case, plaintiff has not asserted a claim based on misrepresentations to auditors under Rule 10b-5. At least one other court has allowed misrepresentations to auditors to constitute the necessary additional deceptive act. *See SEC v. Kearns*, 691 F. Supp. 2d 601, 618 (D.N.J. 2010). Accordingly, the Court denies defendant's motion for summary judgment on these claims.[2]

### E. *Aiding and Abetting*

Defendant seeks summary judgment on plaintiff's claims of aiding and abetting a disclosure violation under Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e). The parties first dispute the state of mind that plaintiff must prove to support such claims. Prior to 2010, Section 20(e) imposed liability on any person who "knowingly" provided substantial assistance to another person committing a violation. In 2010, however, the statute was amended to add the words "or recklessly" after "knowingly" in Section 20(e). Defendant argues that the amendment may not be applied retroactively and that recklessness therefore is not sufficient for plaintiff's claims based on conduct prior to 2010. Plaintiff cites legislative history of the amendment, which indicates that Congress

---

[2]The Court will not consider defendant's argument that plaintiff should at least be precluded from asserting a scheme claim based on the commuting expenses, as that argument was raised for the first time in defendant's reply brief.

by that amendment "ma[de] clear" and was "clarifying" that recklessness was sufficient for aiding-and-abetting liability, in light of some courts having held that recklessness was not sufficient. *See* H.R. Conf. Rep. No. 517, 2010 WL 2671804, at **727 (June 29, 2010); H.R. Rep. 111-687(I), 2010 WL 5174458, at *87 (Dec. 16, 2010). Plaintiff also argues that, under Tenth Circuit law, recklessness was sufficient for aiding-and-abetting liability prior to the amendment, and thus that standard would still apply even if the amendment were not retroactively applied.

The legislative history is not entirely clear. As defendant notes, at the time that Section 20(e) was originally enacted in 1995, the Senate rejected an amendment that would have added recklessness to the statute's standard. *See SEC v. KPMG, LLP*, 412 F. Supp. 2d 349, 383 (S.D.N.Y. 2006) (citing legislative history). On the other hand, the 2010 legislative history indicates that Congress was merely "clarifying" the standard by expressly adding recklessness, and the Tenth Circuit has stated that the use of "clarification" indicates an intent that an amendment apply retrospectively. *See Dobbs v. Anthem Blue Cross and Blue Shield*, 600 F.3d 1275, 1282 (10th Cir. 2010). In light of that statement from the Tenth Circuit in *Dobbs*, plaintiff's argument is not mere "makeweight", as defendant suggests. In *Dobbs*, however, the court, after determining that Congress had prescribed a retrospective effect by use of the "clarification" language, proceeded to a second step in the analysis involving whether retrospective application would give the statute retroactive effect. *See id.* at 1283. The parties have not undertaken that additional analysis here.

18

Moreover, the Tenth Circuit's standard prior to the amendment is unclear. One district court within this circuit has noted that, prior to the amendment, the Tenth Circuit appeared to apply a recklessness standard to aiding-and-abetting claims. *See SEC v. Goldstone*, __ F. Supp. 2d __, 2013 WL 3456875, at *129-30 (D.N.M. July 8, 2013). As defendant notes, however, the Tenth Circuit did not specifically address Section 20(e)'s language in those cases.

In light of this uncertainty and the parties' failure to address the *Dobbs* analysis, the Court will not resolve this issue of the proper standard at this time. The parties are instructed to submit further briefing on this issue in connection with their submission of proposed jury instructions.

At any rate, the Court concludes that plaintiff has submitted evidence that, viewed in plaintiff's favor, would satisfy either standard. For instance, plaintiff has submitted evidence that defendant knew about and discussed concerns about Mr. Fraser's expenses, and the jury could reasonably infer knowing assistance by defendant. The Court also concludes that the issue whether defendant provided substantial assistance, as required for an aiding-and-abetting violation, presents a question of fact for the jury. Accordingly, the Court denies defendant's motion for summary judgment on these claims.

F.   <u>Vagueness</u>

Both parties seek summary judgment with respect to defendant's affirmative defense by which he asserts that the SEC's regulations and guidance concerning

perquisites during the period from 2002 to 2006 were impermissibly vague in violation of due process. The Supreme Court recently described the vagueness principle as follows:

> A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required. This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment. It requires the invalidation of laws that are impermissibly vague. A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement. As this Court has explained, a regulation is not vague because it may at times be difficult to prove an incriminating fact but rather because it is unclear as to what fact must be proved.

*See FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012) (citations and internal quotation omitted).

Defendant argues that he was not given fair notice that his conduct was forbidden in various ways. First, defendant argues that there was no notice "[t]hat the SEC viewed irregular travel by a CEO from a home office location to a corporate office for specific purposes, and not for the regular execution of the CEO's primary executive responsibilities, to be reportable as a 'commuting' perquisite." The Court rejects this argument. Defendant concedes that the 1978 Guidance (even though technically rescinded) provided notice that the SEC considered "commuting" expenses to be a perquisite to be disclosed as compensation. Moreover, the 1978 Guidance made clear that expenses must be directly related to job performance to avoid classification as a

perquisite.  The "directly related" standard, together with the ordinary meaning of "commuting", as discussed above, provided fair notice to a person of ordinary intelligence of the conduct prohibited.[3]  Defendant has not provided any authority requiring that his precise factual situation have been anticipated or interpreted by the agency in order to avoid a vagueness challenge.  Defendant's characterization of this issue, as quoted above in this paragraph, improperly assumes certain disputed facts, including whether the travel here was irregular and whether the travel to Kansas was for the regular execution of Mr. Fraser's executive responsibilities.  Defendant has not pointed to any instance in which the SEC offered an interpretation or engaged in enforcement activity that would be considered inconsistent with the Court's interpretation of commuting.  Although defendant argues that plaintiff's attempts to offer a definition of commuting throughout this litigation have not been entirely consistent, any such minimal variances do not undermine the Court's understanding (and that of a reasonably intelligent person) concerning commuting expenses.  The Court concludes that the requirement that commuting expenses be disclosed as perquisites was not impermissibly vague.

Second, defendant argues that there was no notice "[t]hat the costs of corporate housing in Kansas City used for business purposes should be treated as a perquisite."

---

[3]The Court does not agree with defendant that the 2006 Guidance's "integrally and directly related" language materially altered the standard for the disclosure of perquisites.

Again, defendant has misstated the relevant inquiry, as the SEC does not argue that corporate housing used for business purposes must be treated as a perquisite. It was clear that payments for corporate housing, like other paid expenses, were not perquisites only if they were directly related to performance of the executive's job. Whether Mr. Fraser's Kansas City housing was directly related to performance of his job remains an issue of fact for trial; if the jury finds that it was not, defendant cannot complain of a lack of notice that the provision of such housing would constitute a perquisite, in light of the 1978 Guidance. Accordingly, the Court rejects this argument.

Third, defendant argues that he lacked notice that an executive's expenses are presumed to be perquisites if not documented in accordance with company policy. The SEC has not urged such an interpretation, however. Rather, a lack of documentation in violation of a company policy may provide evidence that expenses were not in fact directly related to performance of the job. Defendant certainly had fair notice that the payment of an executive's personal expenses would constitute a perquisite; thus, there is no vagueness problem preventing plaintiff from arguing that Mr. Fraser did receive perquisites by having his personal expenses paid by NIC.

Fourth, defendant argues that he lacked notice that the SEC's incremental-cost valuation method would not apply to the residences in Kansas City and Wyoming. The SEC has not stated that that method does not apply, however. Accordingly, defendant cannot demonstrate a vagueness problem here.

Fifth, defendant argues that there was no notice "[t]hat expenses paid for a CEO

but required to be reimbursed to the company when they were determined to be inconsistent with corporate policy nevertheless had to be treated as compensation in the form of perquisites." The Court rejects this argument as well. There was certainly fair notice that public disclosures concerning compensation must not be false or misleading. The SEC is not asserting that disclosure was required of amounts that an executive did not actually receive because he paid them back (putting aside the question of an effective interest-free loan for a period of time). Rather, the SEC argues that if repayment had not been required at the time of the disclosure, then the reimbursed expenses must be considered perquisites at that time. This is not an arbitrary or controversial position by the SEC, nor does it contradict the statute's requirement of disclosures that are accurate as of that date.

For these reasons, the Court concludes that the applicable statutes and regulations were not impermissibly vague in violation of due process in the manner asserted by defendant. Accordingly, defendant's motion for summary judgment is denied on this issue, and plaintiff is granted summary judgment on defendant's vagueness defense.

### V. **Internal Controls Claims**

Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B), requires public companies to "devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances" that transactions are properly recorded, among other things. Section 13(b)(5), 15 U.S.C. § 78m(b)(5), provides that no person

shall "knowingly circumvent or knowingly fail to implement a system of internal accounting controls . . . described in paragraph (2)." Plaintiff alleges that defendant violated Section 13(b)(5) and aided and abetted NIC's violation of Section 13(b)(2)(B) with respect to NIC's internal controls concerning payment of Mr. Fraser's expenses. Both parties seek summary judgment on these claims.

The parties first discuss whether scienter must be proved for these claims, although it is not clear whether there is an actual dispute here. Plaintiff cites a few cases stating that scienter is not required, but as defendant points out, those cases did not consider the actual language of Section 13(b)(5), which requires that a defendant have acted "knowingly". Plaintiff concedes that the better position is that it must prove knowledge but that it need not show a specific intent to deceive. Defendant decries any attempt to read "knowingly" out of the statute, but he does not specifically argue that plaintiff must show an intent to deceive. Thus, the Court will require a showing that defendant acted "knowingly".

Plaintiff bases its motion for summary judgment on defendant's testimony to investigators that "the internal controls over Mr. Fraser's expense reports were not adequate up until we put new procedures in place;" that he "was aware that the controls over Mr. Fraser's expense reporting were not adequate, and that we fixed that in 2006;" and that "Mr. Fraser's lack of document [*sic*] of business purpose for his expenses" "would have been a deficiency in internal controls." Thus, plaintiff argues that defendant admitted his knowledge of a failure of NIC's "internal controls" with respect

to Mr. Fraser's expense reporting.

The Court cannot agree, however, that this testimony establishes a violation by defendant as a matter of law. First, as defendant points out, these specific admissions are not tied to any particular time frame other than the time in 2006 when NIC implemented new procedures; thus, this testimony does not establish any knowledge by defendant at any prior time. Nor has plaintiff shown that defendant was referring specifically to the type of "internal accounting controls" defined in Section 13(b)(2)(B). Moreover, Section 13(b)(5) requires circumvention or a failure to implement a "system" of internal accounting controls,[4] and plaintiff has not answered defendant's argument that a deficiency in one control does not necessarily mean circumvention or a failure to implement a *system* of controls. Although defendant's testimony may prove relevant, the Court concludes that plaintiff has not established the absence of a question of material fact concerning a knowing violation by defendant, and that these issues, including defendant's state of mind, are better left for the jury. The Court denies plaintiff's motion for summary judgment on these claims.

Similarly, the Court denies defendant's motion for summary judgment on these claims. Defendant argues that plaintiff has not provided evidence of a failure of a *system* of controls, but the Court concludes that the evidence of the failure of the expense

---

[4]The Court does not agree with defendant that plaintiff's claims are doomed by its failure to choose between the "circumvention" and the "failure to implement" prongs of Section 13(b)(5).

reporting controls is sufficient to raise an issue of triable fact. Defendant also argues that NIC did maintain internal controls and that only Mr. Fraser circumvented them. A reasonable jury could find, however, that defendant or NIC circumvented or failed to maintain controls by allowing Mr. Fraser's expenses to be paid without proper documentation. The Court concludes that questions of fact remain for trial on plaintiff's internal controls claims.

## VI.   Books and Records Claims

Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A), requires public companies to keep books, records, and accounts that accurately reflect the transactions and dispositions of assets. Rule 13b2-1, 17 C.F.R. § 240.13b2-1, provides that no person shall falsify or cause to be falsified any book, record, or account subject to Section 13(b)(2)(A). Plaintiff alleges that defendant violated Rule 13b2-1 and aided and abetted NIC's violation of that rule. Both parties seek summary judgment on these claims.

Plaintiff argues that it is entitled to summary judgment based on evidence that Mr. Fraser was determined to have violated NIC policies regarding expenses and was required to and did repay over $280,000 to NIC. Plaintiff argues from that evidence that NIC's books and records contained false entries because those expenses were classified as business expenses instead of as personal expenses or perquisites. Defendant argues that expenses were not classified as business or personal and that because Mr. Fraser was

actually paid those amounts, no financial statements were false.  Plaintiff cites

investigative testimony by defendant, however, that the entry of Mr. Fraser's expenses

in particular categories in NIC's records was based on the assumption that they were

business-related.  That evidence creates a question of fact concerning whether any

particular NIC records were false with respect to the categorization of expenses as

business or personal, and defendant's motion for summary judgment is therefore denied.[5]

Plaintiff argues that scienter is not required for a violation of Rule 13b2-1, but it

does not dispute that a standard of reasonableness applies.  Plaintiff has not explained

how the reasonableness or unreasonableness of defendant's actions may be determined

as a matter of law at this stage, and the Court concludes that this issue presents a

question of fact for the jury.  Similarly, defendant's responsibility for any false

characterization of an expense presents a question of fact.  Accordingly, both parties'

motions for summary judgment on these claims are denied.

### VII.   Statements to Auditors

Plaintiff alleges that defendant made false or misleading statements to NIC's

auditors in violation of Rule 13b2-2, 17 C.F.R. § 240.13b2-2.  Specifically, plaintiff

alleges that defendant made false representations in letters sent to the auditors in 2006

---

[5]Plaintiff also points to NIC's public disclosures of Mr. Fraser's compensation as false books and records, but because plaintiff asserted that argument for the first time in its reply brief, the Court will not consider it.

and 2007, in connection with annual audits of NIC's preceding-year financial statements.[6] The alleged misrepresentations were that NIC maintained effective internal controls over financial reporting and that all deficiencies in those controls had been disclosed. Both parties seek summary judgment on this claim.

In its motion for summary judgment, plaintiff argues that defendant admitted that he was aware of deficiencies in internal controls with respect to Mr. Fraser's expenses, and it therefore argues that the statements to auditors that all deficiencies had been controlled were false. As noted above, however, that testimony by defendant did not establish deficiencies at any particular time other than at the point when controls were changed. Moreover, as defendant notes, plaintiff in its one-page argument on this claim did not address materiality or defendant's required state of mind or reasonableness. Nor did plaintiff address the particular language of the alleged misrepresentations, despite the requirement (as discussed by the Court in ruling on defendant's motion to dismiss) of some relation to the preparation of financial statements. Accordingly, plaintiff has not established that it is entitled to summary judgment on this claim.

Defendant argues that it is entitled to summary judgment because the particular statements in the letters were not actually false. As the Court noted in its previous ruling, *see Kovzan*, 807 F. Supp. 2d at 1044, the 2006 and 2007 letters stated that they were provided in connection with the auditors' opinions as to whether the Company

---

[6]The Court ruled above that plaintiff's claims based on earlier letters to the auditors are time-barred.

maintained effective internal control over financial reporting, which was effectively defined to relate to the preparation of reliable published financial statements. In its prior ruling, the Court noted defendant's argument that no financial statements were misstated because the characterization of reimbursements to Mr. Fraser as perquisites or as legitimate business expenses would not affect any particular entry on the financial statements. The Court ruled, however, that it was "possible that NIC did not have effective internal control relating to the preparation of financial statements (based on the failure to require proper expense documentation from Mr. Fraser, for instance) even if no financial statements were misstated." *See id.* On that basis, the Court denied the motion to dismiss this claim. Defendant now argues, however, that plaintiff cannot provide evidence that that particular control related to the preparation of financial statements.

The Court rejects that argument. Plaintiff argues that the adherence to the internal control and the proper characterization of Mr. Fraser's expenses could be related to the preparation of financial statements because NIC would not likely have paid those expenses improperly submitted as business-related. Defendant dismisses that argument as speculative, but the evidence shows that NIC generally did not reimburse Mr. Fraser for expenses he deemed personal and that NIC did require Mr. Fraser to pay for expenses later determined to have been incurred in violation of NIC's policies. Thus, the Court agrees with plaintiff that a reasonable jury could find that a deficiency in the internal control concerning payment of Mr. Fraser's expenses did relate to the preparation of

financial statements and that the representations to the auditors were therefore false.

Defendant also argues that the alleged misrepresentations were not material as a matter of law, but the Court concludes that the materiality of those statements presents a question of fact for the jury.

Finally, defendant argues that plaintiff cannot provide evidence to show defendant's required state of mind, but the parties disagree about the proper standard for a claim alleging a violation of Rule 13b2-2. Defendant cites *SEC v. Autocorp Equities, Inc.*, 292 F. Supp. 2d 1310 (D. Utah 2003), in which the court concluded that such a claim requires a showing of an intent to mislead or recklessness. *See id.* at 1332. The court did not cite any authority for that standard, but concluded that the anti-fraud policies of the statutory scheme suggested such a standard. *See id.*

Defendant also cites *SEC v. Todd*, 642 F.3d 1207 (9th Cir. 2011), in which the Ninth Circuit required that the false statements have been "knowingly" made for a violation of Rule 13b2-2. *See id.* at 1219. The Ninth Circuit did not analyze the issue, but merely cited another case, *United States v. Goyal*, 629 F.3d 912 (9th Cir. 2010), for that standard. *See Todd*, 642 F.3d at 1219. As the Eighth Circuit recently pointed out, however, *see SEC v. Das*, 723 F.3d 943, 955 (8th Cir. 2013), the *Goyal* court decided the issue specifically because of the need for the criminal standard under Rule 13b2-2 to match Section 13(b)(4)'s requirement of knowing conduct for criminal liability. *See Goyal*, 629 F.3d at 916 n.6. Thus, the *Todd*'s court's reliance on *Goyal* for the standard in a civil case is suspect, and the Court therefore declines to adopt the standard applied

in *Todd*.

The Court is persuaded by the reasoning of the Eighth Circuit in choosing a standard in *Das*. In that case, the court noted that the Seventh Circuit and the Second Circuit had held that knowing conduct is not required generally under Section 13(b). *See Das*, 723 F.3d at 954 & n.8 (citing *McConville v. SEC*, 465 F.3d 780, 789 (7th Cir. 2006), and *SEC v. McNulty*, 247 F.3d 732, 740-41 (2d Cir. 1998)). The Eighth Circuit declined to read "knowingly" (the term found in Section 13(b)(5), for example) into Rule 13b2-2, which does not include a scienter requirement on its face. *See Das*, 723 F.3d at 955-56. The court also noted that the SEC had applied a reasonableness standard and had construed Rule 13b2-2 as lacking a scienter requirement, based on the text of the rule, *see id.* at 956 (citing Exchange Act Release No. 34-15570, 1979 WL 173674, at *12 (Feb. 15, 1979)), and the court stated that the agency's interpretation was entitled to substantial deference. *See id.* (citing *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 150 (1991)). For these same reasons cited by the Eighth Circuit, the Court rejects a scienter requirement for a claim under Rule 13b2-2 and will defer and apply the SEC's reasonableness standard.

Defendant notes that his representations in the letters to the auditors were expressly made to the best of his knowledge and belief. Thus, defendant argues that, whatever the standard, his statements could not have been false unless he in fact had knowledge of deficiencies in the internal controls. The Court concludes, however, that plaintiff has submitted evidence from it which it could reasonably be inferred that

defendant knew that there were deficiencies, and thus a question of fact remains for the jury on that issue. Accordingly, the Court denies defendant's motion for summary judgment on this claim.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion for partial summary judgment (Doc. # 217) is **granted in part and denied in part**. Plaintiff's motion is granted with respect to defendant's vagueness defense; plaintiff's motion is otherwise denied.

IT IS FURTHER ORDERED BY THE COURT THAT defendant's motion for summary judgment (Doc. # 224) is **granted in part and denied in part**. Defendant's motion is granted to the extent that certain of plaintiff's claims are time-barred, and it is awarded judgment on those claims, as set forth herein; defendant's motion is otherwise denied.

IT IS SO ORDERED.

Dated this 15th day of October, 2013, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge